IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BRIGHT RESPONSE, LLC<br>F/K/A POLARIS IP, LLC<br><br>v.<br><br>GOOGLE INC., et al. | NO. 2:07-CV-371-TJW-CE<br><br>JURY |

## MOTION FOR PROTECTIVE ORDER BARRING DISCOVERY OF GOOGLE'S FIRST AMENDMENT PRIVILEGED AND IRRELEVANT LOBBYING ACTIVITIES

### Introduction

In this patent case, Plaintiff Bright Response intends to seek discovery into Defendant Google's constitutionally protected lobbying activities and political contributions through the deposition of Google in-house attorney and Head of Patents and Patent Strategy, Michelle Lee. Google respectfully requests a protective order barring this discovery as irrelevant and privileged. Google has the right to participate in the political process without it being the subject of discovery in this case. The prejudicial and chilling effect of such unusual discovery far outweighs any conceivable relevance to this action, which involves an assertion of patent infringement.

Google's political activities are not relevant to how Google's software products technically work, they are not relevant to the judicial construction of the patent claims, and they not relevant to the validity of Plaintiff's patent. Nor are Google's political activities relevant to any purported damages such as a reasonable royalty that Bright Response seeks. Even were they somehow relevant, Google's lobbying activities would still be privileged from disclosure under the First Amendment. In order to overcome this First Amendment privilege, Plaintiff would need to show a "compelling need" for this protected information for its case. Plaintiff cannot do so. Accordingly, Google's motion for a protective order should be granted.

**Background**

**I.     THE RELATED *BRIGHT RESPONSE* AND *PA ADVISORS* CASES.**

On August 27, 2007, Plaintiff Bright Response filed the present lawsuit accusing Google of infringing U.S. Patent No. 6,411,947 (the "'947 Patent"). On November 2, 2007, a related plaintiff, PA Advisors, LLC, also filed suit in this District accusing Google of infringing U.S. Patent No. 6,199,067. *See* Civil Action No. 2:07-CV-480 (DF). *Bright Response* is currently set for trial in July 2010. *PA Advisors* has a trial date of March 2010.

The plaintiff in both cases is controlled by Erich Spangenberg.[1] These plaintiffs have engaged largely the same counsel to prosecute both cases. Plaintiff has accused the identical Google products in both cases. Indeed, at an October 6, 2008 hearing in the *PA Advisors* case before Judge Folsom, plaintiff's counsel stated: "In fact, if you look at the infringement contentions, they are <u>exactly the same accused products, exactly the same</u>." (*See* Hearing on Motion for Protective Order, Dk. No. 212, at p. 5, attached as Exhibit C).

Plaintiff seeks to pursue nearly identical discovery in both cases. For example, on October 23, 2008, Plaintiff's counsel sent identical 30(b)(6) deposition notices in each case within minutes of each other. The majority of served interrogatories in *PA Advisors* and *Bright Response* are identical. Further, Plaintiff's counsel commonly sends nearly identical correspondence and/or discovery documents within minutes of each other in both cases.

---

[1] In Texas state corporate filings, Spangenberg is listed as the "manager" of both parties. *See* PA Advisors Form 424, at *3 (attached as Exhibit A); Bright Response Registered Agent Form (attached as Exhibit B).

## II. PLAINTIFF'S COUNSEL SEEKS DISCOVERY RELATED TO LOBBYING ACTIVITIES IRRELEVANT TO THIS CASE.

On October 24, 2008, Bright Response emailed a subpoena to Google's litigation counsel for the deposition of Michelle Lee — the first individual deposition Plaintiff has sought in this case. Ms. Lee is an in-house attorney at Google and is Google's Head of Patents and Patent Strategy. Plaintiff did not indicate the expected subject matter of the deposition.

Shortly thereafter, however, on November 3, Plaintiff's counsel served the following Request for Production on Google in the *PA Advisors* matter seeking documents related to Google's lobbying and political activities, which specifically mentions Ms. Lee:

> 109. **All documents and things that refer or relate to the lobbying (including activities that may or are intended to influence government policy)** of any United States Government official (including members of the United States Congress or their staff) with respect to patents, including an [sic] communications or contributions to The Coalition for Patent Fairness or other similar persons or entities and documents or **things presented or received by** Johanna Shelton, Policy Counsel and Legislative Strategist or **Michelle Lee**, Head of Patents and Patent Strategy, referred to at http://googlepublicpolicy.blogspot.com/2007/09/reforming-patents-promoting-innovation.html, which among other things, states: "We'll be talking to House members and their staff this week to tell them just how important this is."

(Plaintiff's Second Requests for Production to Google, at pages 2-3, attached as Exhibit D (emphasis added)). The document request makes clear that Plaintiff's counsel intends to pursue not only whether Google engages in lobbying and political activities generally, but in particular those of Ms. Lee. The request also shows Plaintiff's counsel seeks discovery into whether Google made monetary contributions to a non-profit group, The Coalition for Patent Fairness, as part of its broader inquiry to Google's efforts "to influence government policy." *Id.*

Given the discovery request into Google's irrelevant lobbying efforts in *PA Advisors*, in which Plaintiff's counsel accuses "exactly the same" products, Google was concerned that the same counsel would similarly seek discovery on Google's lobbying activities during Ms. Lee's deposition in this case. Accordingly, in its November 10 letter agreeing to produce Ms. Lee for deposition,

3

Google asked whether Plaintiff intended to question Ms. Lee regarding her and Google's lobbying activities. (Letter from David A. Perlson to John J. Edmonds (Nov. 10, 2008), attached at Exhibit E). Google indicated that it believed any such line of questioning would be irrelevant to the case and solely for purposes of harassment. Google also informed Plaintiff's counsel that if it intended to pursue this line of questioning, Google would move for a protective order. (*Id.*)

In its November 12 response to Google's inquiry, Plaintiff would not confirm or deny that it intended to question Ms. Lee about her lobbying activities for Google. (*See* Letter from John J. Edmonds to David Perlson (Nov. 12, 2008), attached as Exhibit F). Nor did it provide any explanation of the relevance of Google's lobbying activities. Instead, Plaintiff's counsel stated that it could not tell Google whether it intended to pursue this line of questioning because it had "not yet determined the full scope of the questions that it intends to ask Ms. Lee," even though they had noticed the deposition weeks before and the deposition was only 4 business days away. (*Id.*)

On November 13, 2008, the parties met and conferred by telephone. In the call, Google expressed its belief that its lobbying activities and efforts to influence government policy were irrelevant to the case, protected by the First Amendment privilege, and that any inquiry into them could only be for harassment. Yet, Plaintiff's counsel again would not confirm or deny that it intended to ask Ms. Lee about lobbying efforts. Plaintiff did indicate, however, that it would not go forward with the Lee deposition if Google intended to move for Protective Order on this issue, which Google informed Plaintiff it would do. When asked what the relevance of such lobbying efforts would be if they did pursue such questions, Plaintiff's counsel refused to take any specific position on the subject. Instead, Plaintiff's counsel would only generally state that such questions would relate to the value of the accused Google technology.

4

The next day, Plaintiff sent a letter asserting the purported relevance of lobbying activities in the instant case. Plaintiff concluded generally that "Google's lobbying activities are discoverable relative to, among other things:

(1) Google's views, policies and practices relative to patents, patent rights, patented technology and/or patent protection relating to the Accused Instrumentalities;

(2) The value of the Accused Instrumentalities to Google, including Google's efforts to protect the making and using of the Accused Instrumentalities; and

(3) Google's views and efforts relative to the Accused Instrumentalities being able to use the patented technology of others without providing damages adequate to compensate for the infringement, including relative to restricting the scope of patent protection and/or damages for infringement."

(*See* Letter from John. J. Edmonds to David Perlson (Nov. 12, 2008), attached as Exhibit G). While still not directly stating so, Plaintiff's letter made clear that it intended to question Ms. Lee regarding Google's lobbying activities in this case.

To avoid any dispute at the deposition of Ms. Lee regarding a line of questioning that is wholly irrelevant to the case and that would abrogate Google's First Amendment rights, Google brings the instant motion for protective order as to preclude discovery into Google's protected lobbying activities. Google was willing to proceed with the deposition of Ms. Lee on non-disputed topics, but Plaintiff has postponed the deposition pending the outcome of this motion.

**Argument**

**I. GOOGLE'S LOBBYING ACTIVITIES ARE IRRELEVANT TO THIS CASE.**

A party make seek discovery of any matter "that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources,

5

> the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

Fed. R. Civ. P. 26(b)(2)(C)(iii); *see also* 26(c) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, [or] oppression.") Here, the parties are engaged in the traditional exchange of documents and interrogatories to provide the factual evidence for the claims and defenses and to narrow the issues for trial. Google fully expects that depositions will be a part of this process as well. Indeed, Google has not refused to produce Ms. Lee for deposition in this case. Discovery into Google's lobbying efforts, however, goes far beyond any question that will be presented to the Court or trier of fact in this patent infringement case and, thus, protective order is appropriate.

The issues in this case will be primarily the functioning of Google's software products and services and whether Plaintiff's patent covers that software. As this Court knows, one step in this process is for the Court to construe the claims as a matter of law -- generally giving the claims the meaning that would be attributed to the terms by one of ordinary skill in the art at the time of the invention in the context of the patent specification. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). Because Google has raised the defense of invalidity, another issue will be the state of the art at the time of the patent filing. These questions having nothing to do with Google's current political activities. Plaintiff's conclusory statements that Google's participation in the political process relate to the value of the accused products to Google fail to show the relevance of Google's lobbying activities *to this case*. Here, as Plaintiff is a non-practicing entity that offers no products covered by the asserted patent or otherwise, Plaintiff would at most be entitled to a reasonable royalty. *See Kearns v. Chrysler Corp.*, 32 F.3d 1551-52 (Fed. Cir. 1994). The reasonable royalty would be determined by an examination as to the hypothetical royalty between a willing licensor and licensee in July 2002, when the patent was issued and the alleged

infringement began.  *See Odetics Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276 (Fed. Cir. 1999). Plaintiff's vague statements of relevance make no nexus between Google's current lobbying or political activities and the factors to be analyzed for damages.

Google's general corporate views about intellectual property also have no bearing on the specific patent at issue here.  From a start-up formed out of Stanford University to the publicly traded company it is today, Google has always been a cutting edge technology company and its services are relied upon around the world.  Google has every right to participate in the political development of this country's intellectual property laws and to seek to have its voice heard on government policy matters.  Whether or how it does so has no nexus to the specific accusations in this action.

Even if Google mentioned its search services (*see, e.g.,* www.google.com) while lobbying, this does not make lobbying activities relevant to Bright Response's infringement claims.  Also, while Bright Response vaguely asserts that Google's lobbying efforts will show "the value of the Accused Instrumentalities to Google," Bright Response provided no basis for its assertion/allegation that anything about any lobbying efforts regarding the intellectual property laws would have any relevance to that. Finally, Google's purported political views about "restricting the scope of patent protection and/or damages for infringement," in the context of the accused products or any other Google products, would simply reflect Google's views about whether and how existing intellectual property law should be changed.  They would be irrelevant to whether the accused products infringe the patent-in-suit under *present* patent law, or what damages Bright Response might seek or be entitled to under *present* law.

Not only are Google's political activities irrelevant to the issues in this case, there is significant burden and prejudice in having an in-house attorney submit to questioning under oath

7

related to political activities. As discussed in more detail below, the right to lobby the government is fundamental. Exposing an in-house attorney to deposition on this subject creates a chilling effect that far exceeds any marginal relevance to the specific questions of infringement, validity and damages to be decided in this patent case. Accordingly, Google's political activities should not be subject to discovery. *Cf. Inwood West Civic Ass'n v. Touchy*, 754 S.W.2d 276, 278-79 (Tex. Ct. App. 1988) (denying request to discover defendant's lobbying activities in a private breach-of-contract case, on the grounds that "[w]e fail to see how the disclosure of [defendant's] possible lobbying activities will in any way help bring relevant evidence before the trier of fact.") A protective order barring Bright Response from inquiring into this irrelevant subject matter is appropriate. *See United Steelworkers of Am., AFL-CIO v. Allegheny Ludlum Corp.*, 2002 WL 31002836, at *2 (W.D. Pa. May 29, 2002) ("a protective order may be appropriate to prevent discovery into irrelevant issues.")

## II. EVEN IF GOOGLE'S LOBBYING ACTIVITIES WERE SOMEHOW RELEVANT, THEY ARE PROTECTED BY THE FIRST AMENDMENT PRIVILEGE.

Even if Google's lobbying activities had some relevance to the issues in this case (which they do not), Google's political activities are shielded from discovery by the First Amendment privilege. The First Amendment to the United States Constitution expressly recognizes the right to petition the government:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. CONST. amend. I. The Supreme Court has long recognized that the First Amendment applies in civil litigation to protect certain activities from discovery. *See NAACP v. Alabama*, 357 U.S. 449, 462 (1958). Indeed, "courts have held that the threat to First Amendment rights may be *more severe in discovery* than in other areas because a party may try to gain advantage by probing into areas an

individual or a group wants to keep confidential." *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 454 (D.D.C. 2002) (emphasis added) (citing *Britt v. Superior Court of San Diego County*, 20 Cal. 3d 844 (1978). This potential "chilling effect" is precisely the reason for the privilege. *See Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 852521, at *3 (D. Kan. March 16, 2007) "Such First Amendment protections may be implicated in the context of discovery orders even if all the litigants are private entities." *Id.* (citing *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987)); *Britt*, 20 Cal.3d at 857 (noting that the chilling effect on First Amendment rights "is not diminished simply because disclosure is compelled pursuant to a litigation-oriented discovery order" in a private lawsuit).

To invoke the First Amendment privilege, "the party asserting the privilege must demonstrate, or make a prima facie showing, that the privilege applies. [I]f the party asserting the privilege meets this burden, then the burden shifts to the party seeking disclosure to demonstrate a compelling need for the requested information." *McCormick v. City of Lawrence*, 2005 WL 1606595, at *7 (D. Kan. July 8, 2005). The First Amendment privilege squarely applies to Google's lobbying activities for which Plaintiff seeks discovery here. Bright Response, however, cannot meet its burden to show a "compelling need" for discovery as to Google's lobbying activities.

### A. Google's lobbying activities are covered by the First Amendment Privilege.

Google's government lobbying activities are covered by the First Amendment privilege. For example, in *Heartland Surgical Specialty Hospital, supra*, plaintiff sought documents relating to a hospital association's lobbying efforts in the state legislature. *See Heartland*, 2007 WL 852521 at *5. The Court held that such lobbying activity "is precisely the type of internal associational activity and past political activity that the First Amendment is designed to protect." *Id.* Thus, the Court found a "*prima facie* burden of showing that production of such material would have a chilling effect [was shown] and thus the First Amendment privilege applies." *Id. See also Wyoming*, 208 F.R.D. at

9

454-55 (holding, *inter alia*, that documents regarding environmental groups' efforts to lobby Forest Service are subject to First Amendment privilege). Similarly, in *Austrl./E. U.S.A. Shipping Conference v. United States*, 1981 WL 2212, at *17 (D.D.C. Dec. 23, 1981), the Court found documents relating to "efforts to influence government to pass or enforce laws" to be included within the First Amendment privilege. *Id.* at *15 (protecting shipping conferences' lobbying documents from disclosure, on the grounds that "there can be no doubt that forced public disclosure concerning contacts with government agencies, whether in a court or in an internal investigation, would have a chilling effect on the exercise of First Amendment rights.") Lobbying activities "that may or are intended to influence government policy" is precisely the type of information that was requested by Plaintiff's counsel in *PA Advisors* Request for Production 109 and that counsel presumably seeks to obtain from Ms. Lee in this case.

In addition to the lobbying activities to Congress, in *PA Advisors*, Plaintiff's counsel seeks documents regarding whether Google made contributions to The Coalition for Patent Fairness. (Exhibit D at p. 3). There is every reason to believe the same counsel will seek this discovery in this case. As the Supreme Court has repeatedly held, however, the right to associate in organizations is highly protected by the First Amendment. Indeed, the Supreme Court has specifically applied a First Amendment privilege to protect documents "which pertained to the identity of members of, and <u>contributors</u> to," various organizations. *Gibson v. Fla. Legis. Investigation Comm'n*, 372 U.S. 539, 542 (1963) (emphasis added). Inquiries into whether Google made contributions to a non-profit organization such as The Coalition for Patent Fairness strike at the heart of Google's protected First Amendment right to associate with such organizations.

Accordingly, Google has made a *prima facie* showing that its lobbying activities sought by Plaintiff are covered by the First Amendment privilege.

### B. Plaintiff cannot show a compelling need for discovery as to Google's lobbying activities.

As Google has shown a *prima facie* case for protection under the First Amendment privilege for its lobbying activities, "a greater showing of relevance and need is required" for discovery into this subject. *McCormick*, 2005 WL 1606595 at *7. Bright Response bears the burden of showing a "compelling need" for information about these lobbying activities to obtain discovery as to them. *See id.* at *6 (citing *Austl./E. USA Shipping Conference v. United States*, 537 F.Supp. 807, 810 (D.D.C. 1982)) (emphasis in original). In the context of the First Amendment privilege, a "compelling" need for information "is one that 'is crucial to the party's case,' goes to the 'heart of the claims,' or is 'directly relevant to the party's claims.'" *Beinin v. Ctr. for Study of Popular Culture*, 2007 WL 1795693, at *3 (N.D. Cal. June 20, 2007) (internal citation omitted).

Bright Response cannot make this showing. Even if Google's lobbying activities were somehow relevant to the issues in this case, they are not "crucial" and do not "go to the heart" of Bright Response's claims. Again, this case is about whether the asserted is patent infringed and/or whether it is invalid. It is not about lobbying, which has no relevance to any issue in this case. And Plaintiff cannot seriously contend that whether Google made monetary contributions to The Coalition for Patent Fairness is crucial or goes to the heart of Plaintiff's case.

Besides the relevance of the information sought, courts also consider "(2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information" in deciding whether the propounding party can overcome a claim of First Amendment privilege. *Heartland*, 2007 WL 852521 at *5. These factors further show that Bright Response cannot meet its burden.

Because any Google's lobbying has no relevance to the issues in this case, Bright Response cannot show a "necessity" of receiving this information. For example, Plaintiff does not "need" to

know whether Google contributed to The Coalition for Patent Fairness. Moreover, Bright Response stated that its goal in seeking discovery regarding lobbying efforts was to obtain information about the value of Google's technology. Bright Response can obtain information about the value of the accused Google technology by discovering Google's financial documents and information. There is no need for Bright Response, in its first individual deposition, to intrude upon Google's sensitive and privileged lobbying efforts in order to discover this information. Accordingly, a protective order to prevent discovery into Google's lobbying efforts is appropriate.

## **Conclusion**

For the foregoing reasons, Google respectfully moves for a protective order barring Bright Response from seeking discovery into Google's and Ms. Lee's lobbying activities.

DATED: November 18, 2008　　　　　　　Respectfully submitted,

By　*/s/ Jennifer Parker Ainsworth*
　　Jennifer Parker Ainsworth
　　Texas State Bar No. 00784720
　　WILSON, ROBERTSON & CORNELIUS, P.C.
　　P.O. Box 7339
　　Tyler, Texas 75711
　　Telephone: (903) 509-5000
　　Facsimile: (903) 509-5092
　　jainsworth@wilsonlawfirm.com

　　Charles K. Verhoeven, *pro hac vice*
　　charlesverhoeven@quinnemanuel.com
　　David A. Perlson, *pro hac vice*
　　davidperlson@quinnemanuel.com
　　Brian C. Cannon, *pro hac vice*
　　briancannon@quinnemanuel.com
　　Jennifer A. Kash, *pro hac vice*
　　jenniferkash@quinnemanuel.com

|  |
| --- |
| Antonio Sistos, *pro hac vice*<br>antoniosistos@quinnemanuel.com<br>QUINN EMANUEL URQUHART OLIVER &<br>HEDGES, LLP<br>50 California Street, 22nd Floor<br>San Francisco, California  94111<br>Telephone:     (415) 875-6600<br>Facsimile:     (415) 875-6700<br><br>Attorneys for Defendant Google Inc. |

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3)(A), on this the 18th day of November, 2008.

                                                                  */s/ Jennifer P. Ainsworth*_____
                                                                  Jennifer P. Ainsworth

# CERTIFICATE OF CONFERENCE

This undersigned lead and local counsel for Google Inc. hereby certify that they have complied with the meet and confer requirements of Local Rule CV-7(h) and this Motion for Protective Order is oppposed. On November 13, 2008 the following lead and local counsel for plaintiff in the Bright Response and PA Advisors cases and for Google Inc. in both cases met by telephone and conferred regarding the substance of this motion:

Plaintiffs Bright Response and PA Advisors: John Edmonds, Mike Cook, David Pridham, and Andrew Spangler.

Defendant Google Inc.: David Perlson, Brian Cannon, Antonio Sistos, Andrea Roberts, Jennifer Ainsworth and Michael Richardson.

No agreement could be reached because the Plaintiffs did not agree to remove this issue from the deposition of Ms. Lee and did not agree to withdraw the document request. The parties discussed the issue in good faith as described even more fully in the above motion, but the discussion has conclusively ended in an impasse. Therefore Google brings this Motion for Protective Order, which Bright Response has indicated that it opposes.

*/s/ Jennifer P. Ainsworth*_____
Jennifer P. Ainsworth

*/s/ David Perlson*      _____
David Perlson