IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BRIGHT RESPONSE, LLC | |
| v. | NO. 2:07-CV-371-CE |
| GOOGLE, INC., et al. | |

## PLAINTIFF'S RESPONSE TO GOOGLE'S MOTION FOR PROTECTIVE ORDER REGARDING LOBBYING

Plaintiff Bright Response, LLC ("Bright Response") respectfully submits this Response to the Motion for Protective Order (Dkt No. 164) filed by Defendant Google, Inc. ("Google") as follows:

### I.  Introduction.

This is a patent infringement suit involving Bright Response's '947 patent. In this suit, Bright Response contends that Google is infringing the '947 patent via Accused Instrumentalities comprising and relating to Google Search, Google AdWords and Google AdSense. Google's Motion for Protective Order seeking to bar Bright Response from questioning Google's witnesses regarding "lobbying activities" should be denied because it seeks to bar discovery of non-privileged information which is relevant to a number of issues in this litigation.

Google's Motion begins with a lengthy recitation of how a request for production regarding lobbying sent to Google in a different case in a different court, involving a different plaintiff and a different patent, but involving some of the same lawyers, caused Google to become concerned that Bright Response's lawyers might want to inquire about lobbying from Google in this case. Based upon this supposition, Google's lawyers took the position that unless Bright Response would agree not to ask Google's witnesses, specifically Google's first deponent Ms. Lee, about "lobbying activities," then Google would move for a protective order to prohibit

any such questioning. Google also demanded that Bright Response explain the relevance of any questions that might be asked of Ms. Lee about lobbying, even though no deposition had yet occurred.

Although Google was prematurely seeking to stoke a discovery dispute, Bright Response accommodated Google by sending a letter explaining the relevance of Google's lobbying activities to damages issues in this case.[1] As noted in Bright Response's letter, information relating to Google's lobbying activities regarding to the Accused Instrumentalities is relevant to, or at least is reasonably likely to lead to the discovery of admissible evidence relating to, at least the following

(1) Google's policies and practices relative to patents, patent rights, patented technology and/or patent protection relating to the Accused Instrumentalities;

(2) The value of the Accused Instrumentalities to Google, including Google's efforts to protect the making and using of the Accused Instrumentalities; and

(3) Google's views and efforts relative to the Accused Instrumentalities being able to use the patented technology of others without providing damages adequate to compensate for the infringement, including relative to restricting the scope of patent protection and/or damages for infringement.[2]

It is important to note that Google's Motion for Protective Order does not deny that Google lobbies the government relative to the patent-in-suit or the Accused Instrumentalities. Because

---

[1] Google's suggestion that Bright Response "refused" to explain the relevance of Google's lobbying activities at a meet and confer is disingenuous. The parties had an agenda for their meet and confer and Google had not requested that Bright Response explain such relevance as part of that agenda. Notwithstanding the foregoing, Google demanded that Bright Response's counsel participating in the meet and confer state Bright Response's position extemporaneously without the benefit of conferring with co-counsel. Bright Response's counsel stated that they would discuss the matter internally and they would provide Google with Bright Response's position the following day. Undeterred, Google continued to demand an answer on the spot. Bright Response's counsel then provided an "off the cuff" answer and again reiterated that Bright Response would discuss the matter internally and state its position the next day -- which it did in writing. Meet and confers are not supposed to be pop quizzes and Bright Response's decision to discuss a matter internally first, rather than having a lawyer state a position extemporaneously, was entirely proper.

[2] Ms. Lee has confirmed as much in speaking at public forums where she expressed concern that the patent system is in a "crisis." Stanford Patent Summit, August 1, 2007.

Bright Response has no interest in Google's lobbying activities, if any, which do not relate to the patent-in-suit or the Accused Instrumentalities, the Court may presume (from Google's filing for a Protective Order) that Google conducts lobbying activities relating to such issues.

While Google directs its motion to areas which it wants to broadly shield from discovery, it is telling that Google never once defines "lobbying activities." Bright Response certainly agrees that it is not interested in delving into Google's privileged attorney-client communications. However, Google casts a much wider net in discussing its "lobbying activities." After reading Google's brief, one is left to wonder whether any of the following non-privileged communications may be considered "lobbying activities:" (i) communications with third-parties (whether or not members of Congress or their staff) regarding the value of relevant patents or comparable technology; (ii) communications with third-parties (whether or not members of Congress or their staff) regarding the value of patents developed or acquired by Google that purport to cover the Accused Instrumentalities; (iii) communications with third-parties (whether or not members of Congress or their staff) confirming Bright Response's belief that Google continues to infringe the patent-in-suit in hopes that Congress will change the law, including relating to patent infringement damages; and (iv) communications with third-parties (e.g., Intellectual Ventures) regarding the value of relevant patents—or comparable technology. For example, it has been reported that "[o]ne week after being hit with a patent infringement lawsuit by intellectual property licensing company Polaris IP,[3] Google executives are renewing the company's call for patent reform."[4]

---

[3] Bright Response's name was formerly Polaris IP, LLC, as reflected in the Original Complaint filed in this case.

[4] *See* Exhibit 1: Information Week, *Google Calls for Patent Reform* at
http://www.informationweek.com/story/showArticle.jhtml?articleID=201804286.

Finally, Google's reliance upon the First Amendment is based upon a misreading of the law regarding the freedom of association, which is inapplicable to this case. Moreover, Google cannot claim a broad bar of discovery into areas where any possible privilege has been waived, including by its own public announcements.[5] For example, Ms. Lee (the Google employee whose deposition prompted Google to move for a protective order), has been front and center in her public pronouncements on this issue.[6]

## II. Information regarding Google's lobbying relative to the Accused Instrumentalities is relevant at least to damages.

In federal practice, pretrial discovery is a "broad regime." *Blackboard Inc. v. Desire2Learn, Inc.*, No. 9:06-CV-155, 2007 U.S. Dist. LEXIS 84181 at *4 (E.D. Tex. Nov. 14, 2007) (citing *O2 Micro Int'l v. Monolithic Power, Sys.*, 467 F.3d 1355, 1366 (5th Cir. 2006)). Pursuant to Federal Rule of Civil Procedure 26(b)(1), a party may obtain discovery of any nonprivileged matter "relevant to any party's claim or defense." The definition of relevant information in Rule 26(b)(1) is broad, and relevant information need not be admissible at the trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence. *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 132 (E.D. Tex. 2003) (citing Fed. R. Civ. P. 26(b)(1)).

---

[5] *See, e.g.*, Exhibit 2: September 4, 2007 post by Michelle Lee at Google's Public Policy Blog Spot (http://googlepublicpolicy.blogspot.com/2007/09/reforming-patents-promoting-innovation.html) in which Ms. Lee States that Google has "urged Congress to address these issues in particular:
- Damages apportionment. Damages should be calculated based on the fair share of the patent's contribution to the value of a product, and not on the value of a whole product that has many components. So for example, a windshield wiper found to infringe a patent should not spur a damage award based on the value of the entire car. . .
- Willfullness. Patent infringers can be forced to pay triple the damages in cases where they are found to have "willfully" infringed a patent, but that standard has been devalued. Punitive triple damages should be reserved for cases of truly egregious conduct."

[6] *See, e.g., id.*

4

The phrase "relevant to any party's claim or defense" is also defined expansively in Local Rule CV-26(d), which provides the following guidance as to whether something is "relevant to an party's claim or defense": "(1) It includes information that would not support the disclosing parties' contentions; (2) It includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties; (3) It is information that is likely to have an influence on or affect the outcome of a claim or defense; (4) It is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense; and (5) It is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate or try a claim or defense." E.D. Tex. R. CV-26(d).

Relative to Google's infringement of the '947 patent, Bright Response is entitled to seek and recover damages comprising a reasonable royalty. A non-exhaustive list of factors relevant to the reasonable royalty is set forth in the *Georgia-Pacific* case. *See Georgia-Pacific v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). Such factors include the value of the patented invention to the infringer and the benefits to users of the invention. *Id.* In addition, it is generally understood, and the Court is likely aware, that the parties' patent licensing policies and practices (outside of a litigation context) are relevant to the hypothetical negotiation required by *Georgia-Pacific*.

Moreover, the *Georgia-Pacific* factors provide only a non-exhaustive list of information relevant to reasonable royalties. For example, if Google is spending millions of dollars a year, directly or indirectly, in an effort to enact legislation which would have the effect of impacting the patent-in-suit, this is relevant to their view of the value of the patent-in-suit—particularly if Google's communications relate directly to the patent. Ms. Lee has stated that Google would be

"talking to House members and their staff this week to tell them just how important" Google's version of patent legislation is.[7]

As noted above, Google's lobbying activities relating to the Accused Instrumentalities are relevant to, or at least are reasonably likely to lead to the discovery of admissible evidence relating to, at least the following:

(1) Google's policies and practices relative to patents, patent rights, patented technology and/or patent protection relating to the Accused Instrumentalities;

(2) The value of the Accused Instrumentalities to Google, including Google's efforts to protect the making and using of the Accused Instrumentalities; and

(3) Google's views and efforts relative to the Accused Instrumentalities being able to use the patented technology of others without providing damages adequate to compensate for the infringement, including relative to restricting the scope of patent protection and/or damages for infringement.

The foregoing matters relate at least to the *Georgia-Pacific* factors regarding value of the patented invention to Google, and to Google's views regarding the benefits of the Accused Instrumentalities to those who use them. In addition, the foregoing matters relate to Google's patent licensing policies and practices.

**III. Google's reliance upon the First Amendment barring all discovery regarding *all* lobbying activities is mistaken.**

Google's reliance upon the First Amendment is based upon a misreading of cases dealing with the *associational privilege* (i.e., the freedom of association) that relates to lobbying activities of groups and other associations. *See, e.g., Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* 2007 WL 852521, 2007 U.S. Dist. LEXIS 19475 (D. Kan. March 16, 2007) (prohibiting discovery from a Hospital Association of lobbying activities of its members); *State of Wyoming v. United States Department of Agriculture*, 239 F. Supp. 2d 1219, 1237 (D. Wyo.

---

[7] *See, e.g., id.*

2002), *vacated as moot*, 414 F. 3d 1207 (10th Cir. 2005) (prohibiting discovery from the Department of Agriculture of lobbying activities of members of environmental groups).

All of these cases are based upon the Supreme Court's decision in the *NAACP v. Alabama* case. 357 U.S. 449, 462, 78 S. Ct. 1163, (1958). In that case, the Supreme Court held that the associational privilege applies if discovery adversely affects the ability of an organization and its members to collectively advocate for the organization's beliefs by: (1) inducing members to withdraw from the organization or dissuading others from joining the organization; and, (2) because fear of exposure of those beliefs will lead to threats, harassment, or reprisal. 357 U.S. at 462-63. The threats, harassment, and reprisal the Supreme Court has been concerned with include threats of physical coercion or bodily harm, economic harm or reprisal, loss of employment, and other public manifestations of hostility. *Id*. at 462; *Bates v. City of Little Rock*, 361 U.S. 516, 522, 4 L. Ed. 2d 480, 80 S. Ct. 412 (1960); *State of Wyoming*, 239 F. Supp. 2d at 1236. The party asserting the privilege must show there is a reasonable probability that compelling disclosure will lead to these types of threats, harassment, or reprisal. *Buckley v. Valeo*, 424 U.S. 1, 74, 46 L. Ed. 2d 659, 96 S. Ct. 612 (1975); *State of Wyoming*, 239 F. Supp. 2d at 1236.

The law in this area was appropriately summed up by the District Court in the *State of Wyoming* case (which Google's Motion actually relies upon), as follows:

> Thus, in order to make a prima facie showing that the organization's internal associational activities are protected, the party must demonstrate: (1) that a reasonable probability exists that compelled disclosure of the information sought; (2) will adversely affect the organization's ability to advocate its beliefs; (3) causing active members to withdraw from the organization or dissuading prospective members from joining the organization; (4) because of a fear that exposure of their beliefs will subject them to threats, harassment, or reprisal. The Associational Privilege will protect the disclosure of the information if the movant demonstrates these four requirements.

7

*State of Wyoming*, 239 F. Supp. 2d at 1237.

Information relating to lobbying activities is not *per se* privileged under the First Amendment, especially when there is no association involved. In fact, the Supreme Court's decision in the *NAACP* case makes clear that any First Amendment protection relating to lobbying activities is applicable only when there is an imposition upon the right of association with other members of a group engaged in such lobbying activities.

Bright Response acknowledges Google's right of association under the First Amendment, and Bright Response has no intention of asking Google's witnesses about otherwise privileged lobbying activities by associations of which Google is a part.[8] However, this associational privilege has no relationship to Google's lobbying activities carried out on its own.

If a party asserting the First Amendment associational privilege makes a *prima facie* showing of entitlement to the privilege, then the burden shifts to the party seeking disclosure to demonstrate a compelling need for the requested information. *NAACP,* 357 U.S. at 463; *State of Wyoming*, 239 F. Supp. 2d at 1237. Here Google has not made a *prima facie* showing of any entitlement to an associational privilege relative to its individual lobbying activities apart from any association. Likewise, Google has shown no reasonable probability that discovery into Google's individual lobbying activities will induce any members of an organization to withdraw from it, or dissuade any others from joining any organization because fear of exposure of their beliefs will lead to threats, harassment, or reprisal. *See NAACP*, 357 U.S. at 462-63. Because there is no First Amendment protection for Google's individual lobbying activities, Google has

---

[8] To the extent that Bright Response questions one of Google's witnesses about lobbying activities to which an associational privilege applies under the First Amendment, Google's counsel can of course object at that time, and instruct Google's witness not to divulge privilege information. This is the appropriate way to handle situations in which a privilege might be implicated in some instances, rather than to impose an overbroad protective order which would prohibit discovery into non-privileged matters.

failed its threshold burden, and the Court does not need to engage in any First Amendment balancing tests.

Even if the Court would entertain a First Amendment balancing test for discovery relating to Google's individual lobbying activities, the discovery should be allowed. Bright Response has not found any controlling Fifth Circuit authority on this balancing test.[9] Although articulated differently, courts generally look at three factors -- relevance of the information sought, the need for that information, and the extent of the injury that disclosure may cause to associational rights -- in balancing the interests of the parties when the associational privilege is asserted. *State of Wyoming*, 239 F. Supp. 2d at 1237; *Anderson v. Hale*, 2001 U.S. Dist. LEXIS 6127, *11 (N.D. Ill. May 10, 2001). The relevance of this information is set forth above; and Bright Response needs this information from Google because Google is the best, if not the only, source for information about its lobbying that Google has not already publicized. More importantly, disclosures relating to Google's individual lobbying activities will not cause any injury to associational rights because associational rights are not even implicated.

### IV. Google cannot claim a broad bar of discovery into areas where any possible privilege has been waived by its own public announcements

As noted above, Google cannot claim a broad bar of discovery into areas where any possible privilege has been waived, including by its own public announcements.[10] In fact, Google's employee Ms. Lee has been front and center in her public pronouncements on this issue.[11] If Google's overbroad motion were granted, it would bar Bright Response from

---

[9] Bright Response assumes that Fifth Circuit precedent, if any, would control relative this privilege issue not unique to patent law.

[10] *See* Footnote 5 above.

[11] *See id.*

inquiring into areas where Google has made public pronouncements, and it would bar Bright Response from even inquiring into the scope of Google's waiver of any asserted associational privilege.

V. **There is no other basis for barring discovery of this relevant information.**

Google's Motion appears to focus and rely upon its mistaken belief as to the scope of the First Amendment, and upon its effort to bar discovery into areas where any possible privilege has been waived. However, Google's Motion also mentions Federal Rule of Civil Procedure 26(b)(1) in passing, without devoting any argument or analysis. Rule 26(b)(1) provides that a court may limit the discovery of relevant information if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Presumably Google devotes no argument to Rule 26(b)(1) because it has no credible argument of undue burden from Bright Response questioning fact witnesses about matters within their personal knowledge.[12] In addition, the relevance issues noted above, and the fact that Google immediately "renewed" efforts to lobby Congress for changes to the patent laws upon the filing of this case, illustrate the need for, and importance of, this information to be discovered.

VI. **Conclusion.**

Google's Motion seeks to improperly bar discovery of non-privileged information which is relevant to damages. In addition, Google's reliance upon the First Amendment is based upon a misreading of law applicable to the freedom of association, which is not implicated here. Further, even if Google was correct about the scope of the First Amendment, which it is not, it

---

[12] If at some point this discovery becomes unduly burdensome, Google is of course entitled to pose proper objections under Rule 26(b)(1) at that time.

would be improper to bar discovery into areas where Google has already waived any possible privilege.

The appropriate way to proceed is for discovery to move forward like it does in every case in which privilege issues may come into play to a greater or lesser degree. If Bright Response asks something which Google deems to implicate a privilege, then Google can object to that specific request and instruct the witness not to divulge privileged information. Then the parties may resolve the specific privilege issue raised, or if not, the Court will be in a position to rule on a well framed dispute. This is more appropriate Google's overbroad relief for a *per se* bar into all discovery regarding "lobbying activities" -- including where there is no privilege or any privilege has been waived. Preventing Bright Response from asking questions that have not yet been framed is a dispute that is not yet ripe. Google has no legal or practical basis for precluding this relevant discovery, and its Motion should be denied.

December 5, 2008                          BRIGHT RESPONSE, LLC

                                                    By: /s/ John J. Edmonds
                                                    Andrew W. Spangler – LEAD COUNSEL
                                                    Spangler Law P.C.
                                                    208 N. Green Street, Suite 300
                                                    Longview, Texas 75601
                                                    (903) 753-9300
                                                    (903) 553-0403 (fax)
                                                    spangler@spanglerlawpc.com

                                                    Jonathan T. Suder
                                                    Michael T. Cooke
                                                    Karolyne H. Cheng
                                                    FRIEDMAN, SUDER & COOKE
                                                    604 East Fourth St., Ste. 200
                                                    Fort Worth, Texas 76102
                                                    (817) 334-0400
                                                    (817) 334-0401 (fax)
                                                    jts@fsclaw.com
                                                    mtc@fsclaw.com
                                                    cheng@fsclaw.com

David M. Pridham
Law Office of David Pridham
25 Linden Road
Barrington, Rhode Island 02806
(401) 633-7247
(401) 633-7247
david@pridhamiplaw.com

Daniel F. Perez
THE PEREZ LAW FIRM
6131 Park Lane
Dallas, Texas 75225
(214) 289-6659
(214) 521-1128 (fax)
dan@pereziplaw.com

John J. Edmonds
The Edmonds Law Firm, PC
709 Sabine Street
Houston, Texas 77007
(713) 858-3320
(832) 415-2535 (fax)
johnedmonds@edmondslegal.com

COUNSEL FOR PLAINTIFF BRIGHT RESPONSE, LLC

## CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

December 5, 2008 /s/ John J. Edmonds
John J. Edmonds