IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BRIGHT RESPONSE, LLC<br>v.<br><br>GOOGLE INC., et al. | NO. 2:07-CV-371-TJW-CE<br><br>JURY |

### REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Plaintiff should not be permitted to depose Google's in-house attorney concerning Google's political and lobbying activities because Plaintiff provides no clear explanation why that subject matter would have <u>any</u> legitimate relevance to this patent infringement case, much less does Plaintiff show a "compelling need" for such information as it must under First Amendment case law. Plaintiff's other procedural arguments are similarly without merit. Accordingly, Google's motion for a protective order should be granted.

### I.    **PLAINTIFF FAILS TO SHOW RELEVANCE OF LOBBYING ACTIVITIES.**

The patent in this case relates to sorting electronic messages through the well known techniques of "case based reasoning" and "rule based reasoning." (Dkt. No. 1, Ex. A.) Whether Google infringes the patent under *current* law (and it does not) may be discovered through information and documents regarding how the relevant aspects of the accused software products actually work. Plaintiff may also discover information regarding its alleged reasonable royalty damages under *current* law through documents and information regarding Google's finances and patent licenses. But *future* patent laws—and Google's or anyone else's opinions about or how such laws should be changed—have no connection to Plaintiff's claims.

Plaintiff nevertheless concludes "if Google is spending millions of dollars a year, directly or indirectly, in an effort to enact legislation which would have the effect of impacting the patent-in-suit, this is relevant to their view of the value of the patent-in-suit—particularly if

1

Google's communications relate directly to the patent." (Opp., 5). But Plaintiff never explains how the fact finder could evaluate lobbying activities as a factor that bears on a reasonable royalty rate.[1] Indeed, under Plaintiff's standard, everything related to any patent or any software would be fair game for discovery. This is not the law. Plaintiff should not be able to burden the parties' and witnesses' time seeking discovery into lobbying activities irrelevant to this case. *Cf. Inwood West Civic Ass'n v. Touchy*, 754 S.W.2d 276, 278-79 (Tex. Ct. App. 1988).

Notably, Plaintiff states it "has no interest in Google's lobbying activities, if any, which do not relate to the patent-in-suit or the Accused Instrumentalities." (Opp., 3). Thus, at a minimum, a protective order precluding discovery into any Google lobbying activities in which the asserted patent or Accused Instrumentalities was not discussed is appropriate.

## II. PLAINTIFF FAILS TO REBUT GOOGLE'S *PRIMA FACIE* CASE FOR PROTECTION BY THE FIRST AMENDMENT PRIVILEGE.

Plaintiff "acknowledges Google's right of association under the First Amendment" and states it "has no intention of asking Google's witnesses about otherwise privileged lobbying activities by associations of which Google is a part." (Opp., 8). Thus, at a minimum, a protective order regarding Google's lobbying activities as part of an association is appropriate.

Plaintiff argues that Google's activities *on its own* would not be similarly privileged. Yet, Plaintiff cites no case that holds Google's corporate status precludes First Amendment protection. Plaintiff does state, without citation, that the "*NAACP* case makes clear that any First Amendment protection relating to lobbying activities is applicable only when there is an imposition upon the right of association with other members of a group engaged in such

---

[1] Plaintiff focuses on a blog post regarding lobbying activities in August 2007 as evidence of the purported relevance of Google's lobbying activities. Under Plaintiff's allegations, the hypothetical negotiation date on which reasonable royalty damages would be
(footnote continued)

lobbying activities." (Opp., 8) While *NAACP* does address the right of association, it does not hold or support that lobbying activities of an association would be protected, but those of private entities would not. Lobbying was not even the subject of the case. Also, the protection of the NAACP's member lists was actually done in part to protect "the right of the [NAACP] members to pursue their lawful *private interests privately*." *Id.* at 466 (emphasis added).

Moreover, the Supreme Court has stated "[t]he inherent worth of the speech . . . does not depend upon the identity of its source, *whether corporation, association, union, or individual* . . . We thus find no support in the First or Fourteenth Amendment, or in the decisions of this Court, for the proposition that speech that otherwise would be within the protection of the First Amendment loses that protection simply because its source is a corporation." *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 777, 784 (1978) (emphasis added). Similarly, here, there is no basis to conclude that lobbying activities by an association should be treated differently from lobbying activities by Google on its own.[2]

### III. PLAINTIFF FAILS TO SHOW A "COMPELLING NEED" FOR DISCOVERY AS TO GOOGLE'S LOBBYING ACTIVITIES.

Plaintiff does not dispute that once a *prima facie* case for First Amendment protection is made, it must show a "compelling need" for that discovery. *McCormick v. City of Lawrence*, 2005 WL 1606595 at *7 (D.Kan. July 8, 2005). A "compelling" need is "one that 'is crucial to the party's case,' goes to the 'heart of the claims,' or is 'directly relevant to the party's claims.'"

---

based is when the patent issued in June 2002. Plaintiff never explains the relevance of lobbying activities for patent laws in 2007 to what Google would have paid for a license in 2002.

[2] Plaintiff argues Google has not made a *prima facie* showing because "Google has shown no reasonable probability that discovery into Google's individual lobbying activities will induce any members of an organization to withdraw from it, or dissuade others from joining." (Opp., 8). As detailed in Google's opening papers, however, courts have held that compelled disclosure of lobbying activities <u>does</u> have such a chilling effect. (Br., 8-10) (collecting cases).

*Benin v. Ctr. for Study of Popular Culture*, 2007 WL 1795693, at *3 (N.D.Cal. June 20, 2007). Yet, Plaintiff does not argue lobbying activities are "crucial" or "go to the heart" of its claims.

Instead, Plaintiff argues it "needs" discovery into Google's lobbying activities "because Google is the best, if not the only, source for information about its lobbying that Google has not already publicized." (Opp., 9). But Plaintiff supposedly seeks discovery regarding lobbying efforts to obtain information about the value of Google's technology. Plaintiff does not "need" to know whether Google lobbied government officials or contributed to The Coalition for Patent Fairness to determine the value of the accused Google technology to Google. Instead, Plaintiff can obtain that information by discovering Google's financial documents and information.

## IV. GOOGLE HAS NOT WAIVED THE FIRST AMENDMENT PRIVILEGE.

Plaintiff argues that Google has "waived" its First Amendment privilege over its lobbying activities by making public statements. (Opp., 9-10.) Plaintiff cites no authority for such a waiver, and its argument is without merit. Indeed, in *Heartland*, the Kansas Hospital Association (KHA) had engaged in certain "public" lobbying activities such as "present[ing] legislative proposals and testimony" before the Kansas legislature. *Heartland*, 2007 WL 852521 at *2. Nonetheless, the court nowhere suggested that the KHA had waived the First Amendment privilege, but instead upheld KHA's claims of privilege for its lobbying documents. *Id.* at *5.

## V. GOOGLE'S MOTION IS NOT PREMATURE.

Plaintiff argues that Google should have instructed Ms. Lee not to answer questions regarding lobbying activities on privilege grounds rather than "preventing" Plaintiff from asking such questions by moving for a protective order. (Opp., 11). But it was <u>Plaintiff</u>, not Google, that cancelled the deposition due to Google's motion. This is likely because Google's lobbying activities were the intended main focus of questioning, which would have made the deposition a waste of time were Google forced to instruct the witness on the majority of questions.

4

Plaintiff also argues that Google's motion for protective order is not ripe, asserting that this case has no relation to *PA Advisors* in which Plaintiff's nearly identical counsel sought discovery into Google's lobbying activities. (Opp., 1). But in the October 6, 2008 hearing before Judge Folsom in *PA Advisors,* quoted in Google's opening papers, Plaintiff's counsel trumpeted the <u>similarities</u> of the cases. (Br., 2). Plaintiff ignores these comments completely. Plaintiff also ignores that the Plaintiffs in both cases are controlled and ultimately owned by the same person, Erich Spangenberg. And critically, Plaintiff never denies that it intends to seek discovery into the exact same subject matter in this case as in *PA Advisors*.[3]

## VI. <u>GOOGLE'S REQUESTED RELIEF IS NOT AMBIGUOUS.</u>

Plaintiff argues Google's requested relief is ambiguous because Google does not define "lobbying activities." (Opp., 3). Plaintiff's counsel found the term "lobbying" clear enough in its document request in *PA Advisors* without defining it. It is similarly clear in Google's motion.

## <u>Conclusion</u>

For the foregoing reasons and those in its opening papers, Google respectfully moves for a protective order barring Plaintiff from seeking discovery into Google's and Ms. Lee's lobbying activities. At a minimum, Plaintiff should be precluded from seeking discovery into Google lobbying activities in which the asserted patent or Accused Instrumentalities are not discussed and lobbying activities by or through associations of which Google is a part, which Plaintiff seems to concede are either irrelevant or protected by the First Amendment privilege.

---

[3] Plaintiff states "Google's suggestion that Bright Response 'refused' to explain the relevance of Google's lobbying activities at [the November 13] meet and confer is disingenuous. The parties had an agenda for their meet and confer and Google had not requested that Bright Response explain such relevance as part of that agenda." (Opp., 2 n.1). This is false. On November 10, Google sent a letter explicitly stating "[p]lease let us know immediately if you intend to pursue questioning concerning Google's lobbying efforts and ***explain what relevance that has to the case***" and asked to meet and confer on that issue. (Dkt., 164-6) (emphasis added). Google timely raised this issue and Plaintiff has yet to explain its relevance.

DATED: December 18, 2008              Respectfully submitted,

By  /s/ David A. Perlson
Charles K. Verhoeven, *pro hac vice*
charlesverhoeven@quinnemanuel.com
David A. Perlson, *pro hac vice*
davidperlson@quinnemanuel.com
Brian C. Cannon, *pro hac vice*
briancannon@quinnemanuel.com
Jennifer A. Kash, *pro hac vice*
jenniferkash@quinnemanuel.com
Antonio Sistos, *pro hac vice*
antoniosistos@quinnemanuel.com

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
50 California Street, 22nd Floor
San Francisco, California  94111
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for Defendant Google Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was filed and served electronically on all counsel of record in compliance with Local Rule CV-5(a) on the 18th day of December, 2008.

By: _/s/_ David Perlson