# Exhibit 8

Targeting Platform" were recently identified in the news as responsive to my client's requests. For example, an October 8, 2009 Mediapost.com article states that Yahoo is launching a new Behavioral Targeting Platform "that vastly speeds up the process of crunching data about users' online activities and using that information to serve more relevant ads." The article goes on to state that "[b]y shortening that timeframe, Yahoo can more accurately target ads to people based on their recent online behavior..." *See* http://www.mediapost.com/publications/?fa=Articles.showArticle&art_aid=114751. Yahoo's code relating to its behavioral targeting and/or behavioral targeting platform is clearly responsive and should be produced immediately.

Furthermore, your allegation that the "PICs do not allege that the "Yahoo Behavioral Targeting" system infringes any claim of the Geller patent" is incorrect. The PICs repeatedly reference behavioral targeting. For instance, the PICs state that "Yahoo utilizes 'behavioral targeting' and information collected about a user to facilitate searching for advertisements and/or search results." The PICs also discuss how "Yahoo collects, stores and utilizes information about its users (user information) to facilitate searches for advertisements and/or search results through its use of 'behavioral targeting.'" The PICs go on to further reference and discuss behavioral targeting on numerous occasions. Thus, your statement is inexplicable.

You also claim that my client should limit its requests to "code that actually performs the specific functionality alleged to meet specific claim elements." nXn has done so repeatedly through its code requests, its infringement contentions and during numerous meet and confers. Without waiving these previous requests and identifications, and by way of example only, nXn requests code related to the following:

1. All source code related to Yahoo's behavioral targeting and/or behavioral targeting platform;

2. All source code related to the gathering and/or storing of information related to Yahoo users including, but not limited to, information related to user behavior;

3. All source code related to searching for advertisements and/or search results;

4. All source code related to utilizing information gathered and/or stored about Yahoo users when searching for advertisements and/or search results, including advertisements or search results returned to a user of Yahoo;

5. All source code related to the Yahoo systems or products identified in nXn's Preliminary Infringement Contentions.

Please let me know when Yahoo will make such code available for inspection. My client is available to inspect code as soon as possible. In addition, as we have mentioned on several occasions, my client will be filing a motion to compel in the very near future if these issues are not promptly resolved.

Debera W. Hepburn
(214) 403-4882
dhepburn@heplaw.com

# HEPBURN LAW FIRM PLLC

Mapping" is clearly relevant, as these capabilities clearly utilize behavioral information stored about one or more users.

As a related matter, I appreciate that you have sent the source code printouts requested by Mr. Rafilson. That being said, Mr. Rafilson requested these printouts on September 29, and Yahoo has delayed for weeks in producing such code despite its clear duty to provide bates-stamped code promptly under the terms of the protective order. This delay appears to be part of an overall tactic by Yahoo and its counsel to delay discovery that is crucial to my client.

Please provide a date certain by the end of business today (5 pm central) by which Yahoo will produce the remainder of the requested code, such that this code will be produced within the next two weeks. To the extent that Yahoo refuses to do so, please arrange for an in-person meet and confer with Mr. Spangler before end of business on Monday regarding my client's motion to compel. Although my client wishes to avoid such unnecessary motion practice, it will be forced to do so if Yahoo delays further regarding its obligations to produce source code.

### Bright Response v. Google Inc., et al.

Your statement that source code in the Bright Response lawsuit has been available for "some time" falsely portrays the facts in this case. As you know, Bright Response has requested this code for months, and it was only after my client filed a motion to compel that Yahoo finally committed to a date certain (October 7) by which it would provide code. Ms. Porter has been available for months to inspect such code, and will begin inspecting Yahoo's code next week.

Regards,

*Debera Hepburn*

Debera W. Hepburn