# Exhibit 2



321 North Clark Street
Suite 3400
Chicago, IL  60654.4717
www.howrey.com

**Jason C. White**
Partner
**T** 312.846.5680
**F** 312.602.3986
whitej@howrey.com

September 24, 2009

**VIA EMAIL**

Ari Rafilson
The Rafilson Law Firm, PLLC
1318 Royal Palm Lane
Carrollton, TX 75007

**Re:    nXn  v. Yahoo! Inc. et al.**

Dear Ari:

I am writing in response to your letters of September 22 and 23 regarding Yahoo's production of source code.  I would like to begin by apologizing, again, for the mix-ups regarding the code that we experienced yesterday and again this morning.  The delay in getting the proper code to you resulted from mistakes made by a vendor.  It was unintentional and occurred through no fault of Yahoo.

I note your request from yesterday for some sort of compensation for your technical expert, but it is not clear what you are asking for.  Without agreeing to provide any sort of compensation to your client or your expert, I would appreciate it if you could clarify what you are asking for so that we can evaluate your request.

With respect to the three questions raised in the letter of September 22, your questions about internet access and two computers are moot, as we have made two laptops available, and as you now know, Internet access is available at the inspection site.

With respect to your question about a printer for use with the source code laptops, Yahoo does not intend to make a printer available directly to you, due to security concerns, but we can offer a compromise solution that should address any concerns you may have about getting printouts of the relevant source code.  In order for the source code printers to be used with a printer, the laptops must have a least one external port that is "active."  However, this presents a serious security risk to Yahoo because, in addition to allowing for a printer to be connected to the computer, the "active" port could be used to copy or transfer the code from the laptop.  This presents an unreasonable risk to Yahoo given that Yahoo has to relinquish possession of the laptops as they are shipped back and forth between Yahoo's offices and the location where you insisted that the code be made available for inspection.  As such, the source code computers on which Yahoo makes its code available for inspection do not have any "active" ports for use with a printer.



However, Yahoo realizes that you may wish to have certain portions of the code produced in hard copy, and Yahoo will accommodate any such reasonable requests for hard copies or print outs of sections of the code that you may designate.  What Yahoo requests is that you note any sections of the code that you would like printed, and provided that those requests are reasonable, Yahoo will print those sections out, label them, and deliver them to you.  Yahoo has followed this same procedure for a number of its other litigations, and based on its experience in those cases, Yahoo expects that, in most instances, the printouts will be available to you with 48 hours of your request.

I note that the current terms of the protective order call for you to print sections of the code yourself and then turn them over to us for labeling, before we then return them to you.  Our request is for a minor modification of this procedure whereby you inform us of the sections that you would like printed, and then we print those sections, label them, and then provide them to you.  Our proposal should not delay the production of the physical copies and may actually speed up the process.  We believe that this is a reasonable compromise that balances the inherent risks associated with the production and inspection of source code, and we hope that you will agree.

Please feel free to contact me if you would like to further discuss this issue.

                                      Sincerely,

                                      s/Jason C. White

                                      Jason C. White

JCW:gf