1                IN THE UNITED STATES DISTRICT COURT

2               FOR THE EASTERN DISTRICT OF TEXAS

3                        MARSHALL DIVISION

4   BRIGHT RESPONSE, LLC,      )(

5                              )(    CIVIL DOCKET NO.

6                              )(    2:07-CV-371-CE

7   VS.                        )(    MARSHALL, TEXAS

8                              )(

9                              )(    NOVEMBER 5, 2009

10  GOOGLE, INC., ET AL.    )(    2:00 P.M.

11                    MOTION TO COMPEL HEARING

12          BEFORE THE HONORABLE JUDGE CHAD EVERINGHAM

13                UNITED STATES MAGISTRATE JUDGE

14

15  APPEARANCES:

16

17  FOR THE PLAINTIFFS:  (See Attorney Sign-In Sheet)

18

19  FOR THE DEFENDANTS:  (See Attorney Sign-In Sheet)

20

21  COURT REPORTER:        MS. SHELLY HOLMES, CSR
                           Deputy Official Court Reporter
22                         2593 Myrtle Road
                           Diana, Texas  75640
23                         (903) 663-5082

24

25  (Proceedings recorded by mechanical stenography,

transcript produced on a CAT system.)

1                    I N D E X

2

3

4   November 5, 2009

5                                              Page

6       Appearances                            1

7       Hearing                                3

8       Court Reporter's Certificate           23

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

         1              COURT SECURITY OFFICER:  All rise.

         2              THE COURT:  Please be seated.

         3              All right.  We have a motion to compel set

         4    today in Bright Response versus Google, 2:07-371.

         5              What says the plaintiff?

         6              MR. SPANGLER:  Your Honor, Andrew Spangler

         7    on behalf of the plaintiff.  Ready to proceed.

         8              THE COURT:  All right.  For the defendant?

         9              MR. BUFE:  Good afternoon, Your Honor.  May

        10    it please the Court, John Bufe and Jason White for

        11    defendant, Yahoo.  We're present and ready, Your Honor.

        12              THE COURT:  All right.  Good afternoon.

        13              Tell me, what's the status of the motion?

        14    Where are we on this?

        15              MR. SPANGLER:  Your Honor, we're partly

        16    resolved, but not completely.  If the Court would

        17    indulge me, I'd like to explain why we're still -- still

        18    here.

        19              THE COURT:  Sure.  Yeah, go use the podium,

        20    please.

        21              MR. SPANGLER:  Okay.  Basically, Your Honor,

        22    we're here for some certainty from the Court as opposed

        23    to some agreements between the parties.  Starting back

        24    last summer, we had a hearing regarding a protective

        25    order in front of Judge Folsom over technology that

1  overlaps to this one a great deal, the PA Advisors case.

2  You'll see that actually the protective orders are in

3  line with one another.

4          So back then we raised the issue --

5  obviously, they knew the issue of source code

6  production.  We requested in September -- I have the

7  correspondence if the Court wants to see it -- when

8  we're going to get the source code?  We need the source

9  code.  Followed up again in March.  When are we going to

10 get the source code?  We need the source code.

11         Come June, we have new counsel that can read

12 source code, which was helpful, named Ari Rafilson, and

13 he again started asking for the source code.  Not much

14 trickled in until after we filed the motion to compel a

15 year and a half after all this started.

16         Now, since then, we've had a lot of source

17 code produced but not everything we need, and the reason

18 we're still here is for two reasons.  One, there's some

19 specific stuff that we need that we haven't gotten.

20 And, two, there is a lack of trust on my client's part,

21 not to Mr. White, but as to his client, Yahoo, that once

22 the motion is pulled down, if they stop producing again,

23 there's no motion pending, we have to start this process

24 all over again.  So we'd like to get some orders in

25 place.

1        And, additionally, there's an issue that was

2   raised just a day or two ago in the PA Advisors case

3   that's also applicable to this one regarding an

4   amendment to the protective order.  So if the Court

5   would allow me to address those, I'd be --

6        THE COURT:  Sure.  Well, I mean, is that

7   briefed before me?  It just came up?

8        MR. SPANGLER:  It just came up.  It's a

9   specific issue about whether a printer should be in a

10   room or not.  So I thought instead of briefing for six

11   weeks, we might raise it now and see if the Court would

12   resolve it or not.

13        THE COURT:  Well, okay.  What's the issue?

14        MR. SPANGLER:  The issue is the agreed

15   protective order that Yahoo agreed to in both the PA

16   Advisors case and in this case allows for a printer to

17   be in the room whereby our expert prints off a file as

18   it sees one that's relevant and important.  Then gets a

19   Bates number, provides it to the other side, gets a

20   Bates number, and then we move forward with the case.

21        Yahoo refuses to put a printer in the room

22   and has now taken the position that my client has to

23   list -- my expert has to go back through and list every

24   file and line number it needs printed, submit that to

25   the other side, and wait for them to print it and send

1    it back.

2              To give you an idea, I have a list of that

3    that adds a couple of hours each time my expert has to

4    do that which has cost us, and a year and a half after

5    we had an agreement in place, we're now changing it.  So

6    that's the issue with respect to the printer.

7              THE COURT:  Okay.  Do you have -- okay.  All

8    right.

9              MR. SPANGLER:  Yes, sir.

10             THE COURT:  All right.

11             MR. SPANGLER:  Would you like to know the

12   specific stuff we --- we'd like for the relief on the

13   motion or --

14             THE COURT:  Well, yeah.  I mean, I need know

15   exactly what you're asking me to do.

16             MR. SPANGLER:  Okay.  So what we'd like is

17   the code that we've asked for to date, that all of it be

18   produced by Monday at 9:00 a.m.  That code is the

19   Yahoo's Click Server and associated software.  That was

20   raised October 27th, was not reflected in Yahoo's

21   response on November 1st.

22             The Machine Learning software, the produced

23   source code has a class of -- a code called MRL Model

24   Builder which is part of the Machine Learning code, but

25   that has been produced.  The production of source code

1    that calls the produced source code, we need that code

2    to understand how the codes -- all the different codes

3    fit within the accused instrumentalities.  There's a

4    header file, which I'm sure the Court does not want me

5    to read, but I can provide it to the Court, that exists.

6    The reference appears to be somewhat important.  That

7    hasn't been produced.

8              Yahoo's tool bar and web browser, that was

9    also requested on October 27th but was not addressed in

10   Mr. White's letter of November 1st.  So we'd like all of

11   that by 9:00 a.m. on Monday.

12             And then source code that -- we want all of

13   that by 9:00 a.m.  If there's future code that we find

14   that's relevant that should have been produced, we'd

15   like an order that says that has to be produced within

16   48 hours.  And then because this is stretched out so

17   far, we'd like a 30(b)(6) directed to something

18   consistent with the Court's Laser Dynamic's opinion

19   specifically addressed to what the functionality is,

20   where it's located.  We had to spend a lot of time late

21   in the case trying to put this together, and we really

22   need to expedite that process.

23             And the last issue we raise, we tried to

24   stipulate, we can't reach a stipulation this week.  We'd

25   like the Court to order that if the parties cannot reach

1   a stipulation regarding the multiple versions of the

2   source code, that Yahoo be ordered to provide those

3   multiple versions, and by that, I mean, we have a

4   stipulation with Google who's also in this case that

5   because this -- the damages are over time, there's

6   various versions of software that implemented these

7   accused instrumentalities and functions, and Google, in

8   part, response, and I understand it's a stipulation, a

9   single version will apply across all of them so that

10  they don't have to produce multiple versions of code,

11  and we don't have to review multiple versions of code.

12          We do not have that agreement with Yahoo, so

13  we either need that agreement, or we need that code in

14  an expedited process.  So that's what we're asking for,

15  Your Honor.

16          THE COURT:  Okay.  Let's hear a response.

17          MR. WHITE:  Good afternoon, Your Honor.

18  Jason White on behalf of Yahoo.

19          THE COURT:  Good afternoon.

20          MR. WHITE:  I'd prefer to start with the

21  last issue first and sort of work back if that makes

22  sense to you.

23          THE COURT:  That's fine with me.

24          MR. WHITE:  On the stipulation, obviously

25  that's an issue that's not been briefed.  The status of

1   that is we have been discussing whether we can enter

2   into a stipulation that describes how the functionality

3   across multiple versions has changed or not changed in

4   the Yahoo system.

5         The ball is actually in the plaintiff's

6   court on that.  I sent a proposal to them -- I don't

7   have the letter here because I didn't know this issue

8   was going to come up.  But I sent a letter to them most

9   recently saying, "We are interested in entering into

10   such a stipulation if you can identify the functionality

11   that you want, a stipulation on it, and also the time

12   frame."

13         And on the time frame, that's important

14   because Yahoo has not personally operated the accused

15   instrumentalities for the length of the accused

16   infringement.  For example, the algorithmic search

17   results that are available on Yahoo's web page were at a

18   time provided by Google.  And at a time after a certain

19   date, then Yahoo had its own system in place.  And so as

20   you go back through time, we can't give you a blanket

21   stipulation saying that for the entire time of the

22   accused infringement, these systems operated

23   identically.  We just can't do that.

24         But we will work with them and have

25   repeatedly offered to work with them on stipulations

1    regarding specific functionality over specific periods

2    of time.  And that was the proposal that I made to them

3    that they could come back to me, and I -- my

4    understanding was that I spoke with their counsel this

5    week about that, that they would come back to me with a

6    proposal of, "Here's the functionality that we want a

7    stipulation on, and here's the period of time."

8              So I'm a little bit surprised that the issue

9    was raised today.

10             THE COURT:  Well, have -- I mean, okay.

11   Have you produced all of the versions of the source

12   code, though, despite whether or not you've had a

13   stipulation in place?

14             MR. WHITE:  We have not produced every

15   historical version of the source code.

16             THE COURT:  Okay.  Those are relevant, and

17   their production, then, is overdue, okay?  So you need

18   to produce those.

19             Now, if you can reach a stipulation that

20   absolves your client from the necessity of having to do

21   that, I encourage you to do that, but you're not going

22   to get to have it both ways, refrain from producing the

23   prior versions while you work out a stipulation and then

24   worry about working out the stipulation.  I mean, the

25   order of this Court is that those are -- those --

1    they're overdue, and they're relevant, and they need to

2    be produced.

3            Now, I -- you know, I'm not in the business

4    of requiring you to -- to do something that you can

5    resolve by stipulation.  So if you can get -- get a

6    stipulation in place, then, quickly, then I would

7    encourage you to do that, okay?

8            MR. WHITE:  I understand, Your Honor.  I

9    fully expect we will do that.  If we -- if the

10   version -- the amount of code would be overwhelming to

11   anybody, and it would be basically unmanageable, so we

12   will --

13           THE COURT:  Well, that's -- you know, I

14   understand that position, but I've got -- what is before

15   me is a motion to compel production of source code, and

16   you've just told me that there are versions out there

17   that hadn't been produced, so I'm -- you know, without

18   regard to whether I ought to be taking up the

19   stipulation or not, I'm taking up that part of it, okay?

20           MR. WHITE:  Understood.  Understood.

21           On the printer issue, again, I didn't know

22   that that would be raised.  We did file a motion to

23   modify the protective order in the other case that

24   counsel mentioned.  The issue there is with access to

25   printing the source code, who actually prints out and

1    labels the source code.

2              I did want to correct something that was

3    stated before.  The current protective order requires

4    the process be as follows.  It does say that we should

5    provide a printer for their expert to use.  That printer

6    would allow them to print out some information.  They

7    would have to send that to us where we would label it

8    and then send it back to them.  And what Yahoo has asked

9    is that we modify that protective order to allow for us

10   to handle the printing and return it to them with the

11   labels on it.

12             And there's really two reasons for doing

13   that, Your Honor.  The first is the production has been

14   ordered to be made in Dallas, Texas, and my client,

15   Yahoo, is located in California.  So it has to load

16   source code, which it feels is its most valuable asset,

17   basically load it onto a computer and then ship it to

18   Dallas.

19             And if we were to allow the printing, that

20   would enable external ports to be active, so if somehow

21   the computer got misplaced or got in the hands of

22   somebody that we don't want it in the hands of, they

23   could access that code, copy it, produce it, print it,

24   whatever you want.

25             In order to protect the code, what Yahoo

 1  does and their practice has been is to disable all

 2  external ports on the computer.  So it's basically a

 3  black box lockdown laptop that you cannot physically get

 4  the code out of.  It does allow an expert to review the

 5  code, but it does not allow them to print from the code.

 6          And what we've proposed is that if you

 7  identify the files, whatever you want, however you want

 8  to identify it, the code that you want copies of, we

 9  will print that, get that back to you ASAP so that you

10  have it.

11          So it's not an issue of who's got access to

12  the code or when they do it, it's just a matter of who

13  handles the printing.  And because it's a laptop that

14  has to be shipped down here, that was a very -- concern

15  that -- with having an open port, if you will, on the

16  laptop.  That also gives us control over what's printed,

17  to know what's printed to make sure it gets properly

18  labeled and properly stamped before it gets produced.

19  If their expert can print it, there's no guarantee it's

20  going to get properly labeled, properly stamped, turned

21  over to us and whatnot.

22          So that is the motion that's currently

23  before Judge Folsom in the other case, and we can file

24  the same motion before Your Honor in a matter of days if

25  you'd like to brief this issue.

          1          THE COURT:  Well, my question, though, to
          2     you now is does the protective order, as it's now in
          3     place, require them to go through that process before
          4     printing portions of the source code?
          5          MR. WHITE:  Well, the current version of the
          6     protective order does not.
          7          THE COURT:  Okay.  Here's -- here's --
          8     here's my ruling, then, and see if you understand me.
          9     There's no -- been no motion to modify the protective
         10     order in my case, correct?
         11          MR. WHITE:  There has been no order, right.
         12          THE COURT:  To the extent that you are
         13     imposing additional requirements on the other side for
         14     printing -- for printing source code materials, you are
         15     violating or threatening the violation of an order of
         16     this Court, okay?  So you're not entitled to resort to
         17     self-help.  Do you understand me?
         18          MR. WHITE:  I do understand, Your Honor.
         19          THE COURT:  Because I think I get a feeling
         20     for what's going on here, and it's -- and I think that
         21     you've got an in order place that you're -- that you're
         22     not happy with, and you're going to resort to self-help
         23     measures while at the same time moving for relief from
         24     the Court from the obligations that are imposed on you
         25     in this -- in the order that is in place, and I -- I'm

1    just -- you're in the wrong court to be doing that.  Do

2    you understand me?

3           MR. WHITE:  I do, Your Honor.  And if I

4    may -- I don't want to interrupt you.

5           THE COURT:  You may.  I'm through.

6           MR. WHITE:  We did speak with the prior

7    counsel, who's now withdrawn from this case, and we

8    explained to him the concerns that we had for the

9    protective order and our desire to do it in a different

10    way, and they were amenable to that to go ahead with the

11    production.

12           So I didn't know it was going to be an issue

13    that would come up because, like I said, the prior

14    counsel was in agreement with that, and we did the

15    initial source code production in this case with that

16    procedure and never heard a complaint.  It's only now

17    that there's new counsel involved.  And so I

18    understand --

19           THE COURT:  I'm -- I'm making no finding

20    that you're in violation of the order, or that, if so,

21    that it's willful or you didn't have a reason for

22    embarking on the course of the conduct that you embarked

23    on, okay?

24           MR. WHITE:  Understood.  Understood.

25           THE COURT:  But what I'm telling you is how

     1    I view it.  I've got a dispute before me, and I've got

     2    an order that's in place.

     3              MR. WHITE:  Understood, Your Honor.

     4              THE COURT:  And I don't have a modified

     5    version of it, okay?

     6              MR. WHITE:  Okay.

     7              THE COURT:  So you need to comply with the

     8    order as it's -- as it's written.

     9              MR. WHITE:  Understood, Your Honor.

    10              THE COURT:  Okay.  Now, go on.

    11              MR. WHITE:  The last point is this -- the

    12    code that's been produced -- actually, to bring you up

    13    to speed, you said where are we at with this?  And I

    14    think Counsel did reflect that we produced a substantial

    15    amount of code since the -- since the motion has been

    16    filed.

    17              As we believe, we had produced all the

    18    relevant code.  They did an initial inspection in this

    19    case that lasted for several days.  A lot of code was

    20    reviewed.  They did make some additional requests for

    21    additional code, and we are in the process of gathering

    22    that for them.  Some of it is large.  We mentioned in

    23    our surreply that, for example, one -- one specific

    24    module is 29 million lines of code, 30 gigabytes of

    25    data.  We have to process that internally at Yahoo and

1  review it, get it loaded on the laptop, and then shipped

2  out.

3        So we're working just as diligently as we

4  can on that.  We expect that their additional requests

5  for code will be produced to them next week, and that

6  will cover, I believe, all the open issues.

7        Now, Counsel raised a couple of things this

8  morning about Machine Learning software, something that

9  calls produced source code a header file and tool bar,

10  and I don't have any specific requests for that.  I

11  don't know how that's relevant to the case, but if they

12  tell us they need it and it's relevant to the case, we

13  will get it to them ASAP, and that's been our -- our

14  stance in this case.

15        I don't know that we can get it to them by

16  Monday morning, 9:00 a.m., given that this has to get

17  put on a laptop in California, it has to be internally

18  quality control checked so that there's nothing going

19  out the door that we don't intend to, and then it has to

20  get shipped down to Dallas.  So if I could get some

21  additional time, we would be happy to do that with them.

22        THE COURT:  How much are you asking for?

23        MR. WHITE:  If we could get five days of

24  time.

25        THE COURT:  Friday?

         1            MR. WHITE:  Next Friday, yes.

         2            THE COURT:  Friday by 9:00?

         3            MR. WHITE:  Yeah, and if we can get some

         4    specificity on some of these other things.  I'm not

         5    exactly sure what Machine Learning software is.  That --

         6    that hasn't been raised in any letter that I've seen.

         7            THE COURT:  Well, you're going to get a

         8    chance to do that because he's going to -- before y'all

         9    leave the courtroom, he's going to give you a written --

        10    handwritten, if it needs to be, but he's going to give

        11    you a written request for that exactly what they're

        12    asking for.

        13            MR. WHITE:  Perfect, Your Honor.

        14            THE COURT:  And that's the order of the

        15    Court that it be produced by next Friday at 9:00 o'clock

        16    in the morning, okay?

        17            MR. WHITE:  Okay.  Thank you, Your Honor.

        18            THE COURT:  All right.  Anything else we can

        19    do on this case today from the plaintiff's standpoint?

        20            MR. SPANGLER:  Yes, Your Honor.  There are

        21    two issues raised.  One -- one that's directed to the

        22    source code directly, and that is, as Mr. White

        23    admitted, all the source code got dumped less than a

        24    month ago, and we're wading through, like we said,

        25    25 million lines of code to try and find what's there

 1   and what's not there.  We needed it over a year ago.

 2              We -- that's why this whole expedited

 3   process we're trying to put in place.  So the -- the

 4   last thing we're asking for is the Court to require --

 5   and if it can't be done in 48 hours, fine.  Let's -- you

 6   know, I'll take whatever the Court will give me, but I'm

 7   sure we're learning more from our expert about stuff

 8   that we needed that wasn't produced, calls to different

 9   subroutines, and we're having to do this super fast as

10   opposed to over six months.

11              So if the Court can put in an order that

12   maybe we get it in five days, like we're doing for this

13   source code, it would be greatly appreciated so we can

14   get through it.

15              THE COURT:  Well, I'm not sure what you're

16   asking me for beyond what I've already given you.

17              MR. SPANGLER:  Okay.  Let me -- maybe I

18   wasn't clear.  The code that you just ordered on us,

19   stuff that we have listed, I specifically identified

20   here about 10 minutes ago.

21              THE COURT:  Yes.

22              MR. SPANGLER:  What I'm talking about now is

23   our expert is saying -- she's going through it as fast

24   as she -- she can, that she believes there's other stuff

25   she's probably going to come across that hasn't been

1    identified yet, and we'd like an order that says if we

2    find it, it's relevant, as we a wade through all these

3    millions of lines of code, that they have a deadline to

4    get us that supplemental code that should have been

5    produced a long time ago.

6            THE COURT:  Well, I'm not going to try to

7    assess the relevancy of code that has not been produced,

8    okay?  What I've ordered produced is the code that is --

9    that you've identified, the other source code for the

10   prior versions of the -- of the products that have been

11   accused in the case.

12           The order is that all relevant code needs to

13   be produced, you know, by next Friday at 9:00 o'clock in

14   the morning.

15           Now, if something's been withheld from that,

16   I'll deal with that by separate motion, but, you know,

17   I -- what I'm going to encourage you to do in lieu of a

18   30(b)(6) deposition on this issue is I'm going to

19   require the defendant, and your counsel can be present,

20   to identify a technical person that's familiar with the

21   code and to make that person reasonably accessible to

22   the plaintiff and their expert be it for telephone

23   communication in case there's a question.  And your --

24   counsel for Yahoo can certainly be present on the call.

25   I'm not going to make you designate someone to -- to

1   assist them without counsel being present.

2           But I'm not going to order a 30(b)(6)

3   deposition at this time, but if -- if the procedure I've

4   outlined comes up short, then I'll take another request

5   for, you know, additional orders for the production of

6   additional code and for the production of additional

7   witnesses to explain how the code works together, but I

8   would like y'all to do it on a more informal basis, if

9   possible, okay?

10          MR. BUFE:  Understood.

11          MR. SPANGLER:  Your Honor, that's all I

12  have.  I appreciate your time.

13          THE COURT:  Anything from Yahoo?

14          MR. WHITE:  I do have one additional

15  request, on the -- the order that you're giving for next

16  Friday, is that for the additional historical versions

17  as well as the specific requests?

18          THE COURT:  Yes.

19          MR. WHITE:  Okay.

20          THE COURT:  And I -- having said that,

21  consent to an appropriate stipulation, Mr. Spangler,

22  will not be unreasonably withheld, okay?

23          MR. SPANGLER:  We would agree.

24          THE COURT:  Okay?

25          MR. SPANGLER:  Yes, sir.

```
1              THE COURT:  And I'll -- I'll expect to hear

2     about it if it is, all right?

3              MR. WHITE:  Understood, Your Honor.  Thank

4     you.

5              THE COURT:  We're in recess.

6              COURT SECURITY OFFICER:  All rise.

7              (Hearing concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                           CERTIFICATION

2

3               I HEREBY CERTIFY that the foregoing is a

4    true and correct transcript from the stenographic notes

5    of the proceedings in the above-entitled matter to the

6    best of my ability.

7

8

9
     SHELLY HOLMES                            Date
10   Deputy Official Reporter
     State of Texas No.: 7804
11   Expiration Date:     12/31/10

12

13

14

15

16

17

18

19

20

21

22

23

24

25