```
 1                   IN THE UNITED STATES DISTRICT COURT
                      FOR THE EASTERN DISTRICT OF TEXAS
 2                            MARSHALL DIVISION

 3   BRIGHT RESPONSE, LLC          §    Civil Docket No.
                                   §    2:07-CV-371-CE
 4                                 §
     V.                            §
 5                                 §    Marshall, Texas
                                   §    November 23, 2009
 6   GOOGLE, INC., ET AL           §    9:30 a.m.

 7
                         TRANSCRIPT OF MOTIONS HEARING
 8                 BEFORE THE HONORABLE CHAD EVERINGHAM
                       UNITED STATES MAGISTRATE JUDGE
 9

10   APPEARANCES:

11   FOR THE PLAINTIFF:             MR. ANDREW SPANGLER
                                    Spangler Law PC
12                                  208 N. Green St.
                                    Suite 300
13                                  Longview, TX 75601

14   FOR THE DEFENDANTS:            MR. JASON C. WHITE
                                    Howrey LLP – Chicago
15                                  321 North Clark St.
                                    Suite 3400
16                                  Chicago, IL 60610

17   APPEARANCES CONTINUED ON NEXT PAGE:

18

19

20

21   COURT REPORTER/TRANSCRIBER:    MS. SUSAN SIMMONS, CSR
                                    Official Court Reporter
22                                  100 East Houston, Suite 125
                                    Marshall, Texas 75670
23                                  903/935-3868

24   (Proceedings recorded by digital recording, transcript
     produced on CAT system.)
25
```

1  APPEARANCES CONTINUED:

2  FOR THE DEFENDANTS:             MR. JOSHUA REED THANE
                                   MR. JOHN SCOTT ANDREWS
3                                  Haltom and Doan
                                   6500 Summerhill Road
4                                  Suite 100
                                   P.O. Box 6227
5                                  Texarkana, TX 75505

6                                  MR. JOHN FREDERICK BUFE
                                   Potter Minton
7                                  P.O. Box 359
                                   Tyler, TX 75710
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

COURT SECURITY OFFICER: All rise.

THE COURT: Be seated.

All right. Case 2:07-CV-371, Bright Response versus Google and others. Got a hearing on a motion to modify the protective order.

What says the Plaintiff?

MR. SPANGLER: Your Honor, Andrew Spangler on behalf of the Plaintiff, ready to proceed.

THE COURT: For the Defendant?

MR. THANE: Your Honor, Josh Thane with Haltom and Doan. Mr. Scott Andrews with Haltom and Doan, Jason White of Howrey, and Mr. John Bufe of Potter Minton, ready to proceed.

THE COURT: All right. It's your motion. Go ahead and proceed.

MR. WHITE: Good morning, Your Honor. Jason White from Howrey on behalf of Defendant Yahoo!.

THE COURT: Yes, sir.

MR. WHITE: We're here on our motion to modify the protective order. I want to start with a little bit of background and trace how we got to where we are today.

The protective order was something that Yahoo! did agree to many, many months ago, maybe even years at this point. The protective order does require that Yahoo! provide

1  a printer that gives the Plaintiff access to print -- actually

2  create a physical print -- printed documents while it's

3  reviewing the source code.  The current version of the

4  protective order requires that the Plaintiff then turn those

5  over to us so that Yahoo! has a chance to review the requested

6  print files to see whether it's proper to have them, label

7  them, get them produced back to the Plaintiff.  Since we --

8              THE COURT:  Well, let me ask you -- I -- and I

9  -- sometimes I don't think of questions at -- at the time when

10 you're through speaking --

11             MR. WHITE:  Sure.

12             THE COURT:  -- so I -- I'll try to be mindful

13 and not interrupt you.

14             With respect to the current terms of the

15 protective order, have those proven unworkable for some

16 reason?

17             MR. WHITE:  They are of extreme concern to

18 Yahoo!, the current terms of the protective order.  And the

19 simple answer -- that is, we cannot figure out a way to

20 provide a printer on a laptop that does not allow or create a

21 security risk that that same port the printer's connected to

22 could be used to take the source code off the comput -- off

23 the computer.

24             THE COURT:  Okay.

25             MR. WHITE:  I've asked their technical folks,

```
 1  is there any way that they could restrict the use of that port
 2  to just printing, and we've not come up with a technical
 3  solution to solve that.
 4              THE COURT:  That -- that concern was there at
 5  the time the stipulation was entered though, correct?
 6              MR. WHITE:  Yes and no.
 7              THE COURT:  Science has not changed, has it?
 8              MR. WHITE:  The science has not changed,
 9  correct.
10              THE COURT:  Well, how have the terms of this
11  stipulation become unworkable since the time you entered into
12  it?
13              MR. WHITE:  Sure.  So from the -- from Yahoo!'s
14  perspective there's a different in-house team that I'm dealing
15  with and also a different corporate policy.  At the time that
16  they entered into this agreement, they had entered into other
17  protective orders that allowed printers to be used in the
18  manner that this current protective order allows for.  They
19  experienced some security issues in other cases, not this
20  case, but other cases where people were doing things
21  surreptitiously to the code in the computers and that caused
22  Yahoo! to sort of take an overall look at the policy and
23  review it.  And that's -- the policy changed earlier this
24  year where they adopted a policy that if we're sending out a
25  code -- computer with code on it for review, we will not have
```

1  any open ports or any active ports on it so that people cannot
2  get access to the code.
3             And it's not the experts, per se.  It's
4  anybody.  This thing is in transit.  It's stored at different
5  locations.  We can't possibly have eyeballs on it 24 hours a
6  day when it's out of our possession.  So that's the answer to
7  your question is what has caused them to revisit or believe
8  that these terms are unworkable.  It's things that we've seen
9  in other situations that have asked us to modify this
10 protective order.
11            THE COURT:  Okay.  Go ahead.
12            MR. WHITE:  Sure.  And -- and just so we're
13 clear is -- we're just trying to protect the code which is
14 Yahoo!'s most valuable asset.  We're only talking about a very
15 slight modification that controls who actually generates the
16 physical printout.  We're not talking about which code they
17 get, who gets to see it, when they get to see it.  We've given
18 them printouts.  I think that they'll admit that they're
19 getting those timely from us under -- with the printer or when
20 they didn't have the printer.  We've responded to requests for
21 additional codes.  We're trying to give them access to the
22 code.  It's not a situation where we're trying to restrict
23 their access to the code.  It's only a situation where we're
24 trying to limit our risk and vulnerability by having that
25 source code exposed for possible viewing, stealing, whatever

1  you want to call it, by any number of third parties.  So it
2  really is just a security concern at this point.
3           With respect to whether we think it prejudices
4  the Plaintiff, we don't believe it does.  We've provided a
5  number of work arounds for them, short of them actually having
6  the physical printer there.
7           One of the ones that we've offered recently is
8  a print to file option so as they're -- one of the main
9  reasons that they raise in their briefs as a -- something that
10 they think was prejudicial was they said it was cumbersome for
11 their expert to write down file names that they want printouts
12 of, send them to us in a letter or where -- whatnot, and then
13 have us get those files and send them back to them.
14          We've added a print to file option which allows
15 their expert as she's looking at the code to actually print
16 that code to a file so an electronic basically -- storage
17 location is created with all the files that she wants copies
18 of.  We will then go in, find those files on our own, we being
19 Yahoo!, get the printouts generated, then get them sent to
20 them so that they don't have to do any transposition or
21 writing down of files names or anything like that.
22          So in terms of prejudice and speed and getting
23 the -- and getting them the printouts, we think that those
24 solutions that we've offered will do that for them with
25 absolutely no prejudice to them, both in terms of what they

1  get, how long it takes it to get to them, and what efforts

2  they have to make to -- to relay the requests to us.

3              And it's for those reasons that we'd ask for

4  this just slight modification to the protective order to allow

5  us to generate the print -- the physical files, gives us the

6  security we need, the protection while not prejudicing the

7  Plaintiff.

8              THE COURT:  Is Yahoo! currently in compliance

9  with the terms of the protective order?

10             MR. WHITE:  We are, Your Honor.

11             THE COURT:  When did you bring yourself in

12 compliance with the terms of the protective order?

13             MR. WHITE:  Friday morning before they started

14 the most recent review.

15             THE COURT:  And how many days was their expert

16 there before Yahoo! brought self into compliance with the

17 terms of the protective order?

18             MR. WHITE:  I believe it was two.  I'll ask Mr.

19 Spangler to confirm.  I think that she was there reviewing

20 code on Wednesday and Thursday, and then we got somebody -- I

21 think flew out from California when we got your order that

22 came out -- the minute order with the hardware or the software

23 necessary, trying to reconfigure the printer and get a printer

24 up and running by 9:00 a.m. on Friday.

25             THE COURT:  Well, that was -- just for purposes

1  that record, that would have been the third time you had been
2  provided with my suggestions as to how to comply with the
3  order.
4              MR. WHITE:  I understand.
5              THE COURT:  Once in the order itself that you
6  agreed to, a second time before this happened in open court,
7  and then finally while I was traveling yet a third time,
8  correct?
9              MR. WHITE:  I understand that, yes.
10             THE COURT:  Okay.  Okay.  Thank you.
11             MR. SPANGLER:  Your Honor, I'd like to address
12 each point if I could, possibly in the reversal of the
13 questions that the Court asked.
14             First, the number of days my consultant has
15 been there, I can assure the Court it's been well more than
16 two days.  Probably seven to eight days of full time, over a
17 span of a few weeks.  We got the source code for the first
18 time in October, so obviously it wasn't months and months.
19             There's no question that we agree with Yahoo!
20 that it's a valuable asset.  It was a valuable asset a year
21 and a half ago.  Its value hasn't changed.  As counsel in over
22 fifty cases of its source code provisions, never once been
23 part of a case where we've had a violation and produced source
24 code.  And we have print capabilities in nearly every one of
25 those.

1               To the Court's question of whether it's
2    workable, it is workable because we do it with Google.  Google
3    prints the source code, we get it, we give it to them, they
4    give it back.  The difference between the print to file and
5    the way we're doing it now, if it works correctly, we'll agree
6    with Yahoo! that there is not much difference in terms of
7    time, however, for example, we've tried the print to file
8    feature once and our consultant used it, and then the files
9    disappeared and she had to start over.  Whereas, if she prints
10   as she goes, that chance of potential mistake doesn't exist.
11              The capacity issue, we've had some problems
12   with the printer.  Mr. White has taken care of that.  They're
13   working on getting the printer up and working, but we've had
14   one day out of a year and a half since this agreement where
15   our consultant has been able to go in, review the code in
16   compliance with the protective order.
17              And the disputes over the protective order were
18   over a year and a half ago, and they weren't just written down
19   and agreed to, there were actually some disputes surrounding
20   the source code and where was it going to be produced and how
21   and I argued that hearing.  And Mr. White didn't dispute the
22   Plaintiff's position.  Google did.  Judge Folsom ruled, and it
23   impacted both this case and the PA Advisors case.
24              And part of this also deals with promptness, to
25   be honest with the Court.  If this had been raised months and

months ago, a year ago when the source code should have been produced and the parties had had time to maybe work it out, it's possible we might be in a slightly different position, but deadlines are fast approaching, we're just now getting to it.  We agreed to that procedure a year and a half ago because we believed at that time it was the most efficient way to handle this.

The only thing that has changed in the last year and a half is, one, last month, we finally got the code. And, two, Yahoo! has new lawyers, new in-house counsel. That's it.  That's the only change.  They have a new policy that runs counter to this Court's order, but they never sought relief until now.

Your Honor, other than that, I don't have any other information for you.

THE COURT:  Well, tell me what strenuous objections you have to the proposed modification, other than its timeliness.

MR. SPANGLER:  The big issue is the possibility -- and it's already been shown once -- of mistake.  They already are having technical glitches on how fast the printer is working, on -- we've lost all the print to file stuff that's happened once.  And for printing as we're going, as a consultant sees it, when she reviews it, she finds something relevant, she prints it right then, the mistakes don't happen.

```
 1  There's no possibility of wasted time, effort, and money.
 2  That is the biggest prejudice.  There's no chance of mistake.
 3  And with the deadlines, we believe that's appropriate.
 4                  THE COURT:  Well, that's a timeliness issue.
 5                  MR. SPANGLER:  That is correct, Your Honor.
 6                  THE COURT:  The source code review issues arise
 7  a lot though, and they're -- what you're suggesting to me is
 8  if they're -- if they arise early in the review, then the
 9  parties can usually resolve them and then on a going forward
10  basis, there's not much problem then, correct?
11                  MR. SPANGLER:  If this had been raised a lot
12  earlier, it is possible the Plaintiff would be standing --
13  would not be standing here.  To be completely candid with the
14  Court, that is correct.  It is possible.  I won't say a
15  hundred percent because like I said, this procedure has worked
16  just fine with Google.  It works in a lot of my other cases,
17  but, yes, timeliness of when it was produced obviously has an
18  impact on the position today.
19                  THE COURT:  Okay.
20                  MR SPANGLER:  And the last thing, Your Honor,
21  if I could raise, deals with the last hearing.  I told the
22  Court there was a stipulation with Google already in place
23  when the historical production was raised and that we didn't
24  have the multiple versions in the past.  That stipulation had
25  not yet been entered into.  And in fact, I believe the parties
```

1  are still fighting over it between Google and the Plaintiff.
2  Just wanted to clarify that for the Court.
3              THE COURT:  Well, with respect to Google and
4  the Plaintiff or with respect --
5              MR. SPANGLER:  Right.
6              THE COURT:  -- to Yahoo!?
7              MR. SPANGLER:  Yahoo! and the Plaintiff have
8  worked it out, but I told the Court that Google had finalized
9  it.  They have not yet done so.
10             THE COURT:  Okay.  Any reply?
11             MR. WHITE:  Very briefly, Your Honor.
12             And this is Jason White from Howrey again on
13 behalf of Yahoo!.
14             With respect to the issue he raised about a
15 chance of a mistake, Yahoo! has offered to provide one of its
16 technicians on site at the code review to assist their
17 technical expert, to explain any issues that she's got.  They
18 really do have concerns, security -- legitimate security
19 concerns about their code and they're willing to do things
20 that are even more expensive to them, like provide a
21 technician on site to assist the Plaintiff so we can assure
22 that there won't be any technical glitches going forward.  And
23 I think that's the only thing we can do beyond what we've
24 already done in this case, but they are willing to take any
25 measures necessary.  They feel so strongly about the security

1  of the code, that if it requires it, they're happy to provide

2  a technician on site to answer any questions, deal with any

3  technical glitches -- glitches that could arise, as well as

4  provide daily printouts of the source code to the expert on

5  site so she can have them just as she would if she were

6  printing them.  It's just purely an issue of who actually

7  presses print and generates the actual physical copy.

8              With respect to the timing of the request for

9  relief, as soon as the issues came to my attention, we moved

10 the Court both in nXn and in Bright Response.  As Your Honor

11 will recall, and in the briefs this issue did come up earlier

12 and I thought we had worked out an arrangement with the

13 Plaintiff's prior counsel.  Once it became clear that

14 Plaintiff's new counsel was not going to agree to that, we

15 moved the Court immediately to have the modification in place.

16 So just as soon as it did come to my attention, we did ask

17 Your Honor for relief.

18             And that -- that's all that I've got unless you

19 have additional questions for me, Your Honor.

20             THE COURT:  I don't have any additional

21 questions.

22             MR. WHITE:  Thank you, Your Honor.

23             THE COURT:  All right.  The motion to modify is

24 denied.  For purposes of the record, I'm finding that Yahoo!

25 has not shown good cause for the proposed modification.

```
 1                    Counsel, I don't doubt that -- that Yahoo!'s
 2   entitled to change its corporate policies as it sees fit, but
 3   there's a signed order of Court in place and -- and I'm not
 4   inclined to allow a party through its adoption of a new
 5   corporate policy to create a de facto modification of the
 6   terms of the Court order.  And if there had been a showing in
 7   this case that the terms of the protective order were
 8   unworkable because of some event that had happened in this
 9   case, such as a security breach, then I'd be inclined to adopt
10   your argument, but this record is plain that the only party to
11   this litigation that has not been in compliance with the terms
12   of the protective order is your client, Yahoo!.  And so in
13   light of that there's been no good cause shown to make the
14   modification as requested, and I'm denying it.
15                    We're in recess.
16                    COURT SECURITY OFFICER:  All rise.
17                         (Hearing adjourned.)
18                    *     *     *     *     *
19
20
21
22
23
24
25
```

1

2 **C E R T I F I C A T I O N**

3

4    I HEREBY CERTIFY that the foregoing is a

5 correct transcript from the digital recording of the

6 proceedings in the above-entitled matter to the best of my

7 ability.

8

9

10

11 /S/ Susan Simmons_____                1/12/10_____
   SUSAN SIMMONS, CSR                                DATE
12 Official Court Reporter
   State of Texas No.: 267
13 Expiration date: 12/31/10

14

15

16

17

18

19

20

21

22

23

24

25