# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

## MARSHALL DIVISION

| | |
|---|---|
| **BRIGHT RESPONSE, LLC** | **Civil Action No. 2:07-cv-371-TJW** |
| **Plaintiff,** | **JURY** |
| **v.** | |
| **GOOGLE INC., et al.,** | |
| **Defendants.** | |

## PLAINTIFF'S OPENING BRIEF REGARDING CLAIM CONSTRUCTION

# <u>TABLE OF CONTENTS</u>, continued

Page No.

I.   BACKGROUND AND NATURE OF CASE.................................................................. 1

II.  APPLICABLE LEGAL PRINCIPLES.................................................................... 1

III. UNDISPUTED CLAIM TERMS ........................................................................ 2

IV.  ADDITIONAL PARTIALLY AGREED TERMS.................................................. 2

V.   DISPUTED CLAIM TERMS ........................................................................... 3

     A.     Non-Interactive Electronic Message/The The Electronic Message: An Electronic Message Not Requiring Additional Input Or Supplementation From The Sender. ......3

     B.     Rule Base … Knowledge Engine:  A Knowledge Engine That Tests Whether An Electronic Message Meets One Or More Conditions, And If So, Applies Specified Actions. ...................................................................................................................4

     C.     Case Base Knowledge Engine:  A knowledge engine that processes electronic messages by comparing them to a stored set of exemplar cases. ................................7

     D.     Predetermined Responses:  No Construction Required Or "Responses prepared prior to the receipt of the electronic message.  The responses may be modified and/or altered based on the interpretation of the electronic message."........................9

     E.     Repository:  No Construction Required Or "A storage medium, for example, a database." .............................................................................................................10

     F.     Construction of the order in which the steps of the claimed methods must be performed:  No Construction Required....................................................................11

     G.     Requiring Assistance From A Human Operator: Requiring That A Manual Reviewer Review The Electronic Message Or Information Derived From The Electronic Message, Or Review, Revise Or Compose The Response To Be Delivered To The Source. .......................................................................................11

     H.     Case Model:  Text Or Other Information Useful In Comparing The Electronic Message To The Stored Case Models Of The Case Base.........................................13

     I.     A Set Of Attributes For Identifying Specific Features Of The Electronic Message: No Construction Required Or "A Set Of Attributes Describing Or Relating To Features Of The Electronic Message." ....................................................................15

     J.     Stored Case Models Of The Case Base / Stored Case Model:  A Set Of One Or More Stored Case Models. ........................................................................................16

     K.     Predetermined Match Weight:  A Predetermined Factor Controlling The Degree To Which A Stored Case Model's Score Is Increased By A Comparison Of Text And Attributes From A Case Model With Those From A Stored Case Model. .........17

Page No.

L.    Predetermined Mismatch Weight:  A Predetermined Factor Controlling The Degree To Which A Stored Case Model's Score Is Decreased By A Comparison Of Text And Attributes From A Case Model With Those From A Stored Case Model. ....................................................................................................................19

M.   Claims 30, 31, and 33 Are Not Invalid For Failure To Incorporate All Of The Limitations Of Claim 28. ........................................................................................19

VI.  CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

Page No

**Cases**

*Interactive Gift Express, Inc. v. Compuserve Inc.,*
    256 F.3d 1323 (Fed. Cir. 2001)....................................................................................11

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
    358 F.3d 898 (Fed. Cir. 2004)........................................................................................5

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005).................................................................................1, 8

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,*
    242 F.3d 1337 (Fed. Cir. 2001)......................................................................................2

*Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576 (Fed. Cir. 1996)........................................................................................1


**Statutes**

35 U.S.C. § 112....................................................................................................................19

# I. BACKGROUND AND NATURE OF CASE

The present case involves United States Patent No. 6,411,947 (the "'947 Patent") (Ex. A). The '947 Patent relates to an automated system for processing electronic messages. The '947 Patent teaches how electronic messages may be analyzed to determine whether they can be responded to automatically with predetermined responses that relate to the content of the message. The '947 Patent teaches that electronic messages can be processed with a combination of rule-based systems and case-based systems. The rule-based systems apply a set of rules to each message, and actions or responses are recommended based on those rules. The case-based systems use sophisticated techniques to compare the message to exemplary computer models and then recommend actions or responses prescribed by the model that best matches the message. Being able to generate automated responses that are relevant to the content of an electronic message is highly valuable in the area of online commerce, and the Defendants profit by exploiting this very capability.

The proceeding before the Court will construe the disputed terms of the '947 Patent, and thus determine the metes and bounds of Bright Response's intellectual property.

# II. APPLICABLE LEGAL PRINCIPLES

While the Court is clearly familiar with the law as it relates to claim construction, Bright Response highlights for the Court the overriding legal principles that are relevant to claim construction in this matter. First, a disputed claim term must be considered in the context of the entire claim. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("To begin with, the context in which a term is used in the asserted claim can be highly instructive."). "It is well settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e. the patent itself, including the claims, the specification, and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Second, the danger of reading limitations from the specific embodiments described in the specification must be avoided. *Phillips*, 415 F.3d at 1319-1320 ("one of the cardinal sins of

patent law [is] reading a limitation from the written description into the claims." (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001)).

As will be shown below, the Defendants' proposed constructions seek to add extraneous limitations to otherwise easily understood terms and/or unnecessarily substitute selected dictionary definitions for terms and phrases that would be familiar to a lay jury. Apparently, Defendants have done this in an attempt to further some non-infringement or invalidity defense.

## III.  UNDISPUTED CLAIM TERMS

The parties have agreed on proposed constructions for certain terms that are identified in the Joint Claim Construction and Prehearing Statement. (D.I. 201.) These proposed constructions are incorporated herein by reference.

## IV.  ADDITIONAL PARTIALLY AGREED TERMS

| CLAIM TERMS | BRIGHT RESPONSE AND GOOGLE'S PROPOSED CONSTRUCTION |
|---|---|
| Classifying the electronic message / the classification step[1] | Determining whether the electronic message falls into one or more categories. |
| Wherein each score is normalized by dividing the score by a maximum possible score for the stored case model[2] | Wherein each match score is divided by the maximum possible score for the stored case model. |

Bright Response and Google have reached agreement on proposed constructions for two additional terms. Bright Response and Google agree that the term "classifying the electronic message / the classification step" should be construed as "determining whether the electronic message falls into one or more categories." Bright Response and Google agree that the term "wherein each score is normalized by dividing the score by a maximum possible score for the stored case model" should be construed as "wherein each match score is divided by the maximum possible score for the stored case model."

---

[1]  The term "classifying the electronic message" appears in Claim 28.

[2]  The term "wherein each score is normalized by dividing the score by a maximum possible score for the stored case model" appears in Claim 31.

Bright Response respectfully requests that the Court adopt the above proposed constructions on which Bright Response and Google have agreed.

## V.    DISPUTED CLAIM TERMS

   A.    **Non-Interactive Electronic Message/The Electronic Message: An Electronic Message Not Requiring Additional Input Or Supplementation From The Sender.**[3]

| BRIGHT RESPONSE'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| An electronic message not requiring additional input or supplementation from the sender. | This claim term is indefinite. |

Bright Response proposes that the term "non-interactive electronic message" should be construed as:  "an electronic message not requiring additional input or supplementation from the sender."  Defendants contention that this term is indefinite is refuted by a clear disclosure in the patent specification of an embodiment of a non-interactive electronic message:

Unlike the help desk application of U.S. Pat. No. 5,581,664 described above, in the instant invention the data of the electronic message 11 is delivered to the automatic message interpreting and routing system 1 in a non-interactive manner. Specifically, the customer 50 transmits a non-interactive electronic message 11 to the system 1.   This non-interactive transmission of electronic messages 11 prescribes that the customer 50 need not later provide additional input to assist the system 1.

It is noted that *defining an electronic message 11 as being non-interactive prescribes only that the message content need not be supplemented*.  Thus, as described in more detail below, the form of the non-interactive electronic message 11 may be altered by the system 1 after the customer 50 sends it; however, the

---

[3] "Non-interactive electronic message" appears in Claim 26.

customer 50 is not required to provide supplemental information to assist the system 1.

(Ex. A at Col. 4:57–5:5 (*emphasis added*).)  This portion of the specification provides overwhelming support for Bright Response's proposed construction that a "non-interactive electronic message" is  "an electronic message not requiring additional input or supplementation from the sender."

Accordingly, Bright Response respectfully requests the Court to adopt its proposed construction.

**B.   Rule Base … Knowledge Engine:  A Knowledge Engine That Tests Whether An Electronic Message Meets One Or More Conditions, And If So, Applies Specified Actions.[4]**

| BRIGHT RESPONSE'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
| --- | --- |
| A knowledge engine that tests whether an electronic message meets one or more conditions, and if so, applies specified actions. | A knowledge engine that contains "question" rules which take the form of IF-THEN statements with a left hand side of the statement containing a condition (or set of conditions) and a right hand side of the statement containing conclusion(s) (or actions). |

**1.   Bright Response's proposed construction is fully supported by the specification.**

Bright Response proposes that the term "rule base … knowledge engine" should be construed as:  "a knowledge engine that tests whether an electronic message meets one or more conditions, and if so, applies specified actions."  Bright Response's proposed construction is supported by the specification.

For example., the specification states that "a typical rule will take the following form":

condition$_1$?, condition$_2$? . . . =>action$_1$, action$_2$ . . . .

---

[4]  The term "rule base knowledge engine" does not appear expressly in the claims.  The parties agree, however, that in the phrase "rule base and case base knowledge engine" in Claim 26 the terms "rule base" and "case base" both modify the term "knowledge engine."  Thus, the parties agree that Claim 26 should be construed as if "rule base knowledge engine" were an expressly recited term.

When the condition(s) on the left hand side of the rule are satisfied (or true)

then the rule "fires" and the action(s) are executed.

(Ex. A, 6:3-6.) A central concept of this embodiment of the rule base knowledge engine is that there are conditions and associated actions. This is captured by Bright Response's proposed construction.

> **2.** **Defendants' proposed construction improperly imports the limitations of the preferred embodiment contrary to controlling Federal Circuit authority.**

Defendants' proposed construction is flawed. First, it improperly seeks to incorporate a passage in the specification as if it were an express definition of the term. The specification states "[t]he rule base 35 of the automatic message reader 30 contains "question" rules which take the form of IF-THEN statements with a left hand side of the statement containing a condition (or set of conditions) and a right hand side of the statement containing conclusion(s) (or actions)." (Ex. A, 5:64-6:2.) The portion of this passage from "contains" onward is essentially Defendants' proposed construction. There are no words in the specification that state that this is the definition of a rule base knowledge engine, thus it is improper to incorporate this passage wholesale into the construction. "Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (quoting *Teleflex,* 299 F.3d 1313, 1327 (Fed. Cir. 2002)) (reversing district court's holding that injector claims were limited to injectors with pressure jackets, even though every embodiment in the specification had pressure jackets).

Another flaw in Defendants' proposed construction is that it will be confusing to a jury. The jury will have before them evidence of a real-world computer system whose behavior is controlled by source code and object code. Defendants' construction uses the term "question" out of context, suggesting that it might literally be an English-language interrogative statement ending with a question mark. This is, of course, an improper construction in the context of the specification. The entire disclosed embodiment is directed to a computerized system for

processing electronic messages. "Questions" are not necessarily posed to and processed by computers in an English-type format. Rather, consistent with Bright Responses construction, computers test conditions. The specification provides the following example:

> [A]n attribute setting question rule in the rule base 35 might be represented as
> follows:
>
> MERGER RULE:
>
> > text include "merger," or "XYZ Corp."?
> >
> > =>flag (set) merger attribute.

(Ex. A, 6:48:52.) This is an example of pseudo-code, *i.e.*, a plain language expression in English of the how an algorithm might be expressed. It is not unusual that this example uses a question mark because the purpose of pseudo-code is express the algorithm informally in an easily readable format. In actual source code, the test above might be expressed formally as follows:

> if emailText.find("merger") != -1 or emailText.find("XYZ Corp.") != -1
>
> > mergerFlag = True

This source code example tests the condition of whether either of the phrases "merger" or "XYZ Corp." appear in a string called "emailText," and if so, it takes the action of setting a variable called mergerFlag to the value "True."

Defendants' proposed construction might lead a jury to go looking for "questions," literally, and a left hand side and right hand side. The jury might be confused by Defendants' proposed construction and be led to believe that the above real-world statement would not be covered by it because the statement contains no "questions" and does not have a left hand side and right hand side. Rather, the "IF" portion of the rule appears on one line and the "THEN" portion of the rule follows on another line - whether the next line or many lines after - which is common for IF-THEN statements in actual programming languages. Also, it is common in many programming languages that the word "THEN" does not always need to appear expressly in the statement.

On the other hand, Bright Response's proposed construction is easily applied to the statement. The condition that is tested is "emailText.find("merger") != -1 or emailText.find("XYZ Corp.") != -1," *i.e.*, does emailText contain "merger" or "XYZ Corp.," and the action applied is "mergerFlag = True," *i.e.*, set the merger attribute flag to "True."

Accordingly, Bright Response's proposed construction should be adopted.

### C. Case Base Knowledge Engine: A knowledge engine that processes electronic messages by comparing them to a stored set of exemplar cases.[5]

| BRIGHT RESPONSE'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| A knowledge engine that processes electronic messages by comparing them to a stored set of exemplar cases. | A knowledge engine that compares an incoming set of facts (a "problem") with a stored set of exemplar cases representing past "problems" to obtain a set of prior cases which are used to formulate an appropriate action. |

Bright Response proposes that the term "case base knowledge engine" should be construed as: "a knowledge engine that processes electronic messages by comparing them to a stored set of exemplar cases." Bright Response's proposed construction is supported by the specification.

An embodiment of a case base knowledge engine is described in the specification as follows: "The case model of the E-mail message 11 is called a 'presented' case model and is compared with a set of stored case models in the case base 34. These stored case models are created from previously received E-mail messages 11 and associated responses." (Ex. A, 7:41-44.) Furthermore, "[t] attributes and description of the stored case model are searched vis-à-vis the attributes and description of a presented case model with the goal of finding a stored case model which has attributes and a description substantially matching the attributes and description of the presented case model." (Ex. A, 8:28-33.) One of ordinary skill in the art would understand that the specification teaches that case base knowledge engine takes a current, or "presented," case of an electronic message and compares it with stored exemplar cases. This is the procedure that Bright Response's proposed construction reflects.

---

[5] The term "case base knowledge engine" appears in Claim 26.

On the other hand, rather than capturing the full reasonable scope of the claim language, Defendants' proposed construction seeks to incorporate a single description of the prior art from the specification. The specification describes one implementation of a case base knowledge engine as follows:

> A help desk application utilizing a case based reasoning system, see U.S. Pat. No. 5,581,664 to Allen et al., has been described which compares an incoming set of facts (a "Problem") with a stored set of exemplar cases (a case base). The system then performs the same action for the problem as was performed in connection with the stored case. The case base is stored in the form of case attributes representing past "problems." The case attributes are compared to the facts of the incoming problem using trigram character matching to obtain a set of prior cases which may be useful in formulating an appropriate action.

Ex. A, 2:41-51. It is inappropriate to import the limitations of a single embodiment, as Defendants seek to do. *See Phillips*, 415 F.3d at 1319-1320.

Defendants' construction is wrong because it is inconsistent with the claims. Defendants' construction improperly limits the purpose of the comparison as "to obtain a set of prior cases which may be useful in formulating an appropriate action." This describes how the case base may be formed, not how it is used. The claims describe the method of *using* the case model, not *creating* it. See Ex. A, Claim 26 ("interpreting the electronic message using a rule base and case base knowledge engine").

Accordingly, Bright Response's proposed construction should be adopted.

**D. Predetermined Responses: No Construction Required Or "Responses prepared prior to the receipt of the electronic message. The responses may be modified and/or altered based on the interpretation of the electronic message."[6]**

| BRIGHT RESPONSE'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Bright Response is of the view that no construction of this term is required.<br><br>If construed:<br>Responses prepared prior to the receipt of the electronic message. The responses may be modified and/or altered based on the interpretation of the electronic message. | Responses prepared prior to the receipt of the electronic message. |

Bright Response proposes that the term "predetermined responses" needs no construction. In the context of the claims, applying the ordinary meaning of the words "predetermined" and "response" is sufficient.

The parties are in agreement that, if this term is construed, then it should be construed in part as "responses prepared prior to the receipt of the electronic message." Bright Response contends, however, that the construction must be clarified based on an express statement in the specification that "[i]t is understood that the *predetermined response may be modified and/or altered* in accordance with the interpretation of the E-mail message 11 if required to properly *respond to a customer* 50." (Ex. A, 9:32-35 (emphasis added).) This passage clarifies that the "predetermined response" is not necessarily the response that is ultimately sent. It is merely a default which "may be modified and/or altered."

Accordingly, Bright Response's proposed construction should be adopted.

---

[6] The term "predetermined responses" appears in Claim 26.

### E. Repository: No Construction Required Or "A storage medium, for example, a database."[7]

| BRIGHT RESPONSE'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Bright Response is of the view that no construction of this term is required.<br><br>If construed: A storage medium, for example, a database. | Database. |

Bright Response proposes that the term "repository" needs no construction. In the context of the claims, applying the ordinary meaning of the word "repository" is sufficient.

If this term is construed, then it should be construed as "a storage medium, for example, a database." The parties are agreed that a repository can be a database. Defendants, however, seek to limit the term to being *only* a database, which is contrary to the specification and the meaning of the word "repository." For example, the specification states that "one or more predetermined responses (or prepared responses) are retrieved from a *repository (or database)*." (Ex. A, 9:26-27.) One cannot conclude from this statement that all repositories are databases, which is effectively what Defendants' construction implies. To the contrary, if all repositories were databases, one or the other word would have sufficed.

Further support for a repository being broader than "database" can be found in the dictionary definition of repository: "a place, room, or container where something is deposited or stored." Ex. B, *Webster's Third New International Dictionary, Unabridged*, Merriam-Webster (2002), *available at* http://unabridged.merriam-webster.com. In the context of the specification, the basic concept is that a repository is somewhere something is stored, hence the proposed construction: "a storage medium, for example, a database."

Accordingly, Bright Response's proposed construction should be adopted.

---

[7] The term "repository" appears in Claim 26.

**F.    Construction of the order in which the steps of the claimed methods must be performed:  No Construction Required.**

| BRIGHT RESPONSE'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
| --- | --- |
| Bright response is of the view that no construction relative to the order in which the steps of the claimed methods must be performed is required. | The steps must be performed in the order they appear in the claim language. |

No construction relative to the order in which the steps of the claimed methods must be performed is required.  It is well settled that the steps in a method can be performed in any order unless a particular order is expressly claimed or there is an implied order.  *See Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342-43 (Fed. Cir. 2001) ("Unless the steps of a method actually recite an order, the steps are not ordinarily construed to require one."). Defendants' construction ignores the case law for the purpose of improperly narrowing the scope of the claims.

Defendants' attempt to impose an undue restriction on the claim language should be rejected.

**G.    Requiring Assistance From A Human Operator: Requiring That A Manual Reviewer Review The Electronic Message Or Information Derived From The Electronic Message, Or Review, Revise Or Compose The Response To Be Delivered To The Source.[8]**

| BRIGHT RESPONSE'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
| --- | --- |
| Requiring that a manual reviewer review the electronic message or information derived from the electronic message, or review, revise or compose the response to be delivered to the source. | Requiring that a manual reviewer review, revise, or compose the response to be delivered to the source. |

Bright Response proposes that the term "requiring assistance from a human operator" should be construed as:  "Requiring that a manual reviewer review the electronic message or information derived from the electronic message, or review, revise or compose the response to be delivered to the source."  The difference between Bright Response and the Defendants' respective proposed constructions is that Bright Response's proposal acknowledges the teaching

---

[8]  The term "requiring assistance from a human operator" appears in Claim 28.

in the specification that either the incoming electronic message or the outgoing response, or both, can be reviewed manually. Defendants' proposal imposes a narrowing requirement that a manual reviewer must review the *response*. Bright Response's proposed construction is supported by the specification.

The specification provides a detailed description of one embodiment for processing electronic messages. The first step is sorting messages between those that can be handled automatically, and those that require human assistance:

> The interpretation of the E-mail message 11 by the automatic message reader 30 includes classifying the E-mail message 11 into (i) E-mail which is capable of being automatically responded to, called an "automatic" type E-mail message 11; and/or (ii) E-mail which is not capable of being automatically responded to and *requires the assistance of the human operator* 40, called a "referral" type E-mail message 11. Referral type E-mail messages 11 may also be of the "detected" type, which type of messages imply a particular manual handling procedure or require an interpretive aid for delivery to the human operator 40.

(Ex. A, 5:43-53 (emphasis added).)

Bright Response's proposed construction states that "requiring assistance from a human operator" could be a requirement for (1) a review of the electronic message and/or information derived from the message *or* (2) a review of the response the message. Review of the electronic message by a human operator is firmly supported by the specification: "When the automatic message reader 30 is not capable of automatically responding to the E-mail message 11, *the E-mail message 11 must be transferred to the human operator 40 for review*." (Ex. A, 9:43-53 (emphasis added).) Review of the potential responses by a human operator is also supported:

> After the referral type E-mail message 11 has been sub-categorized and prioritized, the automatic message reader 30 routs the E-mail message 11 to the manual review inbox 24 (step 118) for subsequent retrieval by the human operator 40. *If possible, one or more predetermined responses for proposed release and*

*delivery to the source 52 are retrieved from the repository of the automatic message reader 30 and routed to the manual review inbox 24 along with the E-mail message 11.*

(Ex. A, 10:30-38 (emphasis added).)

Bright Response's proposed construction is fully supported, so the question is whether, as Defendants propose, the human operator *must* review the response. The passages above state that a message may be classified as not capable of being responded to automatically, and that manual review could involve a review of the message or a review of the response. They do not state that a review of the response is required. Moreover, the specification certainly contemplates that a message could require review by a manual reviewer, but the manual reviewer could then determine that a predetermined response is sufficient. Bright Response asks that the Court adopt its proposed construction, which is fully supported by the specification, and reject Defendants' proposed construction, which is overly restrictive and inconsistent with the specification.

### H. Case Model: Text Or Other Information Useful In Comparing The Electronic Message To The Stored Case Models Of The Case Base.[9]

| BRIGHT RESPONSE'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Text or other information useful in comparing the electronic message to the stored case models of the case base. | An index of features useful in comparing the electronic message to the stored case models of the case base. |

Bright Response proposes that the term "case model" should be construed as: "text or other information useful in comparing the electronic message to the stored case models of the case base." Bright Response's proposed construction is supported by the specification.

The specification provides an example of a case model in the following figure:

---

[9] The term "case model" appears in Claim 30.

## TABLE 2

### Example: Stored Case Model

| | |
|---|---|
| TITLE: | Lengthy Inquiry From lmnop.com |
| SUBJECT: | New Account |
| DESCRIPTION: | Dear Sirs, |
| | I recently saw your advertisement in the newspaper. I am interested in learning whether or not your system would work for me. |
| | Please E-mail me back and let me know the details of your system. |
| | Thanks, |
| ACTIONS: | 1. type: referral |
| | 2. sub-class: sales |
| | 3. priority: 3 |

## TABLE 2-continued

### Example: Stored Case Model

| | |
|---|---|
| ATTRIBUTES: | 1. address: yes |
| | 2. lengthy: yes |

(Ex. A, 7:54-8:8.) Directly corresponding to Bright Response's proposed construction, the example case model contains text and has associated actions and attributes.

Defendants' proposed construction, on the other hand, improperly seeks to incorporate a passage in the specification as if it were an express definition of the term. The specification states "[t]he application of the attribute setting rules produces a case model of the E-mail message 11 (i.e., an index of features useful in comparing the E-mail message 11 to the stored case models of the case base 34)." (Ex. A, 6:53-56.) Defendants' simply copied the parenthetical in this passage as their proposed construction, substituting the word electronic for "E-mail." There are no words in the specification that state that this is the definition of a case model, thus it is improper to incorporate this expression of one embodiment into the construction.

Accordingly, Bright Response's proposed construction should be adopted.

## I. A Set Of Attributes For Identifying Specific Features Of The Electronic Message: No Construction Required Or "A Set Of Attributes Describing Or Relating To Features Of The Electronic Message."[10]

| BRIGHT RESPONSE'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Bright Response is of the view that no construction of this term is required.<br><br>If construed: A set of attributes describing or relating to features of the electronic message. | A set of attributes within the presented case model used to search the case base to find a stored case model which has attributes substantially matching the attributes of the presented case model. |

Bright Response proposes that the term "a set of attributes for identifying specific features of the electronic message" needs no construction. In the context of the claims, applying the ordinary meaning of these words is sufficient.

If this term is construed, then it should be construed as "a set of attributes describing or relating to features of the electronic message." As shown above in the discussion of "case model," an example of a case model with text and associated actions and attributes was provided in the specification. (*See* Ex. A, 7:54-8:8.) This disclosure also supports Bright Response's proposed construction of "a set of attributes for identifying specific features of the electronic message."

Defendants' proposed construction should be rejected because it creates new limitations out of whole cloth that have no basis in the claims. The term in question is found in this claim passage: "producing a case model of the electronic message including (i) a set of attributes for identifying specific features of the electronic message; and (ii) message text." (Ex. A, 15:14-15 (Claim 30).) Defendants' proposed construction requires that the set of attributes must be "used to search the case base to find a stored case model which has attributes substantially matching the attributes of the presented case model." This extraneous limitation relates to the purported use of the claim term, not to meaning of the term itself.

Another defect in Defendants' proposed construction is that it contradicts the specification. According to Defendants' proposed construction, the "set of attributes for

---

[10] The term "a set of attributes for identifying specific features of the electronic message" appears in Claim 30.

identifying specific features of the electronic message" would have to result in finding "a stored case model which has attributes substantially matching the attributes of the presented case model." The specification, however, states that finding a substantially matching case model is a "goal," not a requirement: "the attributes and description of the stored case model are searched vis-a-vis the attributes and description of a presented case model with *the goal* of finding a stored case model which has attributes and a description substantially matching the attributes and description of the presented case model." (Ex. A, 8:28-33 (emphasis added).) Under Defendants' proposed construction, finding a substantially matching case model is a requirement, not a goal. In addition to being an improper attempt to incorporate limitations in the specification into the construction of this term, Defendants' proposed construction is inconsistent with the teachings of the specification.

Accordingly, Bright Response's proposed construction should be adopted.

**J.** **Stored Case Models Of The Case Base / Stored Case Model: A Set Of One Or More Stored Case Models.**[11]

| **BRIGHT RESPONSE'S CONSTRUCTION** | **DEFENDANTS' CONSTRUCTION** |
|---|---|
| A set of one or more stored case models. | A set of case models created from previously received electronic messages and their associated responses. |

Bright Response proposes that the term "stored case models of the case base" should be construed as: "a set of one or more stored case models." Bright Response incorporates by reference herein its arguments in support of its proposed construction for "case model," *supra*.

Furthermore, Defendants' construction is unduly narrow. Nothing in the specification states that a case model must be created from a *received* electronic message. For example, it is well within the scope of the teachings of the inventors that a case model can be created using anticipated hypothetical messages and associated responses.

Accordingly, Bright Response's proposed construction should be adopted.

---

[11] The term "stored case models of the case base" appears in Claim 30.

**K.** **Predetermined Match Weight: A Predetermined Factor Controlling The Degree To Which A Stored Case Model's Score Is Increased By A Comparison Of Text And Attributes From A Case Model With Those From A Stored Case Model.**[12]

| BRIGHT RESPONSE'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| A predetermined factor controlling the degree to which a stored case model's score is increased by a comparison of text and attributes from a case model with those from a stored case model. | A predetermined factor which is added to a stored case model's match score when a feature from the stored case model matches a feature from the presented case model.<br><br>**Proposed Compromise (under consideration):**<br>A predetermined factor which is added to a stored case model's match score when a feature from the stored case model matches text and attributes from the presented case model. |

Bright Response proposes that the term "predetermined match weight" should be construed as: "a predetermined factor controlling the degree to which a stored case model's score is increased by a comparison of text and attributes from a case model with those from a stored case model." Bright Response's proposed construction is supported by the specification.

The specification describes an embodiment in which a raw score is assigned to the comparison of a case model with a stored case model: "In selecting the best stored case model vis-a--vis [*sic*] the presented-case model, the automatic message reader 30 searches each stored case model of the case base 34 and assigns a raw score to each stored case model." (Ex. A, 8:37-40.) The specification also describes how this raw score can be modified—either increased or decreased—based on presence or absence of a match between the case model and stored case model:

> Each instance in which a piece of text, a combination of text, and/or a pattern of text of the presented case model matches the stored case model, the raw score of the stored case model is *increased*. When a piece of text, a combination of text, and/or a pattern of text of the presented case model does not match the stored case

---

[12] The term "predetermined match weight" appears in Claim 31.

model, the raw score of the stored case model is not increased, and may be *decreased*.

(Ex. A, 8:40-47 (emphasis added.)   Next, the specification introduces the concept of a match-weight and mismatch-weight:

The raw score of a stored case model may increase or decrease in differing amounts depending on the particular feature (i.e., attribute) being searched.   Thus, if $feature_1$ matches, the raw score may increase by match-weight [*sic*, match-$weight_1$], while if $feature_2$ matches, the raw score may increase by match-$weight_2$. Similarly, if $feature_1$ does not match, the raw score may decreased by mismatch-$weight_1$, while if $feature_2$ does not match, the raw score may decrease by mismatch-$weight_2$.   It is preferred that the match-weight of each feature is a positive number and that the mismatch-weight is zero.

(Ex. A, 8:48-57.)

While the final sentence of the preceding passage suggests that the match/mismatch weights are added and subtracted rather than multiplied (or else multiplying by a mismatch weight of zero would also result in zero), this is just one embodiment.   The crux of this teaching, however, is the broader concept that a raw score can be increased or decreased by match weights that may differ.   One of ordinary skill in the art would understand that increasing a raw score can be achieved by multiplying it by a positive factor greater than one, and decreasing it can be achieved by multiplying it by a factor between zero and one.   There is no change to a raw score that can be made through addition and subtraction that cannot be achieved through multiplication.   Defendants' construction is unjustifiably narrow.

Accordingly, Bright Response's proposed construction should be adopted.

**L. Predetermined Mismatch Weight: A Predetermined Factor Controlling The Degree To Which A Stored Case Model's Score Is Decreased By A Comparison Of Text And Attributes From A Case Model With Those From A Stored Case Model.[13]**

| BRIGHT RESPONSE'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| A predetermined factor controlling the degree to which a stored case model's score is decreased by a comparison of text and attributes from a case model with those from a stored case model. | A predetermined factor which is subtracted from a stored case model's match score when a feature from the stored case model matches a feature from the presented case model.<br><br>**Proposed Compromise (under consideration):**<br>A predetermined factor which is subtracted from a stored case model's match score when a feature from the stored case model matches text and attributes from the presented case model. |

Bright Response proposes that the term "predetermined match weight" should be construed as: "a predetermined factor controlling the degree to which a stored case model's score is decreased by a comparison of text and attributes from a case model with those from a stored case model." Bright Response incorporates by reference herein its arguments in support of its proposed construction for "predetermined match weight," *supra*.

**M. Claims 30, 31, and 33 Are Not Invalid For Failure To Incorporate All Of The Limitations Of Claim 28.**

Defendant Google Inc. asserts that claims 30, 31, and 33 are invalid under 35 U.S.C. § 112, paragraph 4, for failing to incorporate all of the limitations of claim 28. This provision states that:

> [s]ubject to the following paragraph, a claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed. A claim in dependent form *shall be construed to incorporate by reference all the limitations of the claim to which it refers*.

35 U.S.C. § 112, para. 4 (emphasis added).

---

[13] The term "predetermined mismatch weight" appears in Claim 31.

Each of Claims 30, 31, and 33 contain a reference to a claim previously set forth: Claim 30 refers to Claim 28; Claim 31 refers to Claim 30; and Claim 33 refers to Claim 31. (*See* Ex. A, 15:11-41, 45-49.) Each of Claims 30, 31, and 33 specify a further limitation of the subject matter claimed. *Id.* Most importantly, by force of the statute, they "shall be construed to incorporate by reference all the limitations of the claim to which [they] refer[]." Thus, Claim 30 necessarily incorporates all the limitations of Claim 28 as a matter of law. Likewise, Claim 31 incorporates all the limitations of Claim 30, and accordingly, also incorporates all the limitations of Claim 28. Claim 33 incorporates all the limitations of Claim 31, and accordingly, also incorporates all the limitations of Claim 28. Google's contention that these claims fail to incorporate all of the limitations of claim 28 borders on bizarre and should be rejected outright.

## VI.   <u>CONCLUSION</u>

Bright Response's proposed constructions properly rely on intrinsic evidence, and are not contradicted by extrinsic evidence. More importantly, none of Bright Response's proposed constructions seek to import unwarranted limitations into the claims, nor do they violate basic structure of the dependent claims. For all of the foregoing reasons, Bright Response respectfully submits that its proposed constructions and proffered meanings be adopted by this Court.


Respectfully submitted,


By:  /s/ Stanley H. Thompson, Jr.
Marc A. Fenster, CA Bar # 181067
Email: mfenster@raklaw.com
Stanley H. Thompson, Jr., CA Bar # 198825
Email: sthompson@raklaw.com
Alexander C. Giza, CA Bar # 212327
Email: agiza@raklaw.com
Andrew D. Weiss, CA Bar # 232974
Email: aweiss@raklaw.com
RUSS, AUGUST & KABAT
12424 Wilshire Blvd., 12th Floor
Los Angeles, California 90025
Telephone: 310/826-7474
Facsimile: 310/826-6991

Patrick R. Anderson, MI SB # P68961
Email: patrick@prapllc.com
PATRICK R. ANDERSON PLLC
4225 Miller Rd, Bldg. B-9, Suite 358
Flint, Michigan 48507
Telephone: 810/275-0751
Facsimile: 248/928-9239

Andrew W. Spangler, TX Bar # 24041960
Email: spangler@spanglerlawpc.com
LEAD COUNSEL
SPANGLER LAW P.C.
208 N. Green Street, Suite 300
Longview, Texas 75601
Telephone: 903/753-9300
Facsimile: 903/553-0403

David M. Pridham, R.I. Bar # 6625
Email: david@pridhamiplaw
LAW OFFICE OF DAVID PRIDHAM
25 Linden Road
Barrington, Rhode Island 02806
Telephone: 401/633-7247
Facsimile: 401/633-7247

Debera W. Hepburn, TX Bar # 24049568
Email: dhepburn@heplaw.com
HEPBURN LAW FIRM PLLC
P.O. Box 118218
Carrollton, TX 75011
Telephone: 214/403-4882
Facsimile: 888/205-8791

Elizabeth A. Wiley, TX Bar # 00788666
THE WILEY FIRM, PC
Email: lizwiley@wileyfirmpc.com
P.O. Box. 303280
Austin, Texas 78703-3280
Telephone: 512/420-2387
Facsimile: 512/551-0028

John M. Bustamante, TX Bar # 24040618
Email: jmb@BustamanteLegal.com
BUSTAMANTE, P.C.
54 Rainey Street, No. 721
Austin, Texas 78701
Telephone: 512/940-3753
Facsimile: 512/551-3773


**Attorneys for Plaintiff**
**BRIGHT RESPONSE, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that the following counsel of record who are deemed to have consented to electronic service are being served on February 3, 2010, with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served by first class U.S. mail on this same date.

By:   /s/ Stanley H. Thompson, Jr.
          Stanley H. Thompson, Jr.