IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

BRIGHT RESPONSE, LLC
F/K/A POLARIS IP, LLC

v.

GOOGLE INC., et al.

NO. 2:07-CV-371-TJW-CE

JURY TRIAL DEMANDED

## DEFENDANTS' JOINT RESPONSE BRIEF ON CLAIM CONSTRUCTION

Dockets.Justia.com

## <u>NOTE ON CITATIONS</u>

1.      References to Plaintiff Bright Response, LLC's Claim Construction Brief are indicated by the abbreviation "Br.," followed by the page number being cited.  "Br. 5" therefore refers to page 5 of Bright Response's opening brief.

2.      The patent-in-suit, U.S. Patent. 6,411,947, is attached to Bright Response's Claim Construction Brief as Exhibit A.  References to the patent-in-suit are indicated by column and line number.  A reference to "3:15" therefore means column 3, line 15 of the patent-in-suit.

3.      The cited portions of the prosecution history of the patent-in-suit are attached to the Declaration of Todd Kennedy ("Kennedy Declaration") as Exhibit 1.  Citations to individual pages are indicated using document identification numbers (e.g., BR000625).

4.      Other exhibits are attached to the Kennedy Declaration as Exhibits 2 through 10.  Defendants' other exhibits are referred to with the prefix "Ex." followed by the number of the exhibit in question.  "Ex. 3" therefore refers to Exhibit 3 of the Kennedy Declaration.

5.      The full text of the asserted claims appears in Appendix A with the disputed terms identified.

6.      Some excerpts of documents have been highlighted for emphasis.  Unless otherwise indicated, highlighting has been added by Defendants and is not included in the original document.

**TABLE OF CONTENTS**

Page

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND..........................................................................................1

I.      OVERVIEW OF THE ASSERTED PATENT .................................................1

II.     THE PATENT DESCRIBES RESPONDING TO ELECTRONIC MESSAGES
        USING BOTH RULE-BASED AND CASE-BASED REASONING...............................2

III.    THE APPLICANTS DISTINGUISHED THE PRIOR ART AS NOT HAVING
        "CASE BASE REASONING" DURING PROSECUTION OF THE '947
        PATENT. ..........................................................................................................3

IV.     ALL ASSERTED CLAIMS BUT ONE HAVE BEEN REJECTED IN
        REEXAMINATION..........................................................................................4

ADDITIONAL AGREED CONSTRUCTIONS ..........................................................5

ARGUMENT...................................................................................................................5

I.      "NON-INTERACTIVE ELECTRONIC MESSAGE" AND "THE ELECTRONIC
        MESSAGE" (CLAIMS 26, 27, 28, 30, 38, 39, AND 40)....................................5

        A.      Bright Response's Proposed Construction Should Be Rejected............................6

        B.      There Is No Alternative Definite Construction of "Non-Interactive
                Electronic Message." ..............................................................................8

        C.      Neither Inventor Piccolo Nor Prosecuting Attorney Gregson Could
                Identify the Meaning of "Non-Interactive Electronic Message."...........................9

        D.      Bright Response Provides Yet Another Definition of "Non-Interactive
                Electronic Message" in Reexamination. ..............................................................10

II.     "CASE BASE KNOWLEDGE ENGINE"  (CLAIM 26) ...............................10

        A.      Defendants' Construction Comes from the Definition of "Case Base
                Knowledge Engine" in the Intrinsic Evidence. ...................................................11

        B.      Allen Defines Case Based Reasoning as Defendants' Do. ..................................12

        C.      Bright Response's Argument Against Defendants' Construction Actually
                Confirms Defendants' Construction is Correct. ...................................................13

i

D. Bright Response's Construction Contradicts the Intrinsic Evidence. ................... 14

III. "RULE BASE . . . KNOWLEDGE ENGINE" (CLAIM 26) ........................................ 15

A. The Intrinsic Evidence Supports Defendants' Construction. .............................. 16

B. The Extrinsic Evidence Aligns with Defendants' Construction. .......................... 17

C. Bright Response's Construction Is Without Merit. .............................................. 17

IV. "PREDETERMINED RESPONSE(S)" (CLAIMS 26, 28, AND 38) ........................... 18

V. CONSTRUCTION OF THE ORDER IN WHICH THE STEPS OF THE
CLAIMED METHODS MUST BE PERFORMED (CLAIM 26) ................................. 19

VI. "REPOSITORY" (CLAIMS 26 AND 28.) .................................................................... 20

VII. CLAIMS 28, 30, 31, AND 33 ARE INVALID FOR FAILURE TO
INCORPORATE LIMITATIONS OF CLAIMS FOR WHICH THEY DEPEND. ......... 21

VIII. "REQUIRING ASSISTANCE FROM A HUMAN OPERATOR" (CLAIMS 28
AND 30.) ..................................................................................................................... 23

A. Defendants' Construction Is Supported by the Intrinsic Evidence. ..................... 23

B. Bright Response's Construction Is Not Supported by the Intrinsic
Evidence. .............................................................................................................. 24

IX. "STORED CASE MODEL" (CLAIMS 30, 31, AND 33.) ............................................ 25

X. PREDETERMINED MATCH WEIGHT" AND "PREDETERMINED
MISMATCH WEIGHT" (CLAIMS 31) ....................................................................... 27

CONCLUSION ........................................................................................................................ 29

**Cases**

*Abbott Labs. v. Sandoz, Inc.*,
566 F.3d 1282 (Fed. Cir. 2009)............................................................. 11, 16

*Altiris, Inc. v. Symantec Corp.*,
318 F.3d 1363 (Fed. Cir. 2003)....................................................................19

*Amgen Inc. v. F. Hoffman-LA Roche Ltd.*,
580 F.3d 1340 (Fed. Cir. 2009)......................................................................9

*Aquatext Indus., Inc. v. Techniche Solutions*,
419 F.3d 1374 (Fed. Cir. 2005)....................................................................13

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
388 F.3d 858 (Fed. Cir. 2004)......................................................................12

*Cook Biotech Inc. v. Acell, Inc.*,
460 F.3d 1365 (Fed. Cir. 2006)....................................................................15

*Edward Lifesciences LLC v. Cook Inc.*,
582 F.3d 1322 (Fed. Cir. 2009)....................................................................11

*Exxon Research and Eng'g Co. v. United States*,
265 F.3d 1371 (Fed. Cir. 2001)....................................................................22

*FotoMedia Techs., LLC v. AOL, LLC*,
2009 WL 2175845 (E.D. Tex. 2009)....................................................... 15, 17

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2002)......................................................................18

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)............................................................... 19, 21

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)............................................................... 21, 26

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
182 F.3d 1298 (Fed. Cir. 1999)....................................................................10

*SciMed Life Sys., Inc. v. Advanced Cardiovasc. Sys., Inc.*,
242 F.3d 1337 (Fed. Cir. 2001)......................................................................8

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)............................................................... 15, 28

**INTRODUCTION**

Construing the claims in this case should be a relatively straightforward task. With a few notable exceptions, the intrinsic evidence identifies the proper constructions as asserted by Defendants. The main instance where the intrinsic evidence does not provide an appropriate construction is for "non-interactive electronic message," which is insolubly ambiguous. In fact, both a named inventor of the '947 patent and the attorney who prosecuted it admitted that they do not know what the term means. Indeed, Bright Response itself has been unable to settle on a construction, proposing one to the Court and an entirely different one to the Patent Office in reexamination.

Bright Response points to the specification in purported support for its constructions, but provides no substantive explanation how the cited portions of the specification support its constructions or why the Court should ignore the other sections that most clearly address or define the terms at issue.

Accordingly, Defendants' claim constructions should be adopted.

**FACTUAL BACKGROUND**

**I.    OVERVIEW OF THE ASSERTED PATENT**

Bright Response asserts that Google and AOL infringe claims 26, 27, 28, 30, 31, 33, 38, 39, and 40, and that Yahoo! infringes claims 26, 27, 38, 39, and 40 of the '947 patent,[1] entitled "Automatic Message Interpretation and Routing System." All of the asserted claims depend on independent claim 26:

---

[1]    Bright Response has recently sought leave to add claim 33 against Yahoo, which Yahoo intends to oppose, but this issue has not been fully briefed or decided by the Court.

> 26. A method for automatically processing a non-interactive electronic message using a computer, comprising the steps of:
>   (a) receiving the electronic message from a source;
>   (b) interpreting the electronic message using a rule base and case base knowledge engine; and
>   (c) retrieving one or more predetermined responses corresponding to the interpretation of the electronic message from a repository for automatic delivery to the source.

Claim 28 provides that the message be classified to either be responded to automatically, or with assistance of a human operator. The other dependent claims provide further limitations regarding receiving and responding to electronic messages.

## II. THE PATENT DESCRIBES RESPONDING TO ELECTRONIC MESSAGES USING BOTH RULE-BASED AND CASE-BASED REASONING.

The purported invention of the '947 patent is a method for responding to electronic messages using "rule-based reasoning" and "case-based reasoning," both of which were well known in the art. As the specification describes, "[t]his hybrid reasoning approach reflects the actual interpretation process used by human message reviewers in a customer service department." (4:32-35.)

The patent provides that case-based reasoning "compares an incoming set of facts (a 'Problem') with a stored set of exemplar cases (a case base). . . . The case base is stored in the form of case attributes representing past 'problems.'" Then, "the case attributes are compared to the facts of the incoming problem" to get "a set of prior cases which may be useful in formulating an appropriate action." (2:41-51.) "Once a best stored case model has been identified, the automatic message reader 30 infers that the same or similar action that was taken on the E-mail of the stored case model should be taken on the E-mail message 11 which produced the presented case model." (9:11-15.) Further, "[t]he rule base 35 of the automatic message reader 30 contains 'question' rules which take the form of IF-THEN statements with a

left hand side of the statement containing a condition (or set of conditions) and a right hand side of the statement containing conclusion(s) (or actions)." (5:64-6:6.)

The patent further provides that messages are classified as being either "automatic" (i.e., the system can respond to the message without human review), or "referral" (i.e., a human must review the message and response). (9:18-10:47.) When a message is classified as "referral," "the automatic message reader 30 sub-categorizes the E-mail message 11 according to its subject matter content (step 116b) prior to transferring the E-mail message 11 to the human operator 40." (9:46-51.) In addition, for "referral" messages, "[i]f possible, one or more predetermined responses for proposed release and delivery to the source 52 are retrieved from the repository of the automatic message reader 30 and routed to the manual review inbox 24 along with the E-mail message 11." (10:34-38.) "When the human operator 40 deems that a predetermined response is appropriate and may be released to the customer 50, the response is routed to the outbox 26 (step 122) for delivery to the domain server 10," and ultimately to the customer. (10:42-46.)

## III. THE APPLICANTS DISTINGUISHED THE PRIOR ART AS NOT HAVING "CASE BASE REASONING" DURING PROSECUTION OF THE '947 PATENT.

During the prosecution of the '947 patent, the Examiner rejected various pending claims as anticipated by Microsoft Outlook 97 (Version 8.0). In response, on August 15, 2000, the applicants described "case base" reasoning, as used in the patent's claims, citing to the portion of the specification addressed above also describing case base reasoning:

> The term "case base" has a meaning that is well-defined in the art and Outlook does not have any features that fall within such meaning. A case base reasoning system is described in the present specification as one which "compares an incoming set of facts (a 'Problem') with a stored set of exemplar cases (a case base)." (p. 3, lines 19-20; see also p. 11, lines 12-15).

(Ex. 1 at BR000625, citing 2:43-44.)

3

**IV.    ALL ASSERTED CLAIMS BUT ONE HAVE BEEN REJECTED IN REEXAMINATION.**

During reexamination of the '947 patent, the Patent Office on June 13, 2009 rejected claims 1-4, 11-13, 15, 22-24, 26-31, 34-36, 38-45, 52-55, and 62-64 as being anticipated by U.S. Patent No. 5,581,664 to Allen, which describes "[a] case-based reasoning system which is smoothly integrated into a rule-based reasoning system."  (Ex. 2 at Abstract; Ex. 5 at 2.)  After Bright Response's response and amendment of certain claims, on January 27, 2010, the Patent Office rejected the same claims, as well as claims 5-8, 16-21, 25, 32, 37-49, 56, 65, and 67-68. (Ex. 7.)  All asserted claims except claim 33 stand rejected.

## ADDITIONAL AGREED CONSTRUCTIONS

After Bright Response filed its opening brief, Bright Response, Google, and AOL

reached agreement regarding the constructions of additional terms.[2] Those terms and their

stipulated constructions are as follows:

| Claim Terms | Stipulated Constructions |
|---|---|
| **A Case Model of the Electronic Message** (claim 30) | Text and attributes derived from the electronic message. |
| **The Case Model** (claims 30 and 33) | This term is the "case model of the electronic message" produced in step (b1) of claim 30. |
| **Case Model** (claims 30, 31, and 33) | This term need not be construed. |
| **Stored Case Models of the Case Base** (claim 30) | This term need not be construed. |
| **A Set of Attributes for Identifying Specific Features of the Electronic Message** (claim 30) | This term need not be construed. |

## ARGUMENT

## I. "NON-INTERACTIVE ELECTRONIC MESSAGE" AND "THE ELECTRONIC MESSAGE" (CLAIMS 26, 27, 28, 30, 38, 39, AND 40)

| Defendants' Construction | Bright Response's Construction |
|---|---|
| This claim term is indefinite. | An electronic message not requiring additional input or supplementation from the sender. |

Bright Response's proposed construction leaves open several different interpretations and

cannot be applied in a way that properly defines the metes and bounds of the claims. In addition,

---

[2] Because leave has not been granted to assert the claims in which these terms appear against Yahoo!, Yahoo! did not participate in the discussions regarding these constructions, which apply only to Google and AOL. For the same reason, Yahoo! has not proposed any constructions for the terms addressed in Sections VII-X. Yahoo! was informed after the fact that Bright Response had been discussing with Google possible constructions of these claims. If Bright Response's request for leave to assert an additional claim against Yahoo! is granted, Yahoo! reserves the right to address additional claim construction issues through additional briefing and/or during the claim construction hearing.

neither the claim nor the specification provides any guidance regarding which of the many possible interpretations of "non-interactive electronic message" define the scope of the term. It is accordingly insolubly ambiguous and indefinite. The term "the electronic message," which is used in subsequent claim elements and that the parties agree refers to the same "non-interactive electronic message," is indefinite for the same reasons.

### A. Bright Response's Proposed Construction Should Be Rejected.

Bright Response takes its construction, "[a]n electronic message not requiring additional input or supplementation from the sender," from the following portion of the specification:

> It is noted that defining an electronic message **11** as being non-interactive prescribes only that the message content need not be supplemented. Thus, as described in more detail below, the form of the non-interactive electronic message **11** may be altered by the system **1** after the customer **50** sends it; however, the customer **50** is not required to provide supplemental information to assist the system **1**.

(4:66-5:5.)[3] That a message does not require additional input or supplementation from the sender does not shed any light on what it means for a message to be "non-interactive." Nor does the additional statement in the specification excerpt above, not found in Bright Response's construction, that the customer need not provide supplemental information to "assist the system."

This ambiguity is further problematic because for "non-interactive electronic message" to be definite, there must be some way to determine from the <u>message itself</u> whether it is non-interactive. If there is not, a competitor would be unable to design a system to ensure that it does not "receive" a non-interactive electronic message (claim 26(a)), or take any of the other claimed

---

[3] The specification later describes how a case model is created, but that discussion provides no further guidance to the meaning of a "non-interactive electronic message."

steps in relation to a non-interactive electronic message. Merely providing that the message "need not be supplemented" does not do this.

For example, whether the message needs to be supplemented could depend on how a system is configured, raising a number of questions. Is a message "interactive" if a system's case base and rule base reasoning do not provide the ability to respond without more information? If the same message is sent to another system that is configured differently such that it does not need further information to respond to the message, is that exact same message "non-interactive"? The '947 patent, and Bright Response's construction, provides no answer.

Further ambiguities abound. Would a message from a sender specifically requesting a follow-up call to provide more information be one that requires supplemental information? Would a cryptic message expressly requesting not to be bothered with requests for supplemental information be one not needing supplementation, even if the system could not understand it without further information? Bright Response's construction provides no guidance and fails to remedy the indefinite nature of the term. Notably, Bright Response addresses none of these ambiguities and provides no explanation how its construction could or should be applied.

Bright Response's proposed construction also contradicts the '947 patent's attempt to distinguish the prior art Allen patent. Allen describes "[a] case-based reasoning system which is smoothly integrated into a rule-based reasoning system," to be used when a customer calls a "help desk" in search of a solution to a problem or an answer to a question. (Ex. 2 (Allen patent) at Abstract; 8:64-10:49.) The specification seeks to distinguish Allen as follows:

> Unlike the help desk application of U.S. Pat. No. 5,581, 664 described above, in the instant invention the data of the electronic message 11 is delivered to the automatic message interpreting and routing system 1 in a non-interactive manner.

(4:57-61.)

Allen describes two scenarios in which the invention could be used in the "help desk application." In one scenario, the user's description of the problem results in only low-quality matches to prior cases, so the system requires additional input from the customer in order to provide advice. (Ex. 2 at 9:30-41.) In another scenario, however, the customer's description of the problem is matched to a stored case, resulting in "an advice message 607 to the customer service representative 602, who may then provide advice to the customer 604" without further input from the customer—just what Bright Response's construction provides is a non-interactive electronic message. (*Id.* at 9:17-29.) As the applicants distinguished Allen as not using a "non-interactive" message, Bright Response cannot now propose a construction of that term that includes electronic messages of the type used by Allen. *See SciMed Life Sys., Inc. v. Advanced Cardiovasc. Sys., Inc.*, 242 F.3d 1337 (Fed. Cir. 2001) (holding that claims could not be construed to include a prior art structure distinguished in the specification).

**B.** **There Is No Alternative Definite Construction of "Non-Interactive Electronic Message."**

The claim language itself does not provide any guidance regarding the meaning of "non-interactive electronic message." Claim 26 covers "[a] method for automatically processing a non-interactive electronic message using a computer," comprising the steps of receiving the message, interpreting it, and retrieving predetermined responses to the message. (emphasis added.) The claim refers only to how to respond to a non-interactive message, without showing what a non-interactive message is. In particular, the claims do not say whether "non-interactive" is to be defined from the sender's point of view, the recipient's point of view, or the system's point of view. They also do not indicate whether the non-interactivity of a message is determined when the message is sent, when it is received, or when it is interpreted.

As detailed above, the specification is of no assistance in providing a meaning to the phrase. Neither is the prosecution history. Accordingly, the phrase "non-interactive electronic message" is insolubly ambiguous and indefinite. *See Amgen Inc. v. F. Hoffman-LA Roche Ltd.*, 580 F.3d 1340, 1371 (Fed. Cir. 2009) ("If a claim fails to reasonably apprise one skilled in the art of the boundaries of the claim when read in light of the specification, then the claim is invalid under § 112 for indefiniteness.")

### C. Neither Inventor Piccolo Nor Prosecuting Attorney Gregson Could Identify the Meaning of "Non-Interactive Electronic Message."

Rosanna Piccolo, a named inventor of the '947 patent, testified at her deposition that she did not know what the term "non-interactive electronic message" means:

> Q. Okay. Do you know what a non-interactive electronic message is?
> A. No.
> Q. Does that phrase have any meaning to you?
> A. Electronic message, yes, email. Non-interactive, I really don't want to guess as to what I believe it is. I don't know.
> Q. Okay. You don't know what that means?
> A. Non-interactive electronic message, no. (Ex. 10 at 24:4-13.)

Likewise, Richard Gregson, who prosecuted the '947 patent, could not identify what "non-interactive electronic message" means. Initially, he testified that a "non-interactive system" means: "there's no interaction going back and forth. It receives the message and it processes it without further input." (Ex. 3 at 89:19-23.) But he could not define "non-interactive message." For example, he was unable to say whether a search query sent to the system would be a non-interactive electronic message, or whether clicking on a link provided in response to a query would involve a non-interactive electronic message. (*Id.* at 92:23-95:25.) Ultimately, he was unable to provide any information regarding the meaning of the term:

> Q. And just one last question on this line, can you give us the sort of parameters as to what a non-interactive message is based upon everything that we've talked about? Sort of give us those parameters, a non-interactive message has these attributes, these qualities, this is what it means?

A.    No.   (*Id.* at 96:2-10 (objection omitted; emphasis added).)

This testimony of Ms. Piccolo and Mr. Gregson further shows that the claims are indefinite.  *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308-09 (Fed. Cir. 1999) (courts may rely on inventor and attorney testimony if patent documents "are insufficient to enable the court to construe disputed claim terms.")

### D.    Bright Response Provides Yet Another Definition of "Non-Interactive Electronic Message" in Reexamination.

During the reexamination of the '947 patent, Bright Response has advocated yet another definition of "non-interactive electronic message":

> The claim language requires a non-interactive electronic message, which means that it comes from a source and is delivered to someone, instead of merely data that is interactively entered and not being delivered to any particular person.

(Ex. 8 at 9.)  It is unclear, however, how the mere fact that a message "comes from a source" and is delivered to a "particular person" makes the message non-interactive.  Under that definition, every e-mail sent to a particular person would be non-interactive.  This additional definition from Bright Response further shows the phrase is insolubly ambiguous.[4]

## II.    "CASE BASE KNOWLEDGE ENGINE"  (CLAIM 26)

| *Defendants' Construction* | *Bright Response's Construction* |
| --- | --- |
| A knowledge engine that compares an incoming set of facts (a "problem") with a stored set of exemplar cases representing past "problems" to obtain a set of prior cases which are used to formulate an appropriate action. | A knowledge engine that processes electronic messages by comparing them to a stored set of exemplar cases. |

---

[4]    Although it does not follow from the intrinsic evidence, at least Bright Response's construction proffered to the Patent Office is understandable and, for that reason, would be better than Bright Response's current construction.

The asserted claims require "interpreting the electronic message using a . . . <u>case base knowledge engine</u>."  (emphasis added.)  Both parties agree that reference to the specification is required to construe this term.  Defendants' construction mirrors the definition in the specification and emphasized in the prosecution history.  Bright Response seeks a construction that ignores the teachings of the specification and the prosecution history.

### A.      Defendants' Construction Comes from the Definition of "Case Base Knowledge Engine" in the Intrinsic Evidence.

The specification introduces the known concept of case base reasoning in the "Background of the Invention" section.  It discusses how case base reasoning is designed to compare a set of facts (a "problem") with a stored set of exemplar cases, to formulate an appropriate action in its discussion of Allen:

> A help desk application utilizing a case based reasoning system, see U.S. Pat. No. 5,581,664 to Allen et al., has been described which compares an incoming set of facts (a "Problem") with a stored set of exemplar cases (a case base). The system then performs the same action for the problem as was performed in connection with the stored case. The case base is stored in the form of case attributes representing past "problems." The case attributes are compared to the facts of the incoming problem using trigram character matching to obtain a set of prior cases which may be useful in formulating an appropriate action.

(2:41-51.)  Defendants' construction using this disclosure does not "seek to incorporate a single description of the prior art from the specification" as Bright Response argues (Br. 8), but appropriately uses the applicants' own description (and only description) of case base reasoning. *See Edward Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1329 (Fed. Cir. 2009) (construing claim to cover only intraluminal devices because "the only devices described in the specification are intraluminal," despite broad claim language); *Abbott Labs. v. Sandoz, Inc.* 566 F.3d 1282,

1288 (Fed. Cir. 2009) (definitions of claim terms in the specification can serve as "practically incontrovertible directions about claim meaning.").

Defendants' proposed construction of "case base reasoning" is also supported by the prosecution history. The Examiner rejected various pending claims as anticipated by Microsoft Outlook 97 (Version 8.0). In response, the applicants distinguished Outlook as not having case base reasoning. In explaining the "well-defined" meaning of case base reasoning, the applicants pointed to the same portion (i.e., p. 3, lines 19-20) of the specification Defendants cite to:

> The term "case base" has a meaning that is well-defined in the art and Outlook does not have any features that fall within such meaning. A case base reasoning system is described in the present specification as one which "compares an incoming set of facts (a 'Problem') with a stored set of exemplar cases (a case base)." (p. 3, lines 19-20; see also p. 11, lines 12-15).

(Ex. 1 at BR000625.) Prosecuting attorney Gregson confirmed during his deposition that the applicants were pointing to the same portion of the specification at column 2 as a definition of "case-based reasoning." (Ex. 3 at 101:22-102:20.) Because Defendants have proposed the same definition that the applicants themselves explicitly used when they prosecuted the '947 patent, that construction should be adopted. *See C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 869 (Fed. Cir. 2004) (applicant's definition of a term during prosecution history "provides an independent ground" for construing the claim using that definition).

### B. Allen Defines Case Based Reasoning as Defendants' Do.

Defendants' construction also tracks the definition of a "case-based reasoning" system described in the Allen patent, which was explicitly mentioned in the '947 patent:

> One proposed method of the prior art is to build automated reasoning systems which operate by reference to a set of exemplar cases (a "case base"), to which the facts of a particular situation (the "problem") may be matched. The processor may then perform the same action for the problem as in the exemplar case. While this proposal has been well-received, there have been several obstacles to successful implementation of a case-based reasoning system.

(Ex. 2 at 1:42-45.)  This definition further confirms that Defendants' proposed construction is consistent with the understanding of one of ordinary skill in the art.  *See Aquatext Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1381 (Fed. Cir. 2005) (noting that where an applicant incorporates prior art by reference in the specification, it is "highly relevant to one of ordinary skill in the art for ascertaining the breadth of the claim term").

### C.  Bright Response's Argument Against Defendants' Construction Actually Confirms Defendants' Construction is Correct.

Bright Response argues that Defendants' construction is inconsistent with the claims because it "describes how the case base may be formed, not how it is used."  (Br. 8.)  Initially, Defendants' construction does not describe how the case base may be "formed."  It defines what it is, and Bright Response provides no basis for its assertion to the contrary.

Defendants' construction also describes how case-based reasoning is used.  It explains that it is used in comparing an incoming set of facts against stored case models "to obtain a set of prior cases which are used to formulate an appropriate action."  (*See* Defendants' proposed construction of claim 26.)  In fact, it is Bright Response's construction, which only vaguely provides that the knowledge engine "processes electronic messages by comparing them to a stored set of exemplar cases," that does not describe how case base knowledge engine is used.  This further shows Defendants' construction is correct.

## D. Bright Response's Construction Contradicts the Intrinsic Evidence.

Initially, Bright Response's proposed construction of "case base knowledge engine" should be rejected because of its vague reference to "processing" electronic messages. The term "processing" says nothing about what the knowledge engine does; it only indicates that it undertakes some activity with respect to the electronic message, which is as helpful as having no construction at all.

Further, Bright Response's construction contradicts the specification and excludes the preferred embodiment. Specifically, the construction requires that the actual <u>message</u> be compared to a stored set of exemplar cases. The specification, however, provides that <u>flagged attributes</u> (i.e., an incoming set of facts) are compared to the stored set of exemplar cases:

> Thus, when a search of the case base **34** is required, the flagged attributes of the case model are used to search the stored case models of the case base **34**.

(6:59-61. *See also id.* at 4:40-47)[5] Similarly, U.S. Provisional Application No. 60/042,494, incorporated by reference into the specification of the '947 patent, confirms that the features or attributes, rather than the message, are compared to the stored cases. It states that the system "searches the case-base assigning relative scores to each stored case based on the number of features, the mismatch of feature values and the absence of features as compared with the presented case using customizable case-based reasoning components." (Ex. 4 at 7; 1:9-15.)

---

[5] The specification provides that the "attributes" compared to the stored set of case models include a variety of facts, such as "(1) a source's address; (2) a do not call request; (3) a request for service; (4) a reference to a foreign country; (5) a lengthy message; (6) a reference to a specific product and/or service; (7) a reference to multiple questions; and/or (8) a reference to a specific employee." (8:22-28.) It also states that "features" and "attributes" are equivalent. (*See* 8:50.)

Because this was incorporated by reference, it is part of the specification "as if it were explicitly contained therein." *Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1376 (Fed. Cir. 2006).

Bright Response relies on a portion of the specification stating that "[t]he case model of the E-mail message 11 is called a 'presented' case model and is compared with a set of stored case models in the case base." (Br. 7 (quoting 7:41-44).) This disclosure in the specification actually undermines Bright Response's construction. It confirms that a <u>case model</u>, <u>not</u> the message itself, is compared with the stored case models.

Bright Response's construction that <u>messages</u> are compared to the stored set of exemplar cases excludes the preferred embodiment. A construction that excludes a preferred embodiment "is rarely, if ever, correct." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996); *see also FotoMedia Techs., LLC v. AOL, LLC*, 2009 WL 2175845 at *18-19 (E.D. Tex. 2009) (Hon. Charles Everingham) (holding that specification's statement that specific types of information were included in a "request" required that those specific types be included in the construction of "the user's role is determined from the request"). The Court should adopt Defendants' construction.

## III.   **"RULE BASE . . . KNOWLEDGE ENGINE"  (CLAIM 26)**

| *Defendants' Construction* | *Bright Response's Construction* |
|---|---|
| A knowledge engine that contains "question" rules which take the form of IF-THEN statements with a left hand side of the statement containing a condition (or set of conditions) and a right hand side of the statement containing conclusion(s) (or actions). | A knowledge engine that tests whether an electronic message meets one or more conditions, and if so, applies specified actions. |

Defendants' construction of the term mirrors the specification's definition of the rule base knowledge engine, as well as extrinsic evidence, which uniformly shows that a case base knowledge engine uses question rules in the form of IF-THEN statements containing conditions

that, if satisfied, result in the conclusions or actions specified by the question rules.  Bright

Response seeks an impermissibly broad construction not grounded in the intrinsic evidence.

### A.    The Intrinsic Evidence Supports Defendants' Construction.

Claim 26 requires "interpreting the electronic message using a <u>rule base</u> . . . <u>knowledge</u>

<u>engine</u>." (emphasis added.)  The specification states that the rule base knowledge engine

contains "question rules" as IF-THEN statements with conditions on the left hand ("IF") side of

the statement, and conclusions or actions on the right hand ("THEN") side of the statement:

> The rule base **35** of the automatic message reader **30**
> contains "question" rules which take the form of IF-THEN
> statements with a left hand side of the statement containing
> a condition (or set of conditions) and a right hand side of the
> statement containing conclusion(s) (or actions).

(5:64-6:6.)  Defendants take their construction from this express definition.  *See Abbott*, 566 F.3d

at 1288 (specification's definitions of claim terms can serve as "practically incontrovertible

directions about claim meaning.").  Notably, Bright Response presents no explanation why this

language is not a definition.  Nor does it point to anything in the intrinsic evidence showing

Defendants' construction is incorrect.

Defendants' construction is also consistent with the only portion of the specification

Bright Response cites in its brief.  (Br. 4 (quoting '479 patent at 6:3).)  That portion provides the

following example of rule base reasoning:  "$condition_1$?, $condition_2$? . . . =>$action_1$, $action_2$ . . . ."

That example mirrors Defendants' construction because it is a statement with a left hand ("IF")

side containing a set of conditions, and a right hand ("THEN") side containing actions.

Defendants' construction is also consistent with other examples of rules in the specification, such

as the "Blank Rule." (*See* 6:34-41.)  In that rule, the left hand ("IF") side of the equation

contains the condition "body contains no text?"  The right hand ("THEN") side of the equation

contains the conclusion "classify E-mail as 'automatic.'"  The specification requires Defendants' construction.  *See FotoMedia Techs.*, 2009 WL 2175845 at *18-19 (Hon. Charles Everingham).

Bright Response also argues that the term "question" in Defendants' construction would mislead a jury because the patent involves not only answering questions, but also testing conditions.  (Br. 5-6.)  Initially, it is odd that Bright Response would suggest that its own patent would be misleading.  In any event, Defendants' construction is not limited to "questions," but this involves "'[q]uestion rules' which take the form of IF-THEN statements."  This includes the conditions on the left hand ("IF") side.

### B.  The Extrinsic Evidence Aligns with Defendants' Construction.

Defendants' proposed construction is also supported by various technical sources.  For example, Newton's Telecom Dictionary states that "in general, a rule-based system's knowledge base contain both facts and IF .. THEN production rules."  (Ex. 11 (Newton's Telecom Dictionary (16th ed. 2000) at 737.)  In addition, a textbook regarding expert systems states:  "In a rule-based representation, knowledge is organized in the form of IF--THEN rules . . ."  (Ex. 6 (Amar Gupta and Bandreddi E. Prasad, Microcomputer-Based Expert Systems (1988)) at 1.)  Bright Response does not address extrinsic evidence at all.

### C.  Bright Response's Construction Is Without Merit.

Pointing to the same portions of the specification identified above (i.e., 5:64-6:6 and 6:50-52), Bright Response concludes rule based reasoning tests "whether an electronic message meets one or more conditions."  But Bright response fails to acknowledge that the specification

and extrinsic evidence uniformly disclose only one interpretation of rule-based reasoning: IF-THEN statements with conditions and actions.[6] Defendants' construction should be adopted.

## IV.   "PREDETERMINED RESPONSE(S)"  (CLAIMS 26, 28, AND 38)

| Defendants' Construction | Bright Response's Construction |
|---|---|
| Responses prepared prior to the receipt of the electronic message. | No construction needed; or<br><br>Responses prepared prior to the receipt of the electronic message. The responses may be modified and/or altered based on the interpretation of the electronic message. |

The parties agree that, if construed, "predetermined responses" are "responses prepared prior to the receipt of the electronic message." Bright Response, however, seeks to add to this construction that "the responses may be modified and/or altered based on the interpretation of the electronic message." Defendants do not dispute that the predetermined response may be altered in accordance with the interpretation of the electronic message before delivery to the source. Indeed, the agreed portion of this construction does not state otherwise.

The additional sentence that Bright Response proposes, however, suggests a response can be modified or altered at any time—including <u>before</u> the predetermined response is retrieved, or even <u>after</u> the response has been delivered. This contradicts the specification, which contemplates that responses are modified only <u>after</u> the predetermined response is retrieved from the database, and <u>before</u> they are delivered. The specification states that once "one or more predetermined responses (or prepared responses) are retrieved from a repository (or database), . . . . ." "the predetermined <u>response</u> may be modified and/or altered in accordance with the interpretation of the E-mail message 11 if required to properly respond to a customer 50." (9:26-

---

6   Bright Response's citation to *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2002) discussing the meaning of the ordinary term "opening" is not to the contrary. The term at issue here is a term of art with which only Defendants' construction comports.

35 (emphasis added).)  This disclosure in the specification, which Bright Response also cites, does not provide that responses can be modified <u>at any time</u>, as Bright Response's extra sentence incorrectly suggests.  Rather, it shows that the response is modified after it is retrieved from a repository, and before it is delivered to the customer.

Because the parties have a fundamental dispute regarding the meaning of this term, the Court should construe this term and adopt Defendants' construction.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it").

## V. <u>CONSTRUCTION OF THE ORDER IN WHICH THE STEPS OF THE CLAIMED METHODS MUST BE PERFORMED  (CLAIM 26)</u>

Bright Response does not dispute that a method claim must be construed so that the steps are performed in the order recited "if, as a matter of logic or grammar, [the steps] must be performed in the order written."  *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003).  Indeed, *Interactive Gift Exp., Inc. v. Compuserve Inc.*, cited by Bright Response, similarly acknowledges that method claims are construed to be performed in their recited order "when the method steps implicitly require that they be performed in the order written," such as when "each subsequent step reference[s] something logically indicating the prior step had been performed."  *Id.* 256 F.3d 1323, 1342 (Fed. Cir. 2001).

That is precisely the case here, as is readily apparent from claim 26:

> **26**. A method for automatically processing a non-interactive electronic message using a computer, comprising the steps of:
> (a) receiving the electronic message from a source;
> (b) interpreting the electronic message using a rule base and case base knowledge engine; and
> (c) retrieving one or more predetermined responses corresponding to the interpretation of the electronic message from a repository for automatic delivery to the source.

(annotations added.)  Logically, step (b), "interpreting the electronic message," cannot be performed until after the message has been received as described in step (a).  Likewise, step (c), which requires retrieving predetermined responses "corresponding to the interpretation of the electronic message," cannot occur until the message has been interpreted in step (b).  Bright Response provides no substantive argument on this point at all.  Accordingly, its unsupported suggestion that the steps can be performed in any order should be rejected.

## VI.  "REPOSITORY"  (CLAIMS 26 AND 28.)

| Defendants' Construction | Bright Response's Construction |
| --- | --- |
| Database. | No construction required; or<br><br>A storage medium, for example, a database. |

The asserted claims require that the predetermined responses corresponding to the interpretation of the electronic message be retrieved "from a repository."  (Ex. 2.)  The specification makes clear that the term "repository" means "database:"  "one or more predetermined responses . . . are retrieved from a repository (or database), preferably the archive 32 (step 116a), of the automatic message reader 30 . . . ."  (9:26-29 (emphasis added).)

Bright Response does not dispute that a database is a repository, but seeks to broaden the phrase to be a "storage medium."  But, the term "medium" appears nowhere in the patent.  The only time "storage" is used is to refer to an "inbox storage device 22," which stores incoming

electronic messages, not the predetermined responses the claims say are stored in repositories. (*See* 4:6-9; 5:8-10; 16:18-19.)

Bright Response also cites what it says is "the" definition of "repository" as "a place, room, or container where something is deposited or stored." (Br. 10 (citing *Webster's Third New Int'l Dictionary*).) *Phillips* prohibits using the broadest possible dictionary definition one can find, because it "risks transforming the meaning of the claim term to the artisan into the meaning of the claim term in the abstract, out of its particular context, which is the specification." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005). Here, the context is computers— not "containers" or "rooms." Defendants' construction, which is based on the intrinsic evidence, should be adopted to resolve the dispute. *See O2 Micro*, 521 F.3d at 1362.

## VII. CLAIMS 28, 30, 31, AND 33 ARE INVALID FOR FAILURE TO INCORPORATE LIMITATIONS OF CLAIMS FOR WHICH THEY DEPEND.

Claim 26 contains steps labeled "(b)" and "(c)." Claim 28, which depends on claim 26, has steps labeled "(b1)" and "(c)." However, it is impossible to tell from the language of the claims or the specification whether claim 28's steps "(b1)" and "(c)" replace claim 26's steps (b) and (c), or whether claim 28's steps are undertaken in addition to claim 26's steps. A side-by-side comparison of the relevant portions of the claims (in bold) makes the problem apparent:

| 26. A method for automatically processing a non-interactive electronic message using a computer, comprising the steps of:<br>(a) receiving the electronic message from a source;<br>(b) interpreting the electronic message using a rule base and case base knowledge engine; and<br>(c) **retrieving one or more predetermined responses corresponding to the interpretation of the electronic message from a repository for automatic delivery to the source.** | 28. The method of claim 26, further comprising the steps of:<br>(b1) classifying the electronic message as at least one of (i) being able to be responded to automatically; and (ii) requiring assistance from a human operator; and<br>(c) **retrieving one or more predetermined responses corresponding to the interpretation of the electronic message from a repository for automatic delivery to the source** when the classification step indicates that the electronic message can be responded to automatically. |

There are two possible ways to interpret claim 28, but neither makes sense. The steps of claim 28 could be intended to replace the steps of claim 26. But then claim 28 would not "compris[e] the steps" recited in that claim 26. Nor would it make sense for the steps of claim 28 to supplement the steps of claim 26 as it would require retrieving <u>two</u> sets of predetermined responses corresponding to the interpretation of the electronic message: the predetermined responses corresponding to step 26(c) and the predetermined responses corresponding to step 28(c). Accordingly, as neither possible interpretation of claim 28 makes sense, the claim is insolubly ambiguous and indefinite. *Exxon Research and Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).

Claim 30, which "further includes the steps" recited in claim 28, is also indefinite for similar reasons, as it is unclear how to interpret the "(b1)" step in both claim 30 and claim 28. The first possible interpretation of the claim—that step (b1) <u>replaces</u> step (b1) of claim 28— cannot work because claim 30 says it contains all the steps of claim 28. Further, step (c) of claim 30 refers to "the classification step" (b1) of <u>claim 28</u>. If that step were replaced with step (b1) of <u>claim 30</u> (which has nothing to do with classification), step (c)'s reference to the classification step would be make no sense. Nor does it make sense that step (b1) of claim 30 <u>supplements</u> the steps of claim 28. Under that interpretation, there would be two step (b1)s. That scenario could not have been intended by the applicants, who set forth the steps in the other claims sequentially, with no overlapping letters and numbers. (Compare, for example, claim 1 with claim 2, as well as claim 54 with claim 62.) Accordingly, claim 30 is also indefinite.

Instead of addressing any of these issues, Bright Response merely asserts that dependent claims must be construed to incorporate by reference all limitations of the independent claims. (Br. 19-20.) That, however, does not address the fundamental problems described above.

## VIII. "REQUIRING ASSISTANCE FROM A HUMAN OPERATOR" (CLAIMS 28 AND 30.)

| Google's and AOL's Construction | Bright Response's Construction |
|---|---|
| Requiring that a manual reviewer review, revise, or compose the response to be delivered to the source. | Requiring that a manual reviewer review the electronic message or information derived from the electronic message, or review, revise or compose the response to be delivered to the source. |

Bright Response and Defendants agree that the construction of this phrase should include "Requiring that a manual reviewer review, revise, or compose the response to be delivered to the source," and that reference to the specification is required to understand the term. However, Bright Response seeks a construction that provides this limitation is also met by "[r]equiring that a manual reviewer review the electronic message or information derived from the electronic message." This additional language suggests the limitation may be met if the manual review of the message occurs at any time and for any purpose, even if the manual review has nothing to do with responding to the message. That interpretation finds no support in the intrinsic evidence.

### A. Defendants' Construction Is Supported by the Intrinsic Evidence.

Claim 28 requires "classifying the electronic message as at least one of (i) being able to be responded to automatically; and (ii) requiring assistance from a human operator." Step (c) then provides "retrieving one or more predetermined responses . . . for automatic delivery to the source <u>when the classification step indicates that the electronic message can be responded to automatically.</u>" (emphasis added.) This language shows that the purpose of the classifying step is to determine which messages can be responded to automatically, and which messages need assistance of a human operator to respond. Indeed, Bright Response admits that "[t]he '947 Patent teaches how electronic messages may be analyzed to determine whether they can be responded to automatically with predetermined responses that relate to the content of the

message." (Br. 1.) Obviously, when a human operator is needed to respond to a message, the human needs to review the response. Otherwise, it would be pointless to classify the message.

The specification explains that after a message is categorized as a "referral" type message, it is routed "to the manual review inbox 24 (step 118) for subsequent retrieval by the human operator 40." (10:30-34.) The system also attempts to locate predetermined responses to route to the manual review inbox along with the message. (10:34-38.) Then, the human operator reviews the response as Defendants' construction provides:

> At step **120**, the human operator **40** (preferably assigned to a specific business sub-category) first reviews and processes the highest priority E-mail messages **11** followed by the lower prioritized E-mail messages **11**. When the human operator **40** deems that a predetermined response is appropriate and may be released to the customer **50**, the response is routed to the outbox **26** (step **122**) for delivery to the domain server **10**. The response is then transmitted over the

(10:39-47.)

The '494 provisional application, incorporated into the '947 patent's specification, also states without qualification that when a message is flagged in the "EZ Reader," (the name of the commercial embodiment described in the provisional application) "specialists review <u>and write responses to all messages</u> referred by EZ Reader and place these electronic replies in the outbox." (Ex. 4 at 5 (emphasis added).) Bright Response ignores this too.

**B.** **<u>Bright Response's Construction Is Not Supported by the Intrinsic Evidence.</u>**

Under Bright Response's proposed construction, a human operator need not review the response to a message that has been classified as requiring assistance from a human operator. Although unclear, Bright Response's proposed construction also seems to allow the human review to occur at any time, including potentially before a message is received from the source, before the predetermined responses are retrieved, or even after the response has been delivered.

Bright Response argues its construction is supported by the statement in the specification that "[i]f possible, one or more predetermined responses . . . are retrieved from the repository of the automatic message reader 30 and routed to the manual review inbox 24 along with the E-mail message." (Br. 12-13 (citing 10:34-38).))  But, this statement does not show that human review of the response can be bypassed after the message has been classified as requiring assistance from a human operator.  It merely says that, if possible, the system will <u>assist</u> that human review by providing the human operator with one or more predetermined responses.  The human operator still needs to review the responses; otherwise it would be pointless to require human assistance in the first place.  Nor does this statement—or any other statement in the specification—provide that human review of the message can occur before the message is received from the source, or after the response has been delivered, as Bright Response's overbroad construction implies.  Even if it were not already obvious that a message must be received before it can be reviewed, Figure 2B of the patent makes clear that the manual review takes place after the message is transferred to the manual review inbox.

## IX.    "STORED CASE MODEL"  (CLAIMS 30, 31, AND 33.)

| Google's and AOL's Constructions | Bright Response's Construction |
|---|---|
| Stored text and attributes, derived from a previously received electronic message, and an associated stored response. | A set of one or more stored case models.[7] |

Bright Response has informed Defendants that it agrees that "the stored case model" consists of "stored text and attributes," as well as an "associated response," as Defendants'

---

[7]  Bright Response's construction, which refers to a plurality of case models, does not appear to address "stored case model."  Defendants contacted Bright Response regarding this issue on February 25, 2010, but Bright Response did not respond by the time this brief was filed.  Presumably Bright Response will offer a different construction in its reply brief.

construction provides.  Bright Response, however, disputes that the stored text and attributes are "derived from a previously received electronic message."  The intrinsic evidence, however, fully supports Defendants' construction.

Claim 30 depends on claim 26, which requires that "the electronic message" is "receive[d] . . . from a source."  And the parties have stipulated that "a case model" refers to the "case model of the electronic message."  Thus, logically, the "stored" case models would also come from a message received from a source.  And as it is a "stored" case model, it is based on a previously received message, just as Defendants' construction provides.

The specification further supports Defendants' construction.  Indeed, it explicitly states "stored case models are created from previously <u>received</u> E-mail messages 11 and <u>associated responses</u>."  (7:44-45 (emphasis added).)  *See Phillips*, 415 F.3d at 1315 (The specification "is the single best guide to the meaning of a disputed term.").  Bright Response does not even acknowledge this clear statement in the specification.

Instead, despite this clear intrinsic evidence, Bright Response asserts that "it is well within the scope of the teachings of the inventors that a case model can be created using anticipated hypothetical messages and associated responses."  (Br. 16 (emphasis in original).)  Yet, the specification says nothing about "hypothetical messages," and Bright Response does not cite any support for this argument.  Bright Response's unsupported assertions cannot overcome the clear language of the intrinsic evidence, which requires that the stored case model be created from a previously received electronic message.

**X.** **PREDETERMINED MATCH WEIGHT" AND "PREDETERMINED MISMATCH WEIGHT" (CLAIMS 31)**

| *Google's and AOL's Constructions* | *Bright Response's Constructions* |
|---|---|
| **Predetermined Match Weight:** A predetermined factor which is added to a stored case model's match score when a feature from the stored case model matches text and attributes from the presented case model. | **Predetermined Match Weight:** A predetermined factor controlling the degree to which a stored case model's score is increased by a comparison of text and attributes from a case model with those from a stored case model. |
| **Predetermined Mismatch Weight:** A predetermined factor which is subtracted from a stored case model's match score when a feature from the stored case model does not match a feature from the presented case model.[8] | **Predetermined Mismatch Weight:** A predetermined factor controlling the degree to which a stored case model's score is decreased by a comparison of text and attributes from a case model with those from a stored case model. |

Claim 31 provides that the score of a stored case model "is increased by a predetermined match weight" or "decreased by a predetermined mismatch weight," depending on whether the attributes and the text of the presented case model match the stored case model. Bright Response and Defendants disagree about the role of the predetermined factor in increasing or decreasing the case model's score. Under Defendants' construction, the score is increased or decreased by the predetermined factor. Under Bright Response's construction, the predetermined factor somehow "control[s] the degree" to which the score is increased or decreased.

The plain language of the terms "increased by" and "decreased by" in claim 30 shows the numbers are added or subtracted just as Defendants' construction provides. The specification also shows that the predetermined factor increases or decreases the raw score:

---

[8] Bright Response's brief incorrectly states Defendants' proposed construction of the term "predetermined mismatch weight," substituting the word "matches" for the phrase "does not match" in Defendants' construction. Defendants proposed their constructions on January 12, 2010 in order to narrow the dispute between the parties. Bright Response appears to have rejected them, but refers to them as "under consideration." (Br. 17, 19).

> The raw score of a stored case model may increase or decrease in differing amounts depending on the particular feature (i.e., attribute) being searched. Thus, if $feature_1$ matches, the raw score may increase by match-weight, while if $feature_2$ matches, the raw score may increase by match-$weight_2$. Similarly, if $feature_1$ does not match, the raw score may decreased by mismatch-$weight_1$, while if $feature_2$ does not match, the raw score may decrease by mismatch-$weight_2$. It is preferred that the match-weight of each feature is a positive number and that the mismatch-weight is zero.

(8:48-57.)  Indeed, Bright Response admits that this language "suggests that the match/mismatch weights are added and subtracted rather than multiplied (or else multiplying by a mismatch weight of zero would also result in zero)."  (Br. 18.)

There is no discussion in the specification or claims, however, that supports Bright Response's assertion that the predetermined factor "control[s] the degree" to which the score is increased or decreased.  Indeed, the word "degree" in Plaintiff's construction is <u>not</u> used in the patent.  And the word "control" is used only once—to refer to a "software control program."  (4:16.)  Bright Response asserts that "[o]ne of ordinary skill in the art would understand that increasing a raw score can be achieved by multiplying it by a positive factor greater than one, and decreasing it can be achieved by multiplying it by a factor between zero and one," but provides no support that one of skill would have understood that to be claimed.  (Br. 18.)

The term "controlling the degree" is also impermissibly vague.  Indeed, it is unclear whether the term would even include addition, which is expressly required by the specification as discussed above.  In the equation 4+6=10, the six does not "control the degree" to which the four is increased; rather, six is an amount to which the four is increased.  A construction that excludes a preferred embodiment "is rarely, if ever, correct."  *Vitronics*, 90 F.3d at 1583.  Accordingly, Defendants' proposed compromise construction should be adopted.

## Conclusion

For the foregoing reasons, Defendants respectfully request that their proposed claim constructions be adopted.

DATED:  February 25, 2010                    Respectfully submitted,

/s/ David A. Perlson
Charles K. Verhoeven, *pro hac vice*
charlesverhoeven@quinnemanuel.com
David A. Perlson, *pro hac vice*
davidperlson@quinnemanuel.com
Brian C. Cannon, *pro hac vice*
briancannon@quinnemanuel.com
Jennifer A. Kash, *pro hac vice*
jenniferkash@quinnemanuel.com
Antonio Sistos, *pro hac vice*
antoniosistos@quinnemanuel.com

QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
50 California Street, 22nd Floor
San Francisco, California  94111
Telephone:      (415) 875-6600
Facsimile:      (415) 875-6700
Attorneys for Defendants Google Inc.,
America Online, Inc., and AOL, LLC.

Jason C White
Howrey LLP - Chicago
321 North Clark Street
Suite 3400
Chicago , IL 60610
312-595-1239
312-595-2250 – facsimile
whitej@howrey.com

Jennifer H. Doan
Joshua R. Thane
HALTOM & DOAN
Crown Executive Center, Suite 100
6500 Summerhill Road
Texarkana, TX 75503
Tel:  (903) 255-1002
Fax: (903) 255-0800
jdoan@haltomdoan.com
jthane@haltomdoan.com
Attorneys for Defendant Yahoo!

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed and served electronically on all counsel of record in compliance with Local Rule CV-5(a) on February 25, 2010.

By: _/s/ David A. Perlson_____