```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE EASTERN DISTRICT OF TEXAS

 3                     MARSHALL DIVISION

 4   BRIGHT RESPONSE LLC      )(

 5                            )(   CIVIL DOCKET NO.

 6                            )(   2:07-CV-371-CE

 7   VS.                      )(   MARSHALL, TEXAS

 8                            )(

 9   GOOGLE, INC., ET AL      )(   APRIL 1, 2010

10                            )(   8:30 A.M.

11             CLAIM CONSTRUCTION HEARING

12       BEFORE THE HONORABLE JUDGE CHAD EVERINGHAM

13             UNITED STATES MAGISTRATE JUDGE

14

15   APPEARANCES:

16

17   FOR THE PLAINTIFF:   (See attached sign-in sheet.)

18

19   FOR THE DEFENDANTS:  (See attached sign-in sheet.)

20

21
     COURT REPORTER:      MS. SHELLY HOLMES, CSR
22                        Deputy Official Court Reporter
                          2593 Myrtle Road
23                        Diana, Texas  75640
                          (903) 663-5082
24

25   (Proceedings recorded by mechanical stenography,
```

transcript produced on a CAT system.)

2

```
 1                    I N D E X

 2

 3   April 1, 2010

 4                                        Page

 5      Appearances                       1

 6      Hearing                           3

 7      Court Reporter's Certificate      110

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                 COURT SECURITY OFFICER:  All rise.

 2                 THE COURT:  Please be seated.  All right.

 3   Please be seated.

 4                 We've got a Markman hearing set in Case

 5   2:07-CV-371, Bright Response against Google.

 6                 What says the plaintiff?

 7                 MR. SPANGLER:  Your Honor, Andrew Spangler

 8   on behalf of the plaintiff.  We are ready to proceed.

 9                 THE COURT:  All right.  For the Defendant?

10                 MR. VERHOEVEN:  Morning, Your Honor.

11   Charles Verhoeven on behalf of Google and AOL.  Ready to

12   proceed.

13                 THE COURT:  All right.

14                 MR. ROOKLIDGE:  Good morning, Your Honor.

15   William Rooklidge on behalf of Yahoo.  We're ready to

16   proceed, as well.

17                 THE COURT:  All right.  Good morning.

18                 All right.  I set aside an hour and a half a

19   side for the Markman presentations.

20                 Plaintiff, you need to use at least half of

21   that time in your opening presentation; otherwise,

22   you'll be limited to a like amount of time in rebuttal.

23   The floor is yours.

24                 MR. FENSTER:  Morning, Your Honor.  This is

25   Marc Fenster on behalf of the plaintiff.
```

1            So is it the Court's preference that we'll

2    proceed on all terms as opposed to ping-pong

3    term-by-term?

4            THE COURT:  Well, I'd prefer to -- to do it

5    that way.  I mean, unless y'all have an agreement

6    otherwise, I'd prefer to do it that way.

7            MR. FENSTER:  Okay.

8            THE COURT:  If...

9            MR. FENSTER:  Your Honor, we have had some

10   technical difficulties this morning, and I apologize for

11   that, but we have handed the Court and your clerk a

12   binder with our slides.  Due to some dif --

13   difficulties, I guess we're unable to display them on an

14   other than yellow or green hue, so we'll ask you to

15   follow along in the notebooks if that's okay.

16           THE COURT:  I apologize for the technical

17   difficulties.  I've got a suspect in mind, but I

18   haven't...

19           MR. FENSTER:  Your Honor, the first term

20   that I'd like to deal with is non-interactive electronic

21   message.  Non-interactive electronic message, if you go

22   to Slide 2, has both the plaintiff's and the defendants'

23   constructions.

24           The plaintiffs propose that an electronic

25   message be construed in accordance with its common

1   ordinary meaning, as one of skill in the art would read

2   it in light of the specification.

3            The defendants take the position that it is

4   insolubly ambiguous and therefore indefinite -- that the

5   patent is indefinite because non-interactive electronic

6   message is so confusing, so insolubly am -- ambiguous,

7   that one of skill in the art could not discern what it

8   means.

9            Your Honor, these are not difficult terms.

10  First, a message is a common ordinary term using its

11  common every -- every meaning.  It is a communication

12  that is sent.

13           Well, we've got a modifier, the electronic.

14  What does it mean for a message to be electronic?  It's

15  a message that's sent by electronic means.  It's

16  consistent with the specification.

17           If you turn to Page 3 in our

18  specification -- in our -- in the slides, we have a

19  quote from Column 4, Lines 9 through 12, of the '947

20  patent.  It is preferred that the electronic messages

21  are e-mail messages and are so referred to her --

22  herein, it being understood however that other types of

23  electronic messages are contemplated as being within the

24  scope of the invention.

25           What they meant is any electronic messages.

1    E-mail messages are used as an example, but it's not so

2    limited.

3              Going on to Slide 4, that same point is

4    reiterated in the specification.  This is at Column 11,

5    Line 29:  The electronic message is preferably an e-mail

6    message in ASCII text date -- data format, it being

7    understood that the invention is not so limited.

8    Indeed, the electronic message may take on a variety of

9    data forms, and it goes -- formats, and it goes on to

10   explain what those are.

11             It goes on further, Your Honor, to explain

12   that the electronic message can have what they call a

13   fixed data format or a variable data format.  And a

14   fixed data format has -- is one where the fields are

15   set, has a name field that appears here, description

16   that appears here, and so on.  Whereas variable data,

17   the data can appear everywhere, and those are shown on

18   Slides 5 and 6.

19             So what could be so confusing?  The next

20   modifier is non-interactive.  So it must be this word

21   that's confusing the defendants so much that they can't

22   figure out what this means, except that the patent tells

23   you exactly what it means.

24             Going to Slide 7 at Column 4, the patent

25   explains what they mean by non-interactive, and they do

```
 1   so first by distinguishing the -- the Allen reference.
 2   The Allen reference is a prior art reference.  It's
 3   disclosed in the specification.  And what it says is,
 4   "Unlike the help desk of the '664 patent described
 5   above, that is, the Allen reference, in the instant
 6   invention the data of the electronic message is
 7   delivered to the automatic message interpreting and
 8   routing system in a non-interactive manner."
 9           Specifically, the customer transmits a
10   non-interactive electronic message to the system.  This
11   non-interactive transmission of electronic messages
12   prescribes that the customer need not later provide
13   additional input to assist the system.  That's what it
14   means.  It tells you exactly what we mean by
15   non-interactive.
16           And it goes on in the very next paragraph,
17   Your Honor -- this is at Slide 8 -- to say, "It is noted
18   that defining an electronic message as being
19   non-interactive prescribes only that the message content
20   need not be supplemented.  Thus, as described in more
21   detail below, the form of the non-interactive electronic
22   message may be altered by the system after the customer
23   sends it; however, the customer is not required to
24   provide supplemental information to assist -- assist the
25   system."
```

1               THE COURT:  Does it have to be delivered to

2    a particular person?

3               MR. FENSTER:  To a particular person, no,

4    but it does have to be delivered to someone from a

5    computer to someone.

6               THE COURT:  Well, how do you square that,

7    then, with what you said in the reexam?

8               MR. FENSTER:  The -- in the -- in the

9    reexam, Your Honor, what we said is we were

10   distinguishing the Allen reference.  And the Allen

11   reference -- just for a little bit of background, an

12   Allen reference is a help system, so if Your Honor has a

13   problem with cable and you call up and you talk to a

14   customer rep, you don't get to interact with their help

15   system.  You interact with the representative who's

16   typing stuff and -- and interacting with their help

17   system.

18               In Allen, the person interacting with that

19   help system, entering data, making choices, is not

20   sending a message.  They're not sending a message that's

21   sent to someone, and so there is no electronic message

22   that's received from a source, namely the user.  You are

23   the user in this case.

24               So what we said in the reexam is Allen is

25   different.  It requires -- it didn't involve an

1    electronic message being sent because it -- the

2    interact -- the entering of interactive data at a

3    terminal is not the same thing as sending an inter -- a

4    non-interactive message to someone.

5            Real briefly, this claim for indefiniteness

6    borders, in my view, on -- on frivolous, and I guess

7    it's -- but I'll -- I'll go through the standard.

8    It's -- it's at Page 9.

9            The standard for indefiniteness is only

10   claims not amenable to construction or insolubly --

11   solubly ambiguous or indefinite, citing the Datamize

12   case.  And to determine whether a claim term is

13   indefinite, the Court considers whether one of skill in

14   the art would understand the bounds of the claim when

15   read in light of the specification.

16           Here, Your Honor, we believe that the

17   specification tells you what an electronic message is

18   and exactly what it means to be non-interactive in the

19   context of the patent.  And, therefore, we -- we request

20   that the Court construe non-interactive electronic

21   message as an electronic message not requiring

22   additional input or supplementation from the sender.

23           Your Honor, the next term I was going to

24   cover is rule base, but I believe that the parties have

25   now reached an agreement with respect to rule base

1    knowledge engine that is in the joint claim construction

2    chart that was filed with the Court last night.  And

3    that construction, just for the record, is --

4              THE COURT:  What page are you on?

5              MR. FENSTER:  Looking at the -- the chart

6    that was filed in the joint claim construction chart, I

7    think it's at 5 carry over -- over to 6.  And it's set

8    forth as the defendants' construction, but the -- the

9    agreed construction for rule base knowledge engine is,

10   quote, a knowledge engine that tests whether one or more

11   conditions are met and, comma, if so, comma, applies

12   specified actions, end quote.

13             Your Honor, if there are no further

14   questions on that, I'd like to turn to case base

15   knowledge engine.  You can find it in Tab 3 of our

16   notebooks.

17             And on the first page it shows the

18   side-by-side plaintiff's construction and defendants'

19   construction for case base knowledge engine.

20             Plaintiff's construction, Your Honor, is a

21   knowledge engine that processes electronic messages by

22   comparing them to a stored set of exemplar cases.  Much

23   of plaintiff's construction is agreed and overlaps with

24   defendants' construction.

25             The defendants' construction has one

1   significant difference that I want to point out to the

2   Court, however.  The defendants propose a knowledge

3   engine that compares an incoming set of facts,

4   parentheses, a problem, with a stored set of exemplar

5   cases representing past problems to obtain a set of

6   prior cases which are used to formulate an appropriate

7   action.

8            The parties agree, Your Honor, that a case

9   base engine is one that compares incoming messages to a

10  set of stored cases.  The primary dispute is to what

11  is -- as to what those stored cases are.  The

12  defendants' construction requires and it limits that the

13  stored cases are derived from past problems, as opposed

14  to -- it eliminates the possibility of populating the

15  case base with anticipated hypotheticals --

16            THE COURT:  Set of seed data.

17            MR. FENSTER:  Exactly.  And so --

18            THE COURT:  Well, does your construction

19  require that -- the system to be able to learn?  I mean,

20  is that the -- is that part of the dispute, or is it --

21  is it just --

22            MR. FENSTER:  It's -- it's certain -- I

23  think our construction certainly anticipates and expects

24  and allows that the system will learn.  I think that the

25  defendants' construction --

 1              THE COURT:  Well, no, does it require it to

 2      learn is my question?

 3              MR. FENSTER:  Honestly, Your Honor, I don't

 4      think that either parties' construction address --

 5      addresses the requirement of it learning.  That is

 6      certainly contemplated by the invention, and I wouldn't

 7      have any problem with the system -- with the claim

 8      language requiring it.  Neither party has addressed that

 9      in the papers to date.

10              THE COURT:  I just didn't know if that

11      was the dis --

12              MR. FENSTER:  No.

13              THE COURT:  You're -- you're correct, and I

14      didn't see it addressed in the papers, but the

15      constructions that -- I mean, proposed by the defendants

16      would at least imply that you had to learn from past

17      problems and yours would not require that.  And I just

18      wanted to know if that was the -- the real dispute.

19              MR. FENSTER:  Our -- ours is -- ours is

20      intended to be inclus -- inclusive of that.  The way I

21      was viewing it, Your Honor, is that their construction

22      would limit the set of stored problems to be only past

23      problems, as opposed to seed problems.

24              THE COURT:  Right.

25              MR. FENSTER:  And so, one, how do you get a

1    new database?  How -- how do you start the system?

2    Chicken and the egg.  I don't know that you can do that

3    with their construction.

4              And the second, it's inconsistent with the

5    specification which talks about being able to deal with

6    new products and new services, for example.

7              So let's flip ahead to No. 25 on the slides.

8    One of the applications that's disclosed for the -- for

9    the disclosed invention is the use in a Customer Service

10   Department where a Customer Service Department provides

11   new products and services to current and potential

12   customers and maintains existing products and services

13   by interacting with current customers.

14             The automatic message reader is a tool to

15   more efficiently process incoming mail messages in the

16   Customer Service Department.  One of skill reading this,

17   we submit, would know that you won't have any past

18   problems relating to new products.  And, therefore, you

19   would never be able to populate your case base based on

20   new products without seeding it with anticipated.

21             And there isn't anything in the claims, in

22   the specification, in the file history that would

23   exclude -- that would say our stored case models are

24   different.  We're different than prior art because we

25   are limited only to past problems.  It just says they're

1    exemplar cases, and it doesn't place any requirements on

2    how they get there or from where they came -- come.

3              The -- there are slight differences in the

4    language, Your Honor, between the formulations.  They

5    use this formulation call -- talking about an incoming

6    set of facts, and then describing that in parentheses, a

7    problem.  That language is fine.  It comes from the

8    specification describing the prior art of Allen.  It's

9    just confusing and introduces new concepts and new facts

10   that are unnecessary.  There's no need to call a message

11   a problem.  While it may be fine to call it a problem,

12   there's no reason to.  And then it's a risk of the jury

13   getting confused as to whether this is a problem or a

14   message or a set of facts.

15             That's why we ask the Court to give the

16   construction that we think is clearly supported by the

17   specification, which is a knowledge engine that

18   processes electronic messages by comparing them to a

19   stored set of exemplar cases.

20             THE COURT:  Okay.

21             MR. FENSTER:  If there are no further

22   questions on that, Your Honor, I'll move right along to

23   predetermined response, which is at Tab 4.

24             Your Honor, if you look -- if you look at

25   the two constructions and if you read the briefing, I'm

1   not sure why we're here fighting about this term.  Both

2   parties agree on the first sentence that a predetermined

3   response is responsive --

4            THE COURT:  Just practicing the canons of

5   claim construction.

6            MR. FENSTER:  I guess so, Your Honor.

7            Apparently, there's been a slow down in the

8   legal market.

9            The -- the responses may be modified and/or

10  altered based on the interpret -- oh, I'm sorry.  Both

11  parties agree as to the first part that predetermined

12  responses are responses prepared prior to the receipt of

13  the electronic message.  We are agreed.

14           Plaintiff has asked, consistent with the

15  specification, that the predetermined response

16  definition, if it's to be construed at all, be clarified

17  to say that the response may be modified and/or altered

18  based on the interpretation of the electronic message.

19  That comes straight from the specification.

20           If you turn to the next slide, 29, it says

21  exactly that at Line 9 -- at Column 9, Line 32.  It is

22  understood that the predetermined response may be

23  modified and/or altered in accordance with the

24  interpretation of the e-mail message if required to

25  properly respond to a customer.

1                   So the defendants in their responsive brief

2       say, "Yeah, we agree, but we don't want it in the

3       construction."  So I don't know that I've seen a good

4       reason for it not to be there.  It seems completely

5       consistent.  I don't know that you need to construe

6       predetermined response anyway.  It has a common ordinary

7       meaning.  It's something predetermined, but we wouldn't

8       want the jury to be confused or improperly led to

9       believe that it's not a predetermined response if you

10      change it later because the specification says that you

11      can.

12                   THE COURT:  By later, what do you mean?

13                   MR. FENSTER:  Based on the interpretation of

14      the electronic message.

15                   THE COURT:  Well, does that include before

16      the predetermined response is retrieved from the

17      database?

18                   MR. FENSTER:  No.

19                   THE COURT:  Or the repository?

20                   MR. FENSTER:  No, it would be after -- after

21      it's retrieved -- well, there is a predetermined

22      response that has to exist somewhere.  It has to be

23      modified in response to the interpretation of the

24      message.  So I don't know if it could -- it depends

25      exactly what you're calling the retrieving step.  If

1   it's modified there and then retrieved -- I'm a little

2   uncomfortable specifying it has to be before or after

3   retrieval.  I know that it has to be --

4           THE COURT:  It might pull something from two

5   portions of the databases, for instance.

6           MR. FENSTER:  For instance.

7           THE COURT:  And -- and I -- I don't -- I

8   mean, that's the argument, though, that's being

9   presented, and it's not that -- it's not that they

10  disagree with the language that you're putting in, but

11  it's a timing issue as I appreciate the dispute.

12          And what they're saying is that the

13  predetermined response can't be modified before it's

14  actually retrieved from the database, and it also can't

15  be modified once the message has already been delivered

16  back to the customer.

17          MR. FENSTER:  Well, I agree that it can't be

18  modified after it's delivered.  Once it's delivered,

19  it's delivered.  I think the window of time during which

20  it can be modified, as I understand the specification,

21  is based on the interpretation of the electronic message

22  and before its delivered.

23          THE COURT:  To the customer.

24          MR. FENSTER:  To the customer.  That's --

25  that's the window of time that I see based on the claim

1    language and what's stated in the specification.

2              If there's nothing further on predetermined

3    response, Your Honor, we'll move right along to

4    repository at Tab 5 of your notebook.

5              Your Honor, the construction that's set

6    forth in Tab 5 and in our joint claim construction

7    statement that was filed last night is slightly

8    different than what was proposed in the briefing.

9    Having read through the briefing, I think this is more

10   in keeping and does -- was an attempt to address some of

11   the defendants' arguments in -- in their response.

12             A repository is discussed in the

13   specification as the place where the predetermined

14   responses are kept or the stored case models are kept.

15   That's it.

16             There is one place in the specification

17   where there's a parenthetical that says "or database."

18   There is nothing in the specification that says -- that

19   would limit the repository to a database.  A repository

20   is a common ordinary meaning.  People would understand

21   reading this specification that the repository is just

22   the place where that electronic stuff is stored.  And

23   that is consistent with the dictionary definition.  It's

24   cited here on the next page.  It was also in our

25   briefing, Your Honor.

1          Your Honor, the next term that I'd like to

2   cover is the "requiring assistance" term.  This is at

3   Tab 6.

4          So, Your Honor, just as a reminder, the

5   requiring assistance language comes from Column 28 -- or

6   Claim 28, rather, in Step b2.  The method of 26 further

7   comprising the steps of classifying the electronic

8   message is at least one of, (i), being able to be

9   responded to automatically, and, (ii), requiring

10  assistance from a human operator.

11         Now, here the dispute is, again, relatively

12  limited.  If you go to Page 32 in -- behind Tab 6 where

13  we have the side-by-side constructions, both parties

14  agree that requiring assistance can be requiring that a

15  manual reviewer review, revise, or compose the response

16  to be delivered to the source.

17         The plaintiff believes, based on the

18  specification, that requiring assistance can also

19  include having the manual reviewer review the message to

20  be interpreted.

21         And the defendants seem to exclude that from

22  their construction.  So that, as best I can discern, is

23  the -- are the battle lines for requiring assistance.

24  And we believe that the '947 clearly supports that the

25  requiring assistance can include review of the message

1   itself.

2            So if you go to Page 33 in the binder, the

3   specification states that exactly.  At Column 9, Lines

4   43 to 46, "When the automatic message reader is not

5   capable of automatically responding to the e-mail

6   message, the e-mail message must be transferred to the

7   human operator for review."  I believe that one of skill

8   in the art reading that would understand that means

9   review of the message.

10           Next, on 34, it goes on to say that -- it

11  describes that "After the message has been

12  subcategorized, the message reader routes the e-mail

13  message to the manual review inbox for retrieval by the

14  human operator."  Then it says, "If possible, one or

15  more determine -- predetermined responses for proposed

16  release and delivery are retrieved from the repository

17  and route -- and routed to the manual review box along

18  with the e-mail message."

19           So here what it's contemplating is that

20  you're reviewing the message and you may or may not --

21           THE COURT:  Figured out what they're asking

22  now?

23           MR. FENSTER:  Yes.

24           THE COURT:  Response 3, right?

25           MR. FENSTER:  That's right.

1           THE COURT:  Okay.

2           MR. FENSTER:  So there's -- there doesn't

3    seem to be anything that we can find in the intrinsic

4    record that would exclude review of the message --

5    message itself once something is classified as requiring

6    assistance from a human operator, and the patent seems

7    to say it explicitly.  We think the claim construction

8    should, too.

9           Your Honor, the next term that we'll go to

10   are predetermined match weight and mismatch weight.

11   Those are found at Tab 7.

12          So, Your Honor, this language comes from

13   Claim 30 which depends on 28 which depends on 26 and can

14   be seen, for example, at b6 which says, "Assigning a

15   score to each stored case model which is compared with

16   the case model, the score increasing when at least one

17   of the attributes in the text match the stored case

18   model and score not increasing when at least one of the

19   attributes in the text do not match the score model."

20          Your Honor, I've read this specification

21   many times, and it talks consistently about how scores

22   can be increased or decreased.  There is not once where

23   this patent says by increased, we mean simple addition,

24   that the predetermined mismatch -- or match weight has

25   to be added, arithmetically added, and that's all that

1  we mean.

2              It is entirely consistent, Your Honor, to

3  increase a score.  If you have a score of 5 and you

4  in -- and you want to increase it by a factor, you can

5  multiply it by 1.2 and that will increase it.  There is

6  nothing in the patent that would limit it, that would

7  exclude any kind of mathematical opera -- operation that

8  would lead to increasing the value.

9              And yet defendants in their definition of

10  predetermined match weight and predetermined mismatch

11  weight try to limit their construction to something

12  which is added or something which is subtracted.  And

13  there is just no basis for that limitation in the -- in

14  the claims.  There's nothing in the -- in the claims

15  that would say it's limited to adding or subtracting.

16  The claims say increasing or decreasing.  There's

17  nothing in the specification that would exclude other

18  embodiment -- other embodiments of increasing or

19  decreasing.

20              Unless Your Honor has any more questions on

21  that term, I'll move to the ordering of the steps

22  argument.

23              Your Honor, the defendants have argued that

24  you have to impose a limitation that the steps be

25  performed in order in this case.  I have to confess, I

1    don't understand the scope -- the metes and bounds of

2    their argument.  They seem to be arguing that it only

3    applies with respect to Claim 26 and not with respect to

4    the dependents.  If that's true, I believe that the

5    limitation is unnecessary, but fine.

6              In order -- so generally --

7              THE COURT:  Meaning that you do not contest

8    it?

9              MR. FENSTER:  I don't contest it.

10             THE COURT:  Okay.

11             MR. FENSTER:  And -- and I'll show you why.

12   If you go to Column 40 -- I'm sorry, Page 40 in the

13   tabs, which is just a picture of Claim 26, this claim

14   can't be infringed unless it's done in order because,

15   first, you have to receive the electronic message.

16   Step (b) requires interpreting the electronic message,

17   but you can't have that until you receive it.  And (c)

18   says retrieving one or more predetermined responses

19   corresponding to the interpretation of the message.  And

20   you can't do that until you do Step (b).

21             Now, I've just made defendants' argument for

22   them as to why it should be -- why you do need an

23   ordering for Step 26 -- for Claim 26.  Claim 26 doesn't

24   need it.  It's unnecessary.  Whether you hold that these

25   have to be performed in order or not, if a, b, and c are

1    done out of order, they have an argument that the claim

2    terms aren't being met for exactly the reason I just

3    walked through.

4              Now, I assume, but I'm not positive, that

5    when they say the ordering of the steps, we're talking

6    about a, b, and c.  For example, it -- while it

7    discusses the using a rule base and a case base

8    knowledge, I don't think that anyone's arguing, and I

9    want to make sure that the -- that the Court's -- that

10   the Court doesn't unintentionally instruct -- give the

11   jury a basis to believe that it has to be the rule base

12   before the case base or something like that.  What we're

13   talking about are the steps in general, a, b, and c.

14             Now, this ordering argument is unnecessary,

15   and I believe it's confusing, because it falls apart

16   when you go to the dependent claims.

17             Now, it's my understanding that the

18   defendants are not arguing that the dependent claims

19   have to be performed in any kind of order.  If that's

20   true, then I'll come up on rebuttal and show you why I

21   believe that that doesn't meet the test for ordering.

22             As it stands with Claim 26, as long as it's

23   clear that it's a, b, and c, and not any of the subparts

24   within those sections and it's limited to 26 without any

25   scope on the dependents, I think it -- we're not

1    fighting about much.

2            THE COURT:  Just so I understand your

3    position, the classification, for instance, of Claim 28

4    would not need necessarily to occur before the

5    interpretation of the electronic message using the rule

6    base and the case base knowledge engine, could occur

7    before or after?

8            MR. FENSTER:  That's correct.

9            THE COURT:  All right.

10            MR. FENSTER:  I -- there -- there are some

11    steps that will logically occur, but they're sort of

12    interleaved, and some don't matter.  So, for example,

13    the classifying step, Your Honor, does -- that happens

14    before retrieving a predetermined response.

15            THE COURT:  Right.

16            MR. FENSTER:  But the retrieving in -- in

17    Step 28, the retrieving step, one or more predetermined

18    responses, I don't think there's any magic as to when

19    that happens.  There's not anything in the claim that

20    says when that has to happen.  And, similarly, when you

21    get to Column 30 -- Claim 30 --

22            THE COURT:  Well, the retrieving of Claim

23    28?

24            MR. FENSTER:  Yes.

25            THE COURT:  Well, it would need to happen

```
 1   after the interpretation, correct, consistent with what
 2   you just told me about Claim 26?
 3               MR. FENSTER:  Yes.
 4               THE COURT:  Okay.
 5               MR. FENSTER:  Right.  It's after the
 6   interpretation, when it indicates that it can be done --
 7   responded to automatically.
 8               THE COURT:  Okay.
 9               MR. FENSTER:  So I'm happy to go through
10   Claims 30 and 33.  I don't know if they're arguing that,
11   so I guess I'll -- unless you --
12               THE COURT:  Just wait to hear.  Maybe I'm
13   just --
14               MR. FENSTER:  -- have questions, I'll wait.
15               THE COURT:  I don't want to raise any extra
16   disputes for y'all.
17               MR. FENSTER:  Your Honor, the last term --
18   it's not really a term.  It's an argument that
19   defendants have made, which, honestly, it's so
20   confusing to me, I thought it must be an April Fool's
21   joke.  The -- and -- and I think it's probably most
22   appropriate --
23               THE COURT:  It was made before today, so I
24   don't --
25               MR. FENSTER:  It -- it was, and I didn't
```

1   figure it out until just last night, what this was all

2   about.

3              Your Honor, with -- with this one, I really

4   don't understand the argument.  What they seem to be

5   arguing is that the dependent claims are indefinite

6   because they don't explicitly incorporate the

7   limitations from the claims from which they depend.

8   That is done as -- both statutorily as a matter of law

9   and in the preamble of each of those dependent claims,

10   and I really don't understand the argument.

11              I suggest that we have defendants go first

12   on this point and allow me to respond, unless Your Honor

13   has questions that I'd be happy to answer.

14              THE COURT:  I don't have any questions.

15   Thank you.

16              MR. FENSTER:  Thank you, Your Honor.

17              THE COURT:  You've used 40 minutes.

18              MR. VERHOEVEN:  Morning, Your Honor.

19              THE COURT:  Morning.

20              MR. VERHOEVEN:  Mr. Verhoeven.  I'm going

21   to -- excuse me.  Your Honor, I'm going to speak on

22   behalf of all defendants for several of the terms, and

23   then Mr. Rooklidge is going to speak on behalf of all

24   defendants on some of the other terms, just in the

25   interest of efficiency, if that's okay with Your Honor.

1              We've got a set of slides here, as well.

2    Hopefully Your Honor has a copy of those.

3              THE COURT:  I've got a copy.

4              MR. VERHOEVEN:  And I have some introductory

5    slides about the patent.  I think that Your Honor is

6    familiar with the patent, so I'm just going to go

7    straight on to Slide 10 and the first argument, if I

8    may, Your Honor.

9              THE COURT:  That will be fine.

10             MR. VERHOEVEN:  And this is the

11   non-interactive electronic message term, Your Honor.

12             THE COURT:  Yeah, I need -- you need to talk

13   to me about this, Mr. --

14             MR. VERHOEVEN:  Okay.

15             THE COURT:  -- Verhoeven, because I'm

16   telling you, it's -- I'm -- you've not convinced me.

17             MR. VERHOEVEN:  Okay.  Well, let me see --

18   let me see if I can give it a shot, Your Honor.  And

19   let's start with the claim language itself, if I may,

20   Your Honor.

21             So if you could look at Claim 26, and this

22   is from the -- this whole analysis, Your Honor, is from

23   the standpoint of a person of ordinary skill in the art

24   at the time.  So a person of ordinary skill in the art

25   at the time, we'll start with the claims.  They're

1   looking at Claim 26.

2          THE COURT:  Roughly 1997; is that right?

3          MR. VERHOEVEN:  That's about right, Your

4   Honor.

5          They're looking at the claims, and the claim

6   in the preamble says it's a method for automatically

7   processing a non-interactive message.  It says it's

8   non-interactive.

9          Now, we're not saying that in the abstract

10  the phrase "non-interactive," no one could figure out

11  what they mean; or in the abstract the phrase

12  "electronic message," no one could figure out what that

13  means.  What we're saying is if you look at the claims

14  in their context and if you look at the specification

15  and what's said in the specification, that no one can

16  figure out what it means.

17         So let's start by looking at the claims in

18  their context.  It says for processing a non-interactive

19  electronic message, and then if I could just step up

20  here, Your Honor.

21         THE COURT:  Of course.

22         MR. VERHOEVEN:  It says that the system does

23  three things with this message:  Receives it, interprets

24  it, and then retrieves responses for automatically --

25  automatic delivery back to the source that sent the

1    message.  That's interaction.  That is -- the elements

2    are describing interaction with that electronic message.

3              So if I'm a person of ordinary skill in the

4    art -- and I'm just looking at the claim first.  We'll

5    go to the spec in a second.  But if I'm just looking at

6    the claim first, I got a big question mark in my head.

7    What does it mean to be non-interactive if every one of

8    these elements talk about the system interacting with

9    that message, receiving it, interpreting it based on

10   these case base and rule base, retrieving predetermined

11   responses to it, and then sending those responses back

12   for automatically -- automatic delivery to the source?

13   What is it when you interact with the message?

14             Well, it's when you do things like this.

15   You read it, you analyze it, and you respond to it.

16   That's the -- that's the definition of interacting with

17   the message.  So from the -- just looking at the claim

18   language, if I'm a person of ordinary skill in the art,

19   I have no idea so far.  So let's go to the

20   specification.

21             There is a portion of the specification, we

22   concede, Your Honor, that does refer and does use the

23   word "defining" right here, Your Honor.  It is noted

24   that defining an electronic message as being

25   non-interactive prescribes only that the message content

1   need not be supplemented.  And then it goes on.

2          So you might say, well, maybe that's what it

3   means, okay?  But right above that section in the very

4   same column, Your Honor, the specification says -- or

5   defines or describes non-interactive by distinguishing

6   the '664 patent to Allen.  So it says, "Unlike the help

7   desk application" -- and then there's a reference to

8   Allen -- "described above, in the instant invention, the

9   data of the electronic message is delivered to the

10   automatic message interpreting and routing system in a

11   non-interactive manner."

12          Okay.  So Allen, as we all know, are the

13   rules of claim construction.  Allen's intrinsic evidence

14   now.  So we're going to look to see what Allen says

15   because it says non-interactive is different from what

16   Allen does, okay?  And it says it in the same column

17   where it says this, that you don't have to respond

18   again.

19          Well, if you go to Allen -- next slide,

20   please -- Allen talks about situations where the system

21   needs to ask for additional information.  It's in the

22   last parenthetical here.  It says, "Typically by asking

23   the customer for additional information."

24          So I'm a person of ordinary skill.  I'm

25   nonplussed by the claim language itself.  I looked at

1   the spec.  I thought I figured it out, but then when it

2   starts talking about Allen, I'm back to having no clue

3   what they're talking about here.

4            What does it mean to be non-interactive in

5   this context, in this claim language?  Well, it says in

6   one spot -- if we could go back one slide -- it says in

7   one spot, Column 4, Line 66, to Column 5, Line 5, it

8   suggests that -- it means that the -- the initial

9   message need not be supplemented.

10           But then right above that it says something

11  that's inconsistent, totally inconsistent with that by

12  saying that -- that Allen is interactive and it's

13  non-interactive, but Allen describes the very same

14  situation it's describing as non-interactive.

15           So I'm the person of ordinary skill.  I'm

16  trying to design a product that doesn't -- that -- that

17  maybe does these things, but is interactive.  How am I

18  going to have any assurance that I've designed a

19  product?  And -- and this is something that -- that is

20  dis -- you know, distinguishing.  This isn't just some

21  word thrown in there.  This is used to distinguish

22  Allen, so it's an important word.

23           And yet I have no idea what I could do to my

24  system to have a system like Claim 26 that uses

25  interactive messages and -- and then not be sued for

```
 1   infringement and have to have a fight over what the
 2   meaning of non-interactive is, because looking at the
 3   intrinsic evidence, I can't find it.
 4           If you go to Slide 4 -- 14, Bright Response
 5   can't distinguish the Allen reference and distinguish
 6   that functionality as being different from
 7   non-interactive.  They can't now come to the Court and
 8   say, "Well, half of what Allen was describing is what
 9   we're doing."  That's inconsistent with what they've
10   said in the -- in the intrinsic evidence, so they
11   shouldn't be allowed to -- to broaden what they've said
12   to distinguish it.
13           Let's go to Slide 16.
14           So the intrinsic -- so we've looked at the
15   intrinsic evidence, Your Honor, and the -- I'm a person
16   of ordinary skill.  The intrinsic evidence is not
17   addressing to me crit -- critical aspects -- and I'm on
18   Slide 16, Your Honor -- of what it means for this
19   message to be interactive versus non-interactive.
20           So we don't know whether non-interactive is
21   determined from the sender's standpoint or recipient's
22   standpoint, the system's point of view.  We don't know
23   if non-interactive nature of the message determined when
24   it's sent, when it's received, or when it's interpreted.
25   Certainly it would seem that when you're receiving and
```

1    interpreting and responding to a message, you're

2    interacting with it.  And the plaintiff doesn't address

3    those ambiguities.

4           Now, if we go to the extrinsic evidence,

5    Your Honor, Slide 17, we asked the inventor -- this is

6    the named inventor, Rosanna Piccolo.

7           Question"  "Okay.  Do you know what a

8    non-interactive message is?"

9           Answer:  "No."

10           Question:  "Does that phrase have any

11   meaning to you?"

12           Answer:  "Electronic message, yes, e-mail.

13   Non-interactive, I really don't want to guess as to what

14   I believe it is.  I don't know."

15           Question:  "Okay.  You don't know what that

16   means?"

17           Answer:  "Non-interactive electronic

18   message, no."

19           So the inventor has testified that she

20   doesn't know what non-interactive electronic message is.

21           Go to the next slide.

22           The prosecuting attorney, Mr. Gregson.  This

23   is Slide 18 of the slide deck, Your Honor.  This is from

24   his deposition of July 10th, 2009, Page 96, Lines 2

25   through 10.

1             Question:  "And just one last question on

2    this line, can you give us the sort of parameters as to

3    what a non-interactive message is based upon everything

4    that we've talked about -- or is it based on everything

5    we've talked about?  Sort of give us those parameters, a

6    non-interactive message has these attributes, these

7    qualities, this is what it means?"

8             And the -- and the prosecuting attorney

9    says, no, I -- he can't give -- he can't give any

10   parameters.

11            Next slide, Slide 19.

12            The other -- another named inventor, Amy

13   Rice, Your Honor.  This is -- Your Honor, this is --

14   this -- this cite is not in the briefs because the

15   deposition wasn't taken until later.  We filed something

16   last night requesting that some supplemental information

17   that occurred after the briefing be in the record.  Just

18   wanted to point out, this is part of that.

19            THE COURT:  Objection to that?

20            MR. FENSTER:  Your Honor, the -- the witness

21   is still reviewing the transcript.  This is a -- it's --

22   it's a rough.  It's a rough draft.

23            THE COURT:  Well, I'll -- I'll admit it

24   subject to the witness' review, for purposes of this

25   hearing.

1              MR. VERHOEVEN:  Thank you, Your Honor.

2              So this is the deposition of Amy Rice,

3    another inventor.  This was taken on March 19th, and

4    I've cited to the rough transcript at Page 96, Lines 2

5    through 10.

6              Question:  "So is it your testimony that a

7    non-interactive message is a message that does not need

8    to be responded to?"

9              Witness:  "Yes."

10             So Mrs. Rice's definition, an inventor here,

11   is that, oh, well, I know what non-interactive means.

12   It means it's a message that doesn't need to be

13   responded to.  Well, that's obviously wrong, Your Honor,

14   because the claims in Claim 26 expressly describe

15   retrieving responses to the message and automatically

16   delivering them back to the source.

17             So the other inventor, Your Honor -- the

18   other inventor's understanding of what a non-interactive

19   message would be -- and by the way, in the abstract,

20   Your Honor, that's a pretty good -- pretty normal

21   understanding.  If it's non-interactive, then it

22   wouldn't be something that would be responded to.

23   That's clearly wrong.  That can't be what it means.

24   So this is further evidence that this phrase is

25   indefinite.

1           Now, on Slide 20, the plaintiff has in their

2    reply brief stated the defendants established neither

3    what the rel -- relevant level of skill in the art is

4    nor what level of skill in the art -- Ms. Piccolo is one

5    of the inventors and Mr. Gregson who is the prosecuting

6    attorney -- Your Honor, have.  However, as Your Honor

7    knows, inventors at least are presumed to be persons of

8    skill in the art here.

9           If we go to the next slide, the reexam, Your

10   Honor.  In the reexam proceedings, Bright Response has

11   yet another definition of what non-interactive is, and

12   this is from their remarks that they submitted on June

13   13th, 2009, Your Honor.  Exhibit 8 to our papers at Page

14   9, they say the claim -- quote, the claim language

15   requires a non-interactive electronic message, comma,

16   which means that it comes from a source and is delivered

17   to someone, instead of merely data that is interactively

18   entered and not being delivered to any particular

19   person.

20           So now all it means is that it comes from

21   someone and it's delivered to someone.  Well, I mean,

22   any -- any electronic message meets that limitation,

23   Your Honor.  That would mean that non-interactive means

24   nothing.  And so we have yet another definition in yet

25   another context which further shows that this phrase --

1    there is no meaning to this phrase, that -- that

2    every time you ask the plaintiffs or the inventors or

3    the prosecuting attorney what it means, you get a

4    different -- either you get an "I don't know" or you get

5    a different answer.

6             If we go to Slide 22.

7             This is the -- this is also not in the

8    record, Your Honor.  I just want to highlight.  This is

9    subject to the same filing we made last night.  There

10   was a response that -- was this filed on the 29th?  I

11   thought it was filed earlier than that.

12            MR. PERLSON:  It was mailed on the 22nd of

13   March.  We got it yesterday.

14            MR. VERHOEVEN:  So it was -- apparently, it

15   was mailed by the plaintiff to the PTO on the 22nd, Your

16   Honor.  We didn't see it until we saw it -- it wasn't

17   given to us, so we didn't see it until it showed up on

18   the PAIR system.  I think we saw it for the first time

19   last -- yesterday, Your Honor.  So we also put this in

20   the brief we filed asking for -- to supplement the

21   record, Your Honor.

22            But this is from that response, and in their

23   response they've amended to add a new claim, Claim 87.

24   And this claim says the method of Claim 31, wherein the

25   receiving receives a non-interactive message wherein the

1   interpreting and retrieving are performed without

2   further input from the source.  Well, that's what

3   they're saying non-interactive message means, period.

4   But yet now in front of the PTO, they're -- they're --

5   they're further limiting it as though non-interactive

6   message could be more than that.

7           So by even doing this, Your Honor, we would

8   submit that they're showing the indefiniteness of the

9   way the claim is currently written.

10          Why do they have -- why would they have to

11  write a new claim that specifies this language which

12  they now say is -- is part of the construction of just

13  the phrase "non-interactive message"?

14          And then, finally, Your Honor --

15          THE COURT:  Do you have a copy of the --

16          MR. VERHOEVEN:  Yes, Your Honor, we have

17  a --

18          THE COURT:  -- this response?

19          MR. VERHOEVEN:  -- copy of what we filed

20  that has the documents attached.

21          THE COURT:  Okay.  Do you mind handing it

22  up?

23          MR. VERHOEVEN:  No.  I just want to make

24  sure it's accurate.  Oh, okay.  May I approach?

25          THE COURT:  Sure.

```
 1              MR. VERHOEVEN:  So for the record, Your
 2   Honor, on Slide 22 that I was just addressing, the Claim
 3   87 that's depicted on that slide can be found in Page 6
 4   of the remarks section, Your Honor.
 5              There's also an interesting discussion, Your
 6   Honor, of electronic message and non-interactive
 7   electronic message.  I believe it's around Pages 19
 8   through 22, if my memory serves me correctly.  It's
 9   actually 18 through 23, Your Honor, is the section where
10   there's -- the latest remarks by the plaintiff's
11   attorneys on the electronic message.
12              THE COURT:  Okay.
13              MR. VERHOEVEN:  If I can go to the -- the
14   last slide on -- on the reexam.  This is another excerpt
15   out of there, Your Honor.  I'll give you the page in a
16   second.  But this is also -- this is Slide 23 in our
17   slide deck, Your Honor.  This is from the office action
18   I just handed up -- or the -- excuse me, the response I
19   just handed up, Page 21.
20              In this most recent reexamination response,
21   Bright Response also says, quote, It is clear that Allen
22   teaches that the user interacts with the computer
23   processor for an application, close paren, through the
24   terminal and further can change and supplement data
25   relating to the customer's problem.  Thus, the process
```

1    concerning electronically entered data relating to the

2    customer's problem by the customer representative is

3    interactive.

4            So here we've got yet another changed

5    argument as to what the meaning of interactive versus

6    non-interactive is.  And now they're talking about the

7    process.  This, we would suggest, Your Honor, further

8    highlights how ambiguous this ter -- this phrase is,

9    this concept of interactivity, what's interactive or

10   non-interactive in the context of claims, Your Honor,

11   that describe interacting with the electronic message.

12           So let's go to the next slide.

13           As Your Honor knows, if the claim fails to

14   reasonably apprise one skilled in the art of the

15   boundaries of the claim when read in light of the

16   specification, the claim is invalid under Section 112

17   for indefiniteness.

18           Here, we would submit it's impossible for a

19   competitor to determine looking at the intrinsic

20   evidence, as well as the -- looking -- if you look at

21   the inventor testimony and prosecuting attorney's

22   testimony, how to design a system that does not receive,

23   quote, unquote, non-interactive electronic messages and

24   receives only, quote, interactive electronic messages.

25   And for that reason, we think it's indefinite.

```
1                A couple more slides if Your -- Your Honor's
2       not too tired of hearing about this to try to finally
3       persuade Your Honor as to our point.
4                Let's go to Slide 25.
5                These are -- we just made these up, Your
6       Honor, as illustratives, so this isn't coming from a
7       source, but just to help convey to Your Honor how --
8       what we think of as the problem here.
9                So say you've got a help desk and you want
10      to send a message to the help desk and -- and you're a
11      source, you say, "I'm having trouble with my new Model K
12      laptop -- top.  It takes a full three minutes to boot
13      up.  Please call me so that I can provide you additional
14      information about this problem," and then a phone number
15      is given.  So the source is John, and John has requested
16      a telephone call so he can be provided additional
17      information.
18               Does that make this message that's sent by
19      John an interactive message?  What if the system knows
20      that a three-minute boot time is normal and can
21      automatically respond to this message?  Does that make
22      it suddenly a non-interactive message?  What if the
23      system doesn't and a person calls back, does that
24      sudden -- suddenly render this claim noninfringing as a
25      non-interactive message -- or, excuse me, as an
```

1   interactive message?  It's very unclear.

2              Let's go to the next slide.

3              Say John sends a different message.  "I'm

4   having trouble with my Mod -- my new Model K laptop.  It

5   takes a full 20 minutes to boot up.  Please tell me what

6   is wrong and how you can fix it.  And don't ask me for

7   more information.  I've already told you everything I

8   know."

9              So John has said in his message, "I don't

10  want any more -- to be asked for any more information."

11  Does that make that message suddenly a non-interactive

12  message, as opposed to the message before where he asked

13  for them to call back?  Is it the content of the message

14  that helps determine whether it's an interactive message

15  or not, or is it whether something happens on the system

16  side that makes it interactive or non-interactive?  What

17  if the system needs to know more information to respond,

18  such as the serial number of John's laptop, and so they

19  have to ask for that?  Does that suddenly make -- make

20  the -- the whole system noninfringing?

21             THE COURT:  Well, is the question, though,

22  whether it has to ask for that before it formulates a

23  response?

24             MR. VERHOEVEN:  Yes.  In this example, yes.

25  Or what if -- what if it -- it does have a response and

1  asks for more information, as well?  Does that make it

2  both infringing and noninfringing?  I mean, the -- the

3  point is we're dealing with -- I go -- I come back, Your

4  Honor, to Claim 26.  If you look at Claim 26 without

5  looking at the spec, you look at Claim 26, you have no

6  idea what is meant by non-interactive.  It -- it just

7  says -- I mean, the elements all describe interacting.

8          Go ahead, Your Honor.  I'm sorry.

9          THE COURT:  Well, I mean, as I understand

10  what -- I guess my understanding was that it didn't need

11  additional information before sending a response to it.

12  I mean, you might not be able to solve the entire

13  problem, but you've solved the problem of which response

14  to send back to the user.  That's my understanding of

15  what the patent is talking about with non-interactive.

16          MR. VERHOEVEN:  But then it's -- but then

17  the patent itself, Your Honor, in the specification says

18  Allen is interactive.  Well, how is Allen interactive

19  when it does the exact same thing?

20          And by the way, Your Honor, is this entire

21  invention -- could I -- could -- could somebody avoid

22  this entire invention if once in a while you had to ask

23  for more information before it could provide a response?

24  Would that render the whole thing noninfringing because

25  all of a sudden it's a system like Allen that sometimes

1   can be interactive, sometimes it's not?

2           Well, as Your Honor knows, if prior art

3   sometimes meets all the claim elements and sometimes

4   doesn't meet all the claim elements, it's still

5   anticipatory.  They distinguish Allen saying it -- that

6   they don't do what Allen does.  Allen sometimes asks for

7   more information, sometimes automatically responds.

8   They said Allen, period, is non-inter -- is interactive.

9   It's totally confusing, I would submit, to one of

10  ordinary skill in the art.

11          Just one second, Your Honor.  I have to

12  check a note, and then I'm going to move on to the next

13  term.

14          All right.  Let's go -- Your Honor -- if

15  Your Honor doesn't have any further questions, we'll go

16  on to the next term.  Slide 29, please.

17          So next term I'd like to address, Your

18  Honor, is the case base knowledge engine.  If we go to

19  the next slide, I think we set forth -- tried to

20  summarize what the parties' agreements and disputes are

21  in this one, Your Honor.

22          We -- we -- as we see it, Your Honor, the

23  parties agree that the case base knowledge engine works

24  by using a stored set of exemplar cases in comparison.

25  I think both sides agree with that aspect of it.

1              From our lights, Your Honor, it seems that

2    there's two aspects of it where there is a dispute that

3    may not be immediately apparent from reading the -- the

4    constructions.

5              The first is whether the case base is made

6    up of past cases versus -- or whether you could populate

7    it by trying to come up with anticipated cases that

8    might happen in the future, hypothetically.  I think

9    the -- the plaintiffs in their brief say hypothetical or

10   anticipated.  They use both words interchangeably.  Or

11   whether it has to be past cases.

12             And then the second issue is -- which is a

13   little bit less significant, but is another issue, is

14   there's a dispute, we believe, as to whether the stored

15   set of exemplar cases are compared with the message or

16   if features or attributes of the message are extracted

17   out of the message and those are compared to the case

18   model.

19             And if we just go back one slide to the

20   definitions, Your Honor.  On the second element here, if

21   you read the plaintiff's construction, "A knowledge

22   engine that processes electronic messages by comparing

23   them."  The "them" is referring to the message, so we --

24   we interpret their construction as requiring that the

25   comparison between -- be between the message itself and

```
 1    stored exemplar cases.  And we don't think that's what

 2    the patent is talking about.  It's talking about

 3    extracting features or attributes out and comparing

 4    those, so that's the second issue we have.

 5              Let's go to Slide 31, please.

 6              So the -- the starting point that I found

 7    most persuasive on this, Your Honor, was to start with

 8    the statement in the prosecution history.  After the

 9    patent -- I'm on Slide 31 here, Your Honor.  After the

10    patent office rejected claims based on Microsoft

11    Outlook, the applicants argued for the following, quote,

12    well defined, close quote, meaning of case -- case base

13    reasoning.  And this is from the '947 file history, Your

14    Honor, Exhibit 1, and we're pulling this out of Page No.

15    BR625.

16              And in the prosecution history, the -- the

17    patentee said, "The term "case base" has a meaning that

18    is well defined in the art and Outook -- Outlook does

19    not have any features that fall within such meaning."

20    And then it tells us what that meaning is.

21              It says, "A case base reasoning system is

22    described in the present specification as one which,

23    quote, compares an incoming set of facts, paren, a

24    problem, close paren, with a stored set of exemplar

25    cases, paren, a case base, close paren, quote, and then
```

1   it cites to a portion of the application, not the final

2   patent, a portion of the application that it's referring

3   to for that definition.

4           Your Honor, this is definitional language.

5   So this is something that we need to pay -- pay close

6   attention to when we're trying to figure out what

7   this -- how to construe this phrase.  And the

8   definitional language in here, as Your Honor will note,

9   tracks what the defendants' proposed construction is.

10          Now, if you go to the next slide, what we've

11  put on here, Your Honor, is the cite.  It's a different

12  column and lines than what's cited in the prosecution

13  history because the patent -- final patent has different

14  columns and lines.  But this is, I'll represent, Your

15  Honor, what was cited to in that excerpt we just looked

16  at.

17          And here you can see a repeat of -- a little

18  bit longer explanation of it, but a repeat of that same

19  definition.  The case base is stored in the form of case

20  attributes rep -- representing past problems.  The case

21  attributes are compared to the facts of the incoming

22  problem using triga -- trigram character matching to

23  obtain a set of prior cases which may be useful in

24  formulating an appropriate action, close quote.

25          This is, for the record, from Column 2,

1    Lines 41 through 51, and I'll just note that the

2    prosecuting attorney confirmed in his deposition this

3    excerpt we're pointing to is the -- the very same as

4    being referenced in the prosecution history.

5           And then, finally, to point out this is --

6    this explanation or definition, if you will, of this

7    phrase is consistent with what the defendants have

8    proposed, not the plaintiff.

9           And then, finally, if we go to Slide 33,

10   Your Honor -- I should point out on 32 -- going back to

11   32 for a second, please.  This discussion is all in the

12   context of the reference to Allen.  You see that, Your

13   Honor?  I didn't read that part, but it's up in the top

14   of the -- the citation.

15          So if you go to Allen itself, and that's on

16   Slide 33, you'll see it again.  And, of course, Allen is

17   intrinsic evidence because it's cited, as Your Honor

18   knows.  So it is something we need to look at, and Allen

19   is -- Allen also corroborates this notion of what a -- a

20   case base rule and knowledge engine is.

21          And it says, "One proposed method of the

22   prior art is to build an automated reasoning system

23   which incorporate by reference to a set of exemplar

24   cases, paren, a case base, close paren, to which the

25   facts of a particular situation, the problem, may be

1    matched."  And then it goes on.

2             Again, because this is incorporated by

3    reference, it's intrinsic evidence and should be per --

4    persuasive evidence for the Court.

5             THE COURT:  Well, let me ask you this.  Does

6    your construction exclude the situation where the person

7    that's -- or persons who are populating the database try

8    to anticipate a hypothetical set of problems and

9    populate the database with that set of hypotheticals?

10            MR. VERHOEVEN:  It would exclude that from

11   being case base knowledge engine, but it wouldn't

12   exclude it from this patent, Your Honor, because what

13   you've described is a rule base knowledge engine.  And

14   I'll get to that.

15            THE COURT:  Okay.

16            MR. VERHOEVEN:  But -- and I have some

17   slides on that, but just since you asked the question --

18   actually, let me go -- let me go to those slides because

19   they -- they really I think crystallize what I want to

20   say and probably say it better than I could.

21            So Slide 37, Your Honor.

22            What we think is happening here on this

23   issue is there's -- there's been -- by -- by attempting

24   to say exemplar cases that are anticipated should be in

25   the case base engine, what the plaintiff, Bright

1   Response, is doing is conflating what a case base engine

2   is with what a rule base engine is.

3          And the very notion of a rule base engine is

4   you come up with anticipated rules.  So you heard about

5   the new product.  You know, they cited to the new

6   product -- something about a new product in the

7   specification.  How would the invention handle that --

8   new products?  Well, they would sit down and come up

9   with a bunch of rules.

10         So, you know, we looked at the example of,

11  well, what if the system knows how long it takes to

12  boot?  Say, you have a new product, takes three minutes

13  to boot, and you think, well, geez, people might be

14  calling us because three minutes is a long time, and

15  they may think there's -- something's wrong with their

16  computer.  So what do you do?  You create a rule, and

17  the rule says -- this is -- it's taken three minutes.

18         THE COURT:  Three -- three conditions:

19  Model number, boot, three minutes, and fire the

20  response.

21         MR. VERHOEVEN:  Exactly.

22         THE COURT:  Right?

23         MR. VERHOEVEN:  So we're not -- we're not

24  changing the scope of their invention.  We're just --

25  we're saying that falls in the bucket of rule base.  And

1    by the way, we've -- we've talked about the rule base

2    and -- and tried to compromise on that because we think

3    that the difference in wording was not so much a

4    difference in the meaning.  And so we've -- we've agreed

5    with -- basically with what they've suggested on rule

6    based, but that's rule base.  That's not case base.

7              And by -- by making a distinction between

8    these two, which we must because they use different

9    words, and if different words are used in the same

10   element of the claim, they mean different things.

11   They -- they do mean different things.  The case base is

12   talking about applying past cases.  That's what it means

13   in the art.  That's the way people understood it.

14   That's the way it's in Allen.  That's the way it's

15   described in the spec.

16             Rule base is where you come up with your

17   anticipation, and those are called the rules.  And then

18   as you -- as you pop -- as you go along, you could --

19   you could populate with past cases as you go along and

20   build a -- a larger case base engine.  But it doesn't

21   mean that a case base engine should be defined to

22   include a rule base engine.  You've got two different

23   phrases in the same element of the claims, and they have

24   to mean different things.

25             But in any event, on Slide 37, we pull out

1   an example from Column 6.  The rule base engine is --

2   the whole purpose is to employ rules for anticipated

3   cases.

4            Next slide.

5            Whereas in contrast, the case base knowledge

6   engine is created -- is to create a model of received

7   electronic messages, and it's supposed to catch things

8   that the rule base engine won't catch.  They're supposed

9   to compliment each other.  You have one where you

10  anticipate stuff, and you have one that shows what the

11  past history is.

12           So we would submit that preventing

13  hypothetical or anticipated cases would be antithetical

14  to the entire purpose of a case base knowledge engine

15  and what distinguishes it from a rule base knowledge

16  engine.

17           Let's go back to Slide 35, if I may.

18           One thing, I skipped ahead to the Allen

19  reference, but just for completeness, Your Honor, if you

20  do look at the specification and when it's talking about

21  case base, it's clearly talking about cases from past

22  problems.  So at Column 2, Lines 41 through 51, the

23  specification makes clear that, quote, the case base is

24  stored in the form of case attributes representing past

25  problems, close quote.

1           And then down at Column 7, Lines 40 through

2    47, Your Honor, it -- again, it says that the stored

3    case models are made from previously received messages,

4    Your Honor.  It says, quote, these stored case models

5    are created from previously received e-mail messages and

6    associated responses.

7           So the specification, as well as the

8    reference to Allen, we would submit -- and the

9    prosecution history reference we looked at, Your Honor,

10   would support the construction that the defendants are

11   proffering.

12          The -- the second dispute, Your Honor --

13   this is Slide 39 if I may -- as I mentioned, was between

14   whether you're comparing the message to the case base or

15   you're comparing features or attributes to the case

16   base, Your Honor.

17          And really briefly on that, we believe that

18   the patent requires that what's being compared here is

19   features or attributes.  The specification, we believe

20   uses feature and attribute interchangeably.  We've just

21   cited to one place here where it says feature, i.e.,

22   attribute as support for that, Your Honor.

23          Next slide, Slide 40.

24          Here, we've brought up a quote from Column

25   6, Lines 59 through 61, Your Honor, where we believe it

1    shows that the specification requires that flag

2    attributes are being compared to the stored set of

3    exemplar cases.  It says, quote, thus, when a search of

4    the base case is required, the flagged attributes of the

5    case model are used to search the stored case models of

6    the case base.

7              This is -- you know, there's -- this --

8    there's a sole embodiment here, and that -- and that

9    embodiment -- this is the only way it's disclosed that

10   it's done.  So we believe this is -- that we need to be

11   careful not to permit it to be construed more broadly.

12             THE COURT:  Well, would a broader

13   construction exclude the preferred embodiment?

14             MR. VERHOEVEN:  Well, their construction --

15   the broader construction might not.  Their construction

16   would because their construction says expressly that

17   what you're doing is you're comparing the message to the

18   case base, and that would exclude what this is doing

19   because you're not -- in this situation you're not

20   comparing the message.

21             The message is -- certain information from

22   the message is extracted, and it's like, for example, I

23   think it's Table 2, if you look -- and you'll see

24   there's a title, there's a subject, there's this, and

25   then there's -- then there are these attributes which

1    are also extracted.  And so it's not the message that

2    gets compared to the case base.  It's the attributes.

3    And so, yes, their proposed construction -- and maybe I

4    was not speaking carefully enough when I said a broader

5    construction --

6              THE COURT:  Well, that was my -- that was

7    what prompted my question.  I don't know if --

8              MR. VERHOEVEN:  Yeah, I need to be more

9    careful.

10             A broader construction -- you could come up

11   with a broader construction that would -- that would

12   encompass it, but it's their construction that would

13   exclude it, and that's one of the reasons why we believe

14   that although the constructions are sim -- similar, that

15   ours is preferable.

16             So unless Your Honor has any further

17   questions on case base, I'm going to move on.

18             THE COURT:  I don't.

19             MR. VERHOEVEN:  Okay.  My next item was rule

20   base, but I think we've already put in the record our

21   agreement on that, so I'll move on to the next one after

22   that, Your Honor, which is predetermined response.  This

23   is Slide 46.

24             So before I go into my slides on this, based

25   on my notes and Your Honor's questions to counsel for

1  plaintiff, I thought I heard the counsel for the

2  plaintiff say that predetermined response, quote, has --

3  has to be -- he said has to be -- has to be modified in

4  response to the message.

5          Well, that's the dispute.  I mean, the

6  timing dispute here is we're concerned that this

7  additional sentence they've added would permit them to

8  say this predetermined response element is met because

9  something was done outside the context of receiving,

10 interpreting, and responding to the message.

11         THE COURT:  Well, he said that it had to

12 occur between the time that the message is interpreted

13 and the time that the response is delivered back to the

14 source, as I understood his argument.

15         MR. VERHOEVEN:  That's -- well, that's what

16 I heard him say in response to your questions.

17         THE COURT:  Right.

18         MR. VERHOEVEN:  Yes, Your Honor.

19         THE COURT:  And why --

20         MR. VERHOEVEN:  But that's not what that --

21 this language says is, I guess, my -- one of our

22 problems.

23         THE COURT:  Okay.

24         MR. VERHOEVEN:  So if -- one of our concerns

25 that we've expressed in our briefs is -- you know, if

1   you did -- I drew a diagram as you were talking.  You

2   know, if it's before the message is even sent, you

3   shouldn't be able to modify it or alter it.

4              THE COURT:  The message?  Which message?

5              MR. VERHOEVEN:  The -- the source sending

6   the message, right?  So you've got Claim 26 that talks

7   about receiving, interpreting, and responding.  Let's

8   just use that as our benchmark.  If it's before the

9   system receives --

10             THE COURT:  I agree.

11             MR. VERHOEVEN:  -- there's no modifying.

12             THE COURT:  I agree, and I think he agrees.

13             MR. VERHOEVEN:  Okay.  So we need to come to

14  a -- a construction that -- that clearly shows that.  We

15  think that -- we thought that the construction we

16  proposed accomplishes that.

17             THE COURT:  Well, but in your brief, though,

18  you said that it couldn't be responded -- or it could

19  not be modified until after the predetermined response

20  was received from the database.  And that was what

21  prompted my question to him was that what if you have

22  two portions of a database and you've pulled, for

23  instance, the addressee's field and you've merged it

24  with other data to formulate a response, you have a

25  predetermined response on the one hand and then some

1   variable portions of it that you integrate, you know,

2   with response -- before it's pulled -- I don't know,

3   maybe it's pulled into a server and then sent to the

4   source.

5            MR. VERHOEVEN:  Okay.  Well, I'll -- I'll

6   probably have to confer with counsel before I can

7   respond to that, but this brings me to another point

8   that I'd like to just address briefly, if I may, which

9   is all of this stuff is you're basically talking about

10  what may or might happen in addition to simply having a

11  predetermined response.

12           In other words, if you look at Claim 26,

13  Your Honor -- next slide -- all Claim 26 describes is

14  receiving one or more predetermined responses

15  corresponding to the interpretation of the electronic

16  message from a repository for automatically delivery to

17  the source.

18           It doesn't talk about modifying the

19  responses, doesn't talk about what you do after you

20  receive them.  It's very simple language.  And if we

21  could go, for example, to two slides down -- more, more,

22  more.  Look at -- if you look at 38, Your Honor, 38

23  says, "The method of Claim 26, wherein the predetermined

24  response is altered in accordance with the

25  interpretation of electronic message before delivery of

1    the source."

2              Now, what this says to me, Your Honor, is

3    this additional sentence that the plaintiff wants to

4    add, talking about what may or may not happen to a

5    predetermined response, we agree -- everyone agrees,

6    predetermined response are prepared before the -- the

7    original message is received.  That's all that matters

8    for 26.

9              Then this additional sentence about what may

10   or may not be done to that message after it's received

11   is -- is beyond the scope of the phrase "predetermined

12   response."  They're talking about additional

13   functionality that's claimed in additional claim

14   language, like Claim 38.

15             THE COURT:  Well, but his -- I think -- his

16   point, though, is that a predetermined response that's

17   altered in accordance with the interpretation of the

18   electronic message before delivery to the source would

19   infringe the limitation of Claim 26, as well as Claim

20   38.

21             MR. VERHOEVEN:  Well, I guess my response to

22   that point, Your Honor, would be, I disagree because

23   Claim 38 has additional limitations that -- you see what

24   I'm saying, Your Honor?  What they're talking about with

25   this -- this may language is additional limitations

1    beyond 26, and it's evidenced by the fact that they

2    claim a subset of that in Dependent Claim 38.

3              That would be like arguing because Claim 26

4    is a comprising claim, you could do a bunch of other

5    things beyond these three steps with this predetermined

6    response.  And I'm just going to list every one I could

7    think of that you may be able to do because it's

8    comprising claims.  And because it's a comprising claim

9    and you may be able to do this stuff with it, therefore,

10   it should be added.

11             But that's not -- that's not what claim

12   construction is about.  Claim construction is just

13   looking at the words that are in the claim themselves

14   and asking what those -- what those -- what the

15   definition is of a predetermined response.  Not how it's

16   used after you receive it, not what happens to it,

17   whether it could be modified or not.  That's for other

18   dependent claims that had more detailed limitations of

19   what they talk exactly about, what happens with the

20   predetermined response.

21             And so it's like -- if you were to talk

22   about a car and you're claiming a car and you had a

23   comprising claim and it said a car that has a windshield

24   and four tires and two doors and it's a comprising claim

25   and you say, well, and the car may have locks, it may

```
 1   have windshield wipers, it may have all these other

 2   things, and maybe there's some dependent claims in the

 3   patent that say that --

 4               THE COURT:  That only read on a car with a

 5   lock.

 6               MR. VERHOEVEN:  I'm sorry?

 7               THE COURT:  That would only read on a car

 8   with the lock.  But what -- but the --

 9               MR. VERHOEVEN:  On the dependent claims?

10               THE COURT:  Right.  But the independent

11   claim would read on a car with or without a lock.

12               MR. VERHOEVEN:  Correct.  So -- but you

13   don't need to have the sentence that the car may have a

14   lock to determine that latter point.  That's beyond the

15   scope of the claim construction of the independent claim

16   which is simply asking the foundational question.

17               So going back to the first slide in this

18   section where we have the proposed claim constructions,

19   this is all that's required for infringement.  We don't

20   need more.  This is it.  If -- if the response is

21   prepared prior to the receipt of the electronic message,

22   we're done.  But, you know, why would they want to add

23   additional language in here --

24               THE COURT:  Well, I mean, I don't know that,

25   but, I mean, I'd be inclined to agree with you --
```

```
1              MR. VERHOEVEN:  Well, we're con -- we're
2    concerned that it has to do with the timing issue and --
3    and all that which we've already talked about in the
4    briefs, right?  When it could be -- you know, we're --
5    we're concerned they're trying to modify this to make it
6    broader than what it -- what it is and so that they
7    could argue at some point.  I don't know, Your Honor.
8    I'm just -- why do they want this sentence?  I don't
9    know.
10             But we've agreed on what a predetermined
11   response is.  And -- and this additional language is
12   starting to talk about things that may happen to it
13   beyond what's required in Claim 26.
14             And, for example, this -- if you look at
15   Claim 38.  But Claim 38, we don't -- they don't have to
16   prove we infringe Claim 38 to prove that we infringe
17   Claim 26.  I agree with you.
18             But my point is, then why is this additional
19   language necessary?  We have what we need to determine
20   whether you've received a predetermined response in
21   Element C.  That's all we need, and we don't need to go
22   on and talk about hypothetically what additional things
23   that may or may not be done with this message -- or,
24   excuse me, with this predetermined response.  That's --
25   that's the point, Your Honor.
```

```
 1              And -- and the only other point, Your Honor,

 2    is the timing point, which I think I've already argued,

 3    and you've already had some discussion with the

 4    plaintiff on that.  So that -- that in a nutshell is our

 5    view that the Court should adopt what the parties agree

 6    a predetermined response is and decline to add to the

 7    claim language the phrase the responses may be modified

 8    and are altered based on interpretation of the

 9    electronic message.

10              THE COURT:  I tell you what, let's take a

11    morning recess until 10 after the hour.  Take about 12

12    minutes.

13              COURT SECURITY OFFICER:  All rise.

14              (Recess.)

15              COURT SECURITY OFFICER:  All rise.

16              THE COURT:  Please be seated.

17              All right.  Let's continue.

18              MR. VERHOEVEN:  Thank you, Your Honor.

19              Before I go to the next term, on

20    predetermined responses, I conferred with -- in light of

21    the colloquy that -- that you had with plaintiff's

22    counsel, I conferred with our folks and we've tried to

23    make an agreement with plaintiff's counsel on a

24    compromise on that one.  And I put up the proposed

25    constructions on the screen, Your Honor.
```

```
 1              And what we -- what we proposed was in the
 2    interest of compromise -- even though we don't think the
 3    sec -- second sentence is part of the construction, just
 4    to get beyond that, we've proposed adding to that last
 5    sentence so the sentence is, "The responses may be
 6    modified and/or altered based on the interpretation of
 7    the electronic message."  We proposed adding "After the
 8    response is retrieved from the repository before the
 9    response is delivered to a source."  But the plaintiffs
10    aren't willing to do that.  But we'd be willing to do
11    that if -- if that fixes the problem because then it
12    puts boundaries on it.
13              Otherwise, Your Honor, our view is that we
14    should just cut the construction off after the first
15    sentence because that's what predetermined response --
16              THE COURT:  Why does it have to be after the
17    retrieval from the repository?
18              MR. VERHOEVEN:  Just one second.  Because --
19              THE COURT:  From the specification.
20              MR. VERHOEVEN:  Well, I -- I guess my
21    understanding of how this works is that the
22    predetermined response --
23              THE COURT:  How what works?
24              MR. VERHOEVEN:  How the patent works, how
25    the claims work.  The predetermined response is
```

```
1    retrieved, and it's not modified before that.  It's a

2    predetermined response.  It's sitting in the database.

3    You're not modifying it, so that's the whole point.

4    That's why it was prepared -- that's why it's called

5    predetermined.  It's -- it's a response prepared prior

6    to receipt of the message.

7              THE COURT:  I mean, the passage in the

8    specification doesn't require that.  It may imply that

9    in -- in the preferred embodiment, but I don't see where

10   it requires that.

11             MR. VERHOEVEN:  Well, but I don't --

12             THE COURT:  Back to my hypothetical --

13             MR. VERHOEVEN:  -- expect it re -- I'm

14   sorry, Your Honor.

15             THE COURT:  Well, I mean, back to my

16   hypothetical where you have a predetermined response

17   with some variable fields in it, you might merge one

18   portion of the database -- base into the predetermined

19   response for then delivery either out of the repository

20   or out of a server that's located slightly upstream from

21   the repository.  And if you -- if you say it can't be

22   modified until after it's retrieved from the repository,

23   then you've excluded that.

24             MR. VERHOEVEN:  Well, I -- I'm not sure what

25   we're proposing does -- does that, but I guess maybe
```

1    this just highlights the whole problem with trying to

2    add to our construction --

3                THE COURT:  Your lawyer back there looks

4    like he wants to tell me something, but if --

5                MR. VERHOEVEN:  You want to stand up?

6                MR. PERLSON:  Oh, sorry.  Sorry.

7                I -- I don't think that our construction

8    would preclude what you've just said because you've

9    actually pulled something from the repository and then

10   you've done something with it, and so I don't think that

11   there's an inconsistency with the construction we just

12   proposed in the hypothetical that you just raised.

13               THE COURT:  Okay.  And what situation are

14   you trying to exclude?

15               MR. PERLSON:  What -- I'm just trying to do

16   what's correct based on the specification.  I actually

17   don't know what they're trying to include.  I don't know

18   how the predetermined response --

19               THE COURT:  Well, my -- my hunch is it's

20   whatever you're trying to exclude, I'll just tell you

21   that.

22               MR. PERLSON:  I don't know -- I don't -- I

23   can't even think of a situation where the predetermined

24   response would be changed.  The predetermined response

25   is in the database, and it's pulled from the database

1  once you get the message.  And so it doesn't make any

2  sense that after you get the message, then something's

3  going on in the database in which the predetermined

4  response is changed and then it's retrieved.

5          It's just a -- a situation that just doesn't

6  exist.  It's not contemplated in the patent, and the

7  construction that we've proposed is entirely consistent

8  with exactly what the specification says.

9          THE COURT:  Okay.  All right.  Thank you.

10          MR. VERHOEVEN:  All right.  Without further

11  adieu, I'll move on to requiring assistance from a human

12  operator, Your Honor.  This is Slide 51.

13          So we believe that -- that the phrase here

14  is -- should be construed as requiring that a man --

15  manual reviewer review, revise, or compose the response

16  to be delivered from the source.  We don't intend by

17  that proposed construction to exclude that a human can't

18  look at a message.  But as I'll show when we look at the

19  claim language, the whole point of this phrase is

20  whether to respond, you need a human being.  That's the

21  whole point of -- of this phrase.

22          Our principal problem with the plaintiff's

23  construction, if I may just walk over here, Your Honor,

24  is although they have the word "requiring" -- requiring

25  that a manual reviewer review the electronic message,

1    but then they say or -- well, they have the word

2    "requiring," and they have the same language that we

3    have in the end, review, revise, or compose the response

4    to be delivered to the source, the requiring doesn't

5    really apply because they have disjunctive "or" in

6    there, and so they basically don't require anything.

7            The -- all that's required under their

8    construction is that a -- a manual reviewer review the

9    electronic message.  Then that would be infringed under

10   their proposed construction because they use the word

11   "or," not "and."  And so this extensively broadens the

12   meaning of this phrase beyond what was intended by the

13   patentee as -- that the response requires assistance

14   from the human operator.  So that's the gist of what I

15   think the dispute is, Your Honor.

16           If I can go to the next slide.

17           And this is -- I just covered this, Your

18   Honor, so I'm not going to repeat it.

19           Let's go to Slide 53.

20           If you look at the claim language on that

21   Slide 53 -- put up Claim 28, Your Honor.  And it says a

22   method of Claim 26, further comprising the steps of b1,

23   classifying the electronic message as at least one of

24   (i), being able to be responded to automatically, and

25   (ii), requiring assistance from a human operator.  But

1    it's clearly talking about assistance to provide the

2    response.  That's where this -- that's the context of

3    where this phrase comes in.  And that's what we need to

4    get at as the requirement of this phrase.  And by

5    inserting a disjunctive "or" next to it and saying that

6    this element could be satisfied merely by reviewing a

7    message and nothing else, we believe that the plaintiff

8    is greatly expanding this.

9              Go to Slide 54.

10              If you look at the intrinsic evidence to

11   support this, I think the claim language itself shows --

12   the slide we just looked at -- shows that this phrase

13   is -- occurs in the context of deciding whether a

14   human's required for the response, so that supports our

15   construction.

16              Now, if you go to the spec, Your Honor.

17   This is column line -- 9, Lines 18 through 23, and we

18   put in Figure 2B and highlighted up the flow chart

19   there, Figure 2B.  The specification clearly shows that

20   what's going on is the human involvement is in

21   connection with deciding how to respond.

22              So it says at Step 114, "The e-mail message

23   11 is classified into at least one of an automatic step,

24   a referral step, and/or a detected classification.  As

25   discussed above, the classification is achieved either

1    through accessing only the rule base or accessing both

2    the rule base 35 and the case base 34."  So you can see

3    there's a classification step that we highlighted there,

4    Your Honor.

5              And the next -- next slide, 55, shows an

6    excerpt from Column 10, Lines 30 through 38, and, again,

7    Figure 2B.  And this is the next -- further down after

8    the classification has occurred, there's the transfer to

9    manual review inbox step.  And the spec says, "After the

10   referral type e-mail message 11 has been sub-categorized

11   and prioritized, the automatic message reader routes the

12   e-mail message to the manual review inbox, Step 118" --

13   and you can see that, it's right there -- "for

14   subsequent retrieval by human operator.  If possible,

15   one or more predetermined responses for proposed release

16   and delivery to the source are retrieved from the

17   repository of the automatic message reader and routed to

18   the manual review inbox along with the e-mail message."

19             And then the next slide talks about the next

20   step in the flow chart in 2B, perform manual review,

21   Step 120.  And we excerpted out the associated text from

22   the specification, Column 10, Lines 39 through 47.  And

23   it says, "At Step 120, the human operator first reviews

24   and processes the highest priority e-mail messages

25   followed by the lower prioritized e-mail messages.  When

1   the human operator deems that a predetermined response

2   is appropriate and may be released to the customer, the

3   response is routed to the outbox, Step 122, for delivery

4   to the main server.  The response is then transmitted

5   over the data communications channel to the source."

6           So the specification, Your Honor, confirms

7   what the claims pretty clearly say already is that the

8   human -- the requiring the human intervention is in

9   connection with preparing a response.

10          Go to the next slide briefly, Your Honor.

11          THE COURT:  Does the predetermined response

12  get routed in that flow chart through the manual review

13  box, or does it just go to the outbox at Step 122?

14          MR. VERHOEVEN:  I'm not sure I know the

15  answer off the top of my head, Your Honor.

16          Do you know, David?

17          MR. PERLSON:  No.

18          MR. VERHOEVEN:  At our next break, I can try

19  to figure that out.

20          THE COURT:  Well, I mean, predetermined

21  response is -- looks like on the automatic line of the

22  flow chart or up there at Step 116A.

23          MR. VERHOEVEN:  It does appear to -- to say

24  that, Your Honor.  I just want to be careful I'm being

25  accurate.

```
1               THE COURT:  Okay.

2               MR. VERHOEVEN:  It does look like that's

3    what it's doing.  I just would like to confirm it on a

4    break.

5               THE COURT:  Okay.

6               MR. VERHOEVEN:  But I -- I think that's what

7    it's doing.

8               THE COURT:  Okay.

9               MR. VERHOEVEN:  And you're referring, Your

10   Honor, to the left-hand side of Figure 2B?

11              THE COURT:  Yes.

12              MR. VERHOEVEN:  So the message is classified

13   as automatic, and then it doesn't have to go through

14   these steps.  It just -- you just retrieve the response

15   and go transfer to the -- to the --

16              THE COURT:  Right.  And the passage that you

17   just read said, "When the human operator 40 deems that a

18   predetermined response is appropriate and may be

19   released to the customer 50, the response is routed to

20   the outbox 26, Step 122."  And it doesn't say that

21   it's routed to Step 120 for manual review of the

22   response.

23              MR. VERHOEVEN:  That's correct, Your Honor.

24              THE COURT:  Okay.  And so I guess in -- your

25   construction, as I understand it, would not capture that
```

1    situation, or am I missing something?

2             MR. VERHOEVEN:  Our construction is that --

3    is that requiring assistance from the human operator

4    means requiring that a manual reviewer review, revise,

5    or compose the response to be delivered to the source.

6             THE COURT:  Yes.

7             MR. VERHOEVEN:  I guess I don't understand

8    why that wouldn't encompass that.

9             THE COURT:  Well, I guess because the manual

10   review is at Step 120 and the predetermined response, if

11   it's transmitted to 122, seems to bypass the manual

12   review block.

13            MR. VERHOEVEN:  Well, that's because -- if

14   you go back to claim -- let's go to claim -- let's go to

15   Slide 53, please, and maybe I'm misunderstanding this,

16   Your Honor.  I apologize if I am.

17            So the way I'm reading Claim 28 is that the

18   step in class -- that you got the message, okay, you

19   already have it.  The system already has it.  And you're

20   classifying it as the least one of being able to be

21   responded to automatically or -- and then the "or" is

22   the phrase we're construing -- requiring assistance of

23   the human operator.

24            Now, if we go to the chart again -- or the

25   figure again, please, Todd.

1            So this is where -- this is where the

2    classification occurs up here, and -- and it was little

3    i, it would be classified as --

4            THE COURT:  Right.

5            MR. VERHOEVEN:  -- being able to be

6    retrieved automatically and not need the human inter --

7    intervention.  And if it's little b, it's classified as

8    need -- needing this human intervention and going down

9    this line.

10            THE COURT:  That's right.

11            MR. VERHOEVEN:  And so we're only -- I guess

12    the way I'm reading it, we're only talking about

13    construing this line here.

14            THE COURT:  I -- I understand, and -- and --

15            MR. VERHOEVEN:  Okay.

16            THE COURT:  -- and the spec -- it's not

17    clear to me from the specification whether review of a

18    predetermined response is necessary prior to it being

19    forwarded to the local server outbox.

20            MR. VERHOEVEN:  By -- review by a human

21    being?

22            THE COURT:  Yes.

23            MR. VERHOEVEN:  Give me one second.  I think

24    I know the answer, but I just want to check.

25            The answer is, no, it doesn't need to be --

1    I mean, this whole -- the whole idea here is this would

2    be done by the system, and the system would say, okay,

3    we're going to pop it out to a human -- at least that's

4    the way I read it, Your Honor.  And so if it goes down

5    this path, it wouldn't be.

6            I -- I don't -- I'm having trouble

7    understanding how that impacts our proposed construction

8    because all -- I think all we're talking about and we

9    believe is that the -- the intervention by the human is

10   after you did your classification and you're down here,

11   Your Honor.

12           THE COURT:  I'm with you.

13           MR. VERHOEVEN:  Okay.

14           THE COURT:  I understand that's your

15   position.  I just -- maybe I'm just missing the -- the

16   dispute here, but what I understood the plaintiff was

17   arguing was that requiring human assistance, that

18   language would be satisfied if a human being simply

19   reviewed the incoming message and then for -- if

20   whatever reason the system couldn't analyze it and

21   formulate a response, a human being has looked at it and

22   has said, ah, this is what is being requested or asked

23   of us.  It's Response No. 3.  Push a button.  A response

24   is then pulled from the predetermined response bin and

25   forwarded to the outbox of the server, and it never goes

1  to the human being for review prior to it being

2  delivered to the source -- back to the source.

3          Your construction requires human -- a human

4  being to at least review the response.

5          MR. VERHOEVEN:  Exactly, Your Honor.  I

6  mean, we believe that the human intervention is needed

7  to formulate the response, and that's the key to what

8  the claim is talking about and what you're seeing in the

9  middle column there.

10          We're not saying the human being can't look

11  at the message as part of formulating the response, but

12  that's not the key to this -- this phrase.  And -- and

13  the dispute we have is under the plaintiff's

14  construction, I could just -- I could just be a human

15  being and look at -- look at a message and this is met,

16  even though I don't do anything about it.  I could just

17  look at it.  I could just review it.

18          And -- and we think that that's

19  inappropriate because the gist of this is that you are

20  composing a response.  That's the whole point of why you

21  decide you need to go to the human being in the first

22  place is because the -- the system can't automatically

23  compose the response.

24          And under plaintiff's construction, this

25  element would be met -- even if the human being didn't

1   do a single thing to compose this response or do

2   anything in connection with the response, it would be

3   met simply if the human being reviewed an electronic

4   message, which we think is broader than what the claim

5   is talking about.

6               If I could have one minute, Your Honor?  I'm

7   going to make sure that I'm not misunderstanding some of

8   your questions.

9               Your Honor, I'm going to move on to the next

10  term unless you have further questions.

11              THE COURT:  I don't have any further

12  questions.

13              MR. VERHOEVEN:  Thank you, Your Honor.

14              So the next term is Slide 59, Your Honor,

15  stored case model.

16              And if we go to Slide 60.

17              I believe the parties are in agreement that

18  the stored case model contains stored text and

19  attributes, and the dispute is whether the stored text

20  and attributes are derived from a previously received

21  electronic message.

22              The defendants' position is the stored case

23  model is derived from a previously received electronic

24  message, and the plaintiff's position is that there's no

25  requirement that the stored case model be derived from a

1    previously received electronic message.

2              THE COURT:  Can you tell me --

3              MR. VERHOEVEN:  Yes, Your Honor.

4              THE COURT:  Can you go back to where it was

5    used in the claim language or put up how it's used --

6              MR. VERHOEVEN:  Well, if you go to Claim 30,

7    Your Honor --

8              THE COURT:  Right.

9              MR. VERHOEVEN:  I don't have a slide for

10   Claim 30, I apologize.

11             THE COURT:  I don't have a question.  I just

12   wanted to follow your argument in context.

13             MR. VERHOEVEN:  Yes.  So Claim 30 -- I

14   believe that this element that's found in Claims 30, 31,

15   and 33, Your Honor, so if you look at Claim 30 -- and I

16   apologize for not having a slide on this.  Element b1,

17   for example, producing a case model of the electronic

18   message is one place where it appears.

19             So the case model, by the way, Your Honor,

20   that's being referred to in that Claim b1, the parties

21   actually have stipulated that that means -- and this is

22   Slide 61, please, Todd -- that that -- it means, quote,

23   case model of the electronic message.  So that's a

24   stipulated construction.

25             In Claim 26, which is -- which -- which

1    Claim 30 depends, Claim 26 makes clear that the

2    electronic message is something that's received from the

3    source.  So we would -- the way we read this logically,

4    Your Honor, is that the stored case model also comes

5    from a message received from a source, and it's based on

6    previously received electronic messages, as did -- as we

7    think our construction requires.

8              Go to Slide 62, please.

9              We've called out from the specification in

10   support of that claim contextual analysis, Column 7,

11   Lines 44 through 45, Your Honor, and we've already

12   looked at this in connection with another term.  But it

13   says, quote, these stored case models are created from

14   previously received e-mail messages and associated

15   responses.

16             So the specification corroborates that

17   with -- vis-a-vis the dispute between the parties as to

18   where the stored case model is derived from, that it's

19   derived from previous e-mail messages.

20             Now, Slide 60 -- I don't have a lot of

21   slides on this in the interest of time, Your Honor, but

22   the last slide on this -- the -- the plaintiff has

23   asserted in their brief that it is well within the scope

24   of the teachings of the inventors that a case model can

25   be created using anticipated hypothetical messages and

1    associated responses.  But they say that without any

2    citation, Your Honor, and the specification says

3    nothing -- nothing, Your Honor, about any anticipated or

4    hypotheticals in connection with the creation of the

5    stored case model.

6              And Bright Response, in their briefs, don't

7    supply -- cite to any support for this.  And if you look

8    at the claims -- the context of the claims themselves,

9    as well as the specification, it's very clear that this

10   case model -- the stored case model is derived from

11   previously received electronic messages and that should

12   be a requirement of the claim.

13             And I think that's all -- the only dispute

14   of the parties on that.

15             Really briefly, Your Honor, so I don't use

16   up my co-counsel's time on some of these, I'm going to

17   go on to the next term, match weight and mismatch

18   weight, Your Honor.  This is Slide 64.

19             And I -- I prepared a slide that I hope

20   crystallizes the parties' dispute on this one, as well,

21   Slide 65.

22             So we've basically got two phrases on this

23   one, Your Honor.  A predetermined match weight is the

24   first phrase, and a predetermined mismatch weight is the

25   second phrase.

1            And the defendants' position is that when --

2    I'll get to the claim language to look at this, but just

3    so you know the positions.  The defendants' position is

4    that when a score is, quote, increased by a

5    predetermined mismatch weight -- that's what the claim

6    says -- that that match weight is added to the score.

7            And the plaintiff's construction is that the

8    phrase could be -- should be construed that the match

9    weight, quote, controls the degree to which the score is

10   increased.

11           And then the inverse on the predetermined

12   mismatch weight, the defendants contend that when a

13   score -- score is, quote, decreased by a predetermined

14   mismatch weight, that that means that the mismatch

15   weight is subtracted from the score.  And the

16   plaintiff's contention is what that what means is that

17   the mismatch weight controls the degree to which the

18   score is decreased.  We believe that our constructions

19   are most appropriate.

20           Let's look at the actual claim language

21   first.  If you look at the claim language, Your Honor,

22   what's it talking about?  Well, Claim 31 here says,

23   "Method of Claim 30 wherein when at least one of the

24   attributes and the text match the stored case model, the

25   score is increased by a predetermined match weight."

1            So what does a person of ordinary skill

2    understand that to mean?  Well, you got a score.  What's

3    the score?  The score is a number.  You've got something

4    called a predetermined match weight.  What's that?

5    What's a predetermined match weight?  It's a number.

6    What are you doing to the score?  You're increasing the

7    number of the score by the number of the predetermined

8    mismatch weight.

9            Let's go to the next slide.

10           So taking that plain language and just basic

11   understanding of a person of skill in the art -- say

12   your score is 4 and say your predetermined match weight

13   is 6, what are you doing?  You're saying the score 4 is

14   increased by the predetermined match weight 6.

15           Well, I would submit, Your Honor, that is

16   describing what we learned in grade school as addition.

17   It's very simple.  It's not some amorphous controlling

18   the degree of increase.  It's simply saying you've got

19   a predetermined number called a score.  You've got a

20   predetermined number which is a match weight, and you

21   increase the score by the match weight.  It's that

22   simple.

23           Then if you go to the next slide.  If you

24   look at the -- the other phrase, it's just the mirror

25   image, so it says a method of Claim 30 -- I'm down at

1    the bottom, Your Honor -- a method of Claim 30 wherein

2    when at least one of the attributes and the text does

3    not match -- that's your mismatch -- the stored case

4    model, the score is decreased by a predetermined

5    mismatch weight.

6            Well, again, a score is a number.  A

7    predetermined mismatch weight is a number.  It's a

8    predetermined number.  And if there's a match -- if

9    there's a mismatch, it's saying you decrease that score

10   number by the predetermined mismatch number.

11           So, for example, if your score was 10 and

12   the mismatch number -- predetermined mismatch number was

13   2, what is it saying?  Take 10 minus 2.  A person of

14   ordinary skill would understand what you're describing

15   here is subtraction.  It's very simple.

16           It's certainly not controlling the degree,

17   whatever that means.  It should be construed in the

18   simple way a jury would understand, a simple way that a

19   person of ordinary skill would understand.

20           If we go to Slide 69.

21           If you go beyond the claims and look at the

22   specification, they basically repeat the claim language,

23   Your Honor.  So the analysis here, again, would just be

24   the same analysis I think that a person of ordinary

25   skill would enter into with the claim language.  It's

1    the raw score -- that's a number -- may increase by the

2    match weight.

3              And I got to move on, Your Honor, so I'm

4    going to keep -- keep going.

5              Let's go to Slide 71.

6              So to conclude, we believe that our

7    proposed construction, Your Honor, is describing in

8    simple terms exactly what the claim language is talking

9    about.  When you go to controlling the degree and

10   language like that, we don't -- you know, we get into

11   this ambiguity again.  What does that mean?

12             That's what Bright Response's proposed

13   construction is.  It's not something that's -- that's

14   definable and easy to determine where the boundaries

15   are.  Instead, it's an amorphous, ambiguous phrase,

16   controlling the degree of increase or decrease.  What

17   does that mean?

18             The word "degree," Your Honor, is not found

19   anywhere in the '947 patent.  The word "control" is only

20   used once in the '947 patent to refer to the -- to the

21   phrase, quote, software control program, having nothing

22   to do with this phrase.

23             So we would submit that -- that if you're

24   looking at the two constructions, that ours more

25   accurately and precisely matches what a person of

1  ordinary skill would understand the plain meaning of the

2  terms are.

3          And unless Your Honor has any further

4  questions, for the remainder of our presentation, I'm

5  going to cede my time to counsel for Yahoo.

6          THE COURT:  Mr. Rooklidge, he's left you 13

7  minutes.

8          MR. ROOKLIDGE:  Thank you, Your Honor.

9          Let's go ahead and move to the next slide.

10          The issue here is whether the language of

11  Claim 26 requires that its steps be performed in a

12  recited order.

13          Next slide, please.

14          Counsel suggested that there was confusion

15  over what the dispute is here.  I think that if we take

16  a look at Page 14 of the amended joint claim

17  construction chart, we see there is no confusion as to

18  which claim is being addressed here.  It's Claim 26.

19  That's the only claim we're trying to address, because

20  if you start talking about the order in the dependent

21  claims, it gets all bollixed up because they've used --

22  they've used the same letter from multiple terms.

23          So we -- we feel the Court doesn't need to

24  get into that issue.  At this point, all we're talking

25  about here is Claim 26.

1            Next slide, please.

2            THE COURT:  I think he's already said that

3    he didn't contest your construction on that.

4            MR. ROOKLIDGE:  Absolutely, and he also

5    suggested --

6            THE COURT:  Let's move on to the next one

7    then.

8            MR. ROOKLIDGE:  Okay.  Very good.

9            Let's move on to the next issue, and that's

10   the invalidity of Claims 28, 30, 31, and 33.  Counsel

11   introduced this one by saying that our argument was so

12   confusing, he thought it was an April Fool's joke.  And

13   they had said in their reply brief that they described

14   our argument as defendants' attempt to sow confusion.

15           So let's take a look at where that confusion

16   comes from.

17           Next slide, please.

18           The position is that these claims are

19   invalid for indefiniteness, and that's the dispute.

20           Next slide.

21           Claim 28 adds a second step (c).  So we have

22   a step (c) in Claim 26.  Claim 28 adds step (c), as

23   well.  So the question is, is step (c) intended to

24   replace the original step (c), or is there a

25   typographical error and that is supposed to be c1 or d

88

1    or something else?

2              So let's take a look at those two

3    alternatives.  The first one would be that second Step

4    (c), which is a second retrieving step -- let's go to

5    the next slide.

6              We say, well, could it be replacing the

7    first Step (c)?  Well, that would be inconsistent with

8    the language, as they point out, "further comprising."

9    It would also violate the statute, Section 112,

10   Paragraph 4, which requires that claim in dependent form

11   to include all the limitations of the preceding

12   independent claim.

13             So let's go on to the next slide.

14             So if it doesn't replace, then it must add

15   to that step.  So -- but that doesn't -- although that

16   would comport with the further comprising preamble and

17   it would avoid invalidity under Section 112, Paragraph

18   4, if you add this Section c, then all of a sudden you

19   get two retrieving steps.

20             And the problem is the specification doesn't

21   support two retrieving steps.  It only shows one, Figure

22   2B, that's Step 116a.  So we can't have on the one hand

23   replacing, and we can't have on the other hand

24   augmenting.  So what in the world does plaintiff say?

25             Let's go to the next step.

```
1              What they say is, well -- and this is in
2    their reply brief -- the phrase "when the classification
3    step indicates that the electronic message can be
4    responded to automatically is a further limitation of
5    the Step (c) that is incorporated from Claim 26."  But
6    this interpretation would require the Court to ignore
7    the first 23 words of the Step (c) that's introduced by
8    Claim 28.
9              Next slide.
10             We know the Court can --
11             THE COURT:  Are they the same 23 words that
12   were in Step (c) of the --
13             MR. ROOKLIDGE:  Absolutely.
14             THE COURT:  -- earlier claim?
15             MR. ROOKLIDGE:  Absolutely.  But the Court
16   can't ignore those first 23 words because all claim
17   terms are presumed to have meaning in a claim, and the
18   Court can't read those words out of a claim.  The law is
19   crystal clear on that.
20             So next slide, please.
21             The question then is what in the world do
22   they do?  If they can't -- if they can't replace and
23   they can't augment, what are they doing?  They're asking
24   this Court to rewrite those claims, and that is
25   confirmed not only in their -- in their reply's
```

1    implication, but also by the amendment that they filed

2    just a few days ago.  What have they done to Claim 28 in

3    that amendment?

4              Next slide, please.

5              Let's take a look at it, and you can see --

6    this is in your Exhibit B.  The Claim 28 amendment

7    appears at Page 3 of that amendment.

8              What they've done, in the first line of that

9    amendment, they've changed the word "step" to "steps."

10   At the end of Step (b1), they've added the word "and."

11   At the beginning of Step (c) they've added the words

12   "wherein," and then they've added the words "step

13   retrieves."

14             Next slide, please.

15             The problem is that the Court can't rewrite

16   the claims for them.  The Court's power is to correct

17   only harmless errors that are not subject to a

18   reasonable debate, errors that are evident on the face

19   of the patent.  Guessing at what the patentee intended

20   is beyond this Court's authority.

21             The Court should leave the correction to the

22   PTO, and as the Federal Circuit explained in Southwest

23   Software, if they're going to go to the PTO and correct

24   their patent, they need to do it before they bring the

25   lawsuit.

1          Now, they did in this case file a

2   Certificate of Correction that corrected the

3   inventorship, but they didn't choose to come in and fix

4   those claims.  They didn't go back to the PTO and seek

5   reissue and say, "Our patent claims are wholly or partly

6   inoperative because we've screwed up this claim

7   language.  Fix it for us."  No.

8          What they did was they've sailed in here

9   with the claims all screwed up, and they've asked this

10  Court to rewrite them.

11          Next slide.

12          The Court cannot guess that the plaintiff

13  intended to change the word "steps" to "step," add the

14  word "and" at the end of Step (b), add "wherein the" at

15  the beginning of Step (c), and then stick step retrieves

16  after the words "step retrieving."  Those are big

17  substantive changes.  They're changing the number of

18  steps, and they're taking a substantive claim step and

19  they're changing it to a wherein clause.  These are not

20  corrections of harmless errors that were evident on the

21  face of the patent.

22          Next slide, please.

23          If plaintiff wanted to rewrite Claim 28, it

24  should have done so in the PTO with a Certificate of

25  Correction or with a reissue, just like it's trying to

1   do now in the reexamination.  As it's written, that's

2   how the Court has to deal with this claim, as it's

3   written.  By adding that additional Step (c), they meant

4   to either replace or to augment.  Neither of those work

5   under the law.  As a result, this claim is insolubly

6   ambiguous, and, therefore, it's invalid under 35 U.S.C.

7   Section 112, Paragraph 2.

8              The asserted claims that depend from Claim

9   28, Claims 30, 31, and 33, are invalid for the same

10  reason.  So that's -- that's our argument on that point.

11             I just had wanted to return back to the

12  human intervention point that you were discussing with

13  counsel earlier.  Human intervention requires that the

14  human make a decision after reviewing the message.

15  Human intervention is more than just reviewing the

16  message.  It is either pushing the button to go ahead

17  and send the message on or it's formulating an answer.

18             So that's all I have, unless the Court has

19  any questions.

20             THE COURT:  I don't have any.

21             MR. ROOKLIDGE:  Thank you.

22             THE COURT:  Thank you, Mr. Rooklidge.

23             Rebuttal?

24             MR. FENSTER:  And, Your Honor, can you just

25  clarify for me what my time constraints are?

1          THE COURT:  Well, you used 40 minutes

2   before, so you've got 40 minutes left.

3          MR. FENSTER:  Perfect.

4          Your Honor, let me start off with

5   non-interactive electronic message and clar -- try to

6   clarify some of what the defendants, I think, were

7   trying to say.

8          Your Honor, here in Slide 12 under Tab 1

9   of -- of plaintiff's notebook, this is a diagram showing

10  two diagrams, the first on the left which is a diagram

11  from Allen showing the Allen system, and the lower right

12  is a picture from the claim system.  And if I may

13  approach.

14         The Allen system is a user help desk.  The

15  customer, you or me, sitting at home calls with a

16  problem to interact with the customer representative.

17  The customer representative has a terminal in the Allen

18  system where they deal directly with the help system.

19  The interactive communication that's happening -- the

20  interaction that's happening is between the rep and the

21  terminal with that system.  That's what's interactive.

22  That's what was described as interactive in the

23  specification and the file history, and that is what was

24  distinguished.

25         Why was it distinguished?  Because the

1   system that is claimed by the '947 patent is completely

2   different.  In the system that's claimed, we have a

3   knowledge engine system that's down at the bottom.  And

4   these users are out in the world interacting with that

5   system over the Internet or some other Internet --

6   Inter -- some other network.

7            When they send a message, an e-mail or other

8   message to the system, there is no further interaction.

9   The system gets that message and has to do something

10  with it.  They have to classify it, interpret it, and

11  figure out what to do so they can provide an appropriate

12  response.

13           So when Mr. Verhoeven put up these examples,

14  he essen -- he said that -- this is at No. 25 of

15  defendants' slides.  He says, "Well, we've got this

16  e-mail, and it says, 'I'm having trouble.  Please call

17  me.'  Is that interactive?"  Well, of course, it's not

18  interactive.

19           This is a non-interactive electronic

20  message, exactly, precisely the kind that's contemplated

21  by the message.  The fact that it says, "Call me back,"

22  does it make it interactive?  Of course not.  The

23  specifica -- the specification describes that one of the

24  attributes that you can flag in interpreting such a

25  message is, do we have to call this person back?

1          The classification happens after the message

2    is received with no further input from the sender, and

3    Your Honor's question to Mr. Verhoeven I think nailed it

4    precisely.

5          And so the next example that they've

6    provided, Page 26, saying, "I'm having trouble with my

7    new laptop.  Don't ask me any more questions," that,

8    too, is a non-interactive message in exactly the same

9    way.  It is a message that was sent to the system, and

10   without any further input from the user, it was

11   classified.  Is this something that I can automatically

12   respond to, and if so, I'll automatically respond.  Is

13   this something I need to flag for further review?  If

14   so, I'll flag it, et cetera.

15         And one of the attributes that would be

16   flagged for this one and not the prior one is, don't

17   call this guy back.  He doesn't need -- he doesn't want

18   to provide any more information.  That is a

19   non-interactive electronic message.  There is no

20   confusion about it.  The specification tells you exactly

21   what that means.

22         THE COURT:  What do you say to his argument

23   that at least one aspect of Allen refers to the

24   situation where the response from the input information

25   by the customer service representative doesn't need any

1   further interaction with the customer service

2   representative, at Column 9 of Allen?  And by describing

3   Allen as an interactive system, you've described that

4   situation implicitly as an interactive system?

5              MR. FENSTER:  Well, first of all, I didn't

6   find the language from Allen in Column 9 that -- that he

7   was pointing to.  What I saw in Column 9 --

8              THE COURT:  It's at Line 20.

9              MR. FENSTER:  So let's go to Slide, I think,

10  11.

11             Okay.  Your Honor, 11 -- this is Figure 6

12  from the Allen patent.  And what's happening is -- and

13  what we had shown in the previous, just to clarify, was

14  this was excerpted from the -- unless I've already

15  showed you a comparison, between the Allen system and

16  ours.

17             What this is saying is when the

18  representative gets information from the customer, that

19  may be sufficient, but the representative is still

20  interactively entering that information and answering

21  questions with the system.

22             And in Allen, there is no message at all

23  that's received because the representative is not -- the

24  message -- the representative is acting at a terminal on

25  the system.  In other -- in other words -- pardon my

1    lack of artistic -- artistic ability, but in the

2    plain -- in the claim system, a message is sent and

3    received by the knowledge engine, and without any

4    further input, it's received from a source and is

5    processed.

6            The Allen system down below, the person

7    interacting, the customer rep, which is this person

8    here, that's all happening within the knowledge engine

9    system.  There is no message that's -- there is no

10   electronic message being received at all by the Allen

11   system.

12           And so the fact that Allen can -- you know,

13   describes that it can get information and not have to

14   talk further with the customer doesn't mean it's --

15           THE COURT:  Well, the question is not

16   whether it's an electronic message, though.  It's

17   whether it's interactive or not.

18           MR. FENSTER:  Well -- well, it's actually --

19   it's both, I think.  There's -- interactive is only

20   talking about -- is only modifying electronic message.

21   In Allen, there is no electronic message at all, but the

22   non -- non-interactive part is -- there is no

23   non-interactive message that's being received by the

24   system.

25           And what the patent at least is describing

1   in distinguishing Allen is saying that the interaction

2   between the customer service rep within the system --

3   within the Allen system is an interactive one.  Mere

4   data entry is interactive, and that's all that's

5   happening in Allen is mere data entry.  And that data

6   entry -- even if you don't have to enter any more data,

7   that mere data entry is not an non-interactive

8   electronic message.

9           THE COURT:  Okay.

10          MR. FENSTER:  Just briefly, the reliance on

11  the inventors, there were questions that were asked out

12  of context many years after the invention.  It's

13  improper to rely on any extrinsic evidence, including

14  inventor testimony, unless you cannot find the answer

15  from the intrinsic evidence.  Here, the intrinsic

16  evidence is clear.

17          Electronic message, there's no dispute as to

18  what that is.  It's described in the specification, and

19  what it means to be non-interactive is all but defined

20  in the two portions of the specification that I referred

21  Your Honor to earlier.  And there's no reason to resort

22  to anything beyond the intrinsic record.

23          Your Honor, I -- Mr. Verhoeven argued that

24  Claim 87 had been amended in the prosecution.  As Your

25  Honor is aware and as defendants have constantly

1   reminded us with untold letters, we are not allowed to

2   participate in the prosecution of the reexam, have not

3   done so.  This is something that I had not seen until

4   today, this -- this amendment.

5          The fact that there's an amendment

6   clarifying that language doesn't mean that -- I don't

7   see it as relevant to the construction of

8   non-interactive electronic message.

9          If you have any questions about it, I'll be

10  happy to try to answer them.

11         THE COURT:  I don't.

12         You -- you need to answer his argument that

13  the -- the set of hypotheticals is not a rule based --

14         MR. FENSTER:  Yes.

15         THE COURT:  -- engine.

16         MR. FENSTER:  Yes.  So moving, then, to the

17  case base knowledge engine, which is where he makes the

18  argument that hypotheticals are rules.  To me, Your

19  Honor, as -- as I was listening to the argument, it

20  seems literally to be a logically flawed, fallacious

21  argument, which is because you can have new rules, he,

22  therefore, concludes that, therefore, you cannot have

23  new cases.  And that seemed to be the logic of the

24  argument, and it's logically flawed.

25         You can, of course, invent new rules and

1   have those be rules.  The question -- and that's

2   irrelevant to the question of can I provide stored

3   exemp -- exemplar cases, as well, when I come up with a

4   new product, when I anticipate new products to seed the

5   case model, and the answer is of course you can.

6           THE COURT:  Well, I don't think he disputes

7   that you can, but I think the -- the issue is whether an

8   assumed set of conditions falls into the rule-based

9   engine bucket or whether it falls into the

10  knowledge-based.

11          MR. FENSTER:  Well, it depends how it's

12  constructed.

13          THE COURT:  Or case base.

14          MR. FENSTER:  It depends how it's

15  constructed.  A rule base does one set of things, and a

16  case base does a different set of things.  A rule base

17  tests only for the presence of a condition, and if that

18  condition is met, it executes a rule.

19          So, for example, there can be an attribute

20  setting rule, and in the example that Mr. Verhoeven

21  gave, one of the attributes would be call back required.

22  And if it -- if the message requires call back, flag

23  yes.  Then it would route it for call back.  That is a

24  rule.

25          Case base says we're going to create a case

1   model that is composed of text and attributes of a case.

2   And then I'm going to compare the text and attributes of

3   the presented case model to those in my case base to see

4   if I've got a match.  And when I come up with a new

5   product, this product has these -- these attributes and

6   will have this text, and I create a case model so that

7   when my customer -- when my customers call into my

8   Customer Service Department with a question regarding a

9   new message, they get some -- some direction, as opposed

10   to not having any direction because there is no past

11   e-mail asking about a new product.

12           There is -- there's nothing in the patent

13   that says you can't create a new case model and that a

14   new case model is necessarily a rule.  Whether it's a

15   rule or a case depends on how it's formulated and how

16   it's used.  If it's formulated as a rule, then it can be

17   used as part of a rule-based -- in the rule-based

18   engine.  If it's in the form of a stored case model that

19   looks like all the other case models that has attributes

20   and text that can be compared to attributes and text

21   from the presented, then it's part of your case model.

22           So if I have a new product, I could create

23   both, new rules and new -- I could create a new rule.

24   Does this relate to X?  Then use this one.  X new

25   product, then use this one.  If the e-mail comes in and

1    it's got a bunch of text and I have -- I flag the -- all

2    the attributes and one of the attributes is relates to

3    this product, then the case model will come up with an

4    e-mail response from the stored case model that matches.

5              Mr. Verhoeven pointed to a couple of

6    examples in the specification where it talks about past

7    cases.  The patent does talk about case bases -- the

8    case base engine comparing to exemplar cases.  Exemplar

9    cases is the language that's both throughout the

10   specification and in both sides' proposed constructions.

11   There are two places where the patent talks about past

12   cases, the case model including models based on past

13   cases.  That's absolutely consistent, but not exclusive

14   with anticipated cases or seed cases.

15             Okay.  I think, Your Honor, that we are up

16   to predetermined response.

17             Slide 28, please.

18             Your Honor understood my argument and Bright

19   Response's position exactly.  Why do we want this here?

20   So that defendants can't argue that a predetermined

21   response that gets modified is not a predetermined

22   response because it was modified.  The specification

23   says it can be modified, and the definition that we all

24   agree on says their response is prepared prior to.

25             Well, some of their responses do get

1   modified prior to delivery, and we don't want defendants

2   to be able to argue that this predetermined response

3   doesn't qualify as a predetermined response because it

4   was modified based on the interpretations when the

5   patent specifically states that that's included, that's

6   contemplated, and that's what's meant by a predetermined

7   response.  Defendants agree in the context of claim

8   construction.  We don't want there to be any confusion

9   with the jury.

10          Requiring assistance -- let's go to 32.

11          So you're -- again, Your Honor, I think that

12   your questions to defendants' counsel show that you

13   understand our position exactly.  The specification

14   specifically contemplates that the review can include

15   the review of the message.

16          The question is, does it necessarily require

17   review of the response?  And looking at Figure 2B, there

18   are situations where -- that are disclosed in the

19   specification where the manual review is performed so

20   you have the assistance of a human operator, but it

21   doesn't show them reviewing the response.  They've

22   reviewed the message.  They determined, yes, it's

23   capable of this predetermined response.  And as Your

24   Honor gave the example, they pressed -- I think it was

25   Button 3, and they get the predetermined response that

1    corresponds without them having to review that

2    predetermined response.  They just looked at the message

3    to classify, yes, I agree that this does get this type

4    of predetermined response.

5           It does also contemplate that they can

6    review the responses and modify them, if necessary, but

7    that's not required.  And plaintiffs urge the

8    construction that we do because it allows for review of

9    the response to meet that limitation.

10          Your Honor, briefly on predetermined match

11   weight and mismatch weight.  So Mr. Verhoeven puts this

12   up, and he says, "Well, I learned in first grade that

13   this is addition."  I agree.  4 plus 6 equals 10 doesn't

14   appear anywhere in the specification, and nowhere does

15   the patent use addition versus subtraction.

16          Now, what if you had 4 times 1.2?  You get

17   4.8.  It's been increased by a predetermined match

18   weight, and I'm sure Mr. Verhoeven knows also that's

19   multiplication, but it's still increasing the amount by

20   a predetermined match weight.

21          And the same is true with subtraction.  Ten

22   minus 2 -- this example doesn't appear anywhere in the

23   specification.  And if you did 10 times a mismatch

24   weight of 0.8, you'd end up with a lower number, and it

25   would be decreased, and it would be decreased by a

1    predetermined match weight.  There is just nothing in

2    the patent that would exclude other operations for

3    increasing or decreasing the final match score.

4            Okay.  So I think we're agreed on the

5    ordering of the steps, and now we're moving to the

6    incorporation of the dependent claim elements.  So as I

7    understand the argument, Your Honor, they do seem to be

8    serious.  Claim 28 -- their argument seems to be that

9    Claim 28 is somehow inconsistent with Claim 26 and the

10   other dependent arguments are therefore invalid if Claim

11   28 is because they depend on Claim 28.

12           So, first, there is no question that claim

13   Step (c) is not meant to replace anything.  As required

14   by Section 142 -- 114, Claim 28 includes all of the

15   elements of Claim 26, and it further comprises -- just

16   like it says -- the following step.

17           So it has to retrieve one or more

18   predetermined responses corresponding to the

19   interpretation of the electronic message from a

20   repository for automatic delivery to the source when the

21   classification step indicates that the electronic

22   message can be responded to automatically.

23           THE COURT:  Is that an additional step, Step

24   (c) in Claim 26?

25           MR. FENSTER:  It is not -- it is an

1    additional requirement.  There -- it does not require

2    two retrieving steps, if -- if that's what you're

3    asking.  Do you have to retrieve two things?  And the

4    answer is no.

5           What this does is it further clarifies, just

6    like most dependents do.  What we mean by the retrieving

7    step is this one has to be done in a specific

8    circumstance when the classification step indicates that

9    the electronic message can be responded to

10   automatically.

11          Step (c) -- this is Claim 26, Your Honor,

12   just says retrieving one or more predetermined responses

13   corresponding to the interpretation of the electronic

14   message from a repository for automatic delivery to the

15   source.  This doesn't further specify under what

16   conditions, and it doesn't place any further

17   restrictions on it.

18          Claim 28 places the further restriction that

19   it -- that that happened when the classification step

20   indicates that the electronic message can be responded

21   to automatically.  There is no error here.

22          Now, he says, "Well, we've admitted that

23   there's an error because it was changed in the reexam."

24   But the reexam, Your Honor, did modify the language and

25   said it did so for editorial purposes.  This is from

1    Page 12.  This is all that's said about Claim 28 being

2    amended.  Claim 28 has been amended for editorial

3    purposes.  It has been.  There are lots of different

4    ways to say everything.  This is saying this is a

5    nonsubstantive change.  It's not correcting an error.

6             When it says it's correcting an error -- for

7    example, if you look, just by example, at the next line,

8    it says Claims 52 and 53 have been amended to correct an

9    obvious error, i.e., change sys -- method to system.

10   There is no error that's offered here, and I'll further

11   note --

12            THE COURT:  Is the error of claim -- or the

13   editorial purposes of Claim 28's amendment, is that

14   different from the obvious error of Claims 52 and 53?

15            MR. FENSTER:  Well, 52 and 53, I assume --

16   I'm not intimately familiar with this, as I mentioned,

17   but I assume based on that, that what we'll see is --

18            THE COURT:  No, my point was he char -- the

19   reexam, he characterized the error of 52 and 53 as an

20   obvious error from method to system or whatever you put

21   up there, and then he changed the language of Claim 28,

22   quote, for editorial purposes.  Is that different from

23   having an obvious error?

24            MR. FENSTER:  I -- I think -- I think it --

25   I take it at its value on its face to say it's done for

1    editorial reasons and not to correct an error.  There

2    isn't anything that indicates that Claim 28 by itself

3    was invalid for this reason or wasn't rejected, I don't,

4    believe, for that reason.

5            I'll further note that Claim 33, which

6    depends through several dependencies on Claim 28, has

7    actually been upheld and allowed in -- in -- in the

8    reexamination, so the reexamination couldn't have found

9    Claim 28 invalid as written in -- in finding that Claim

10   33 was upheld.

11           There's just not -- there's just not an

12   error -- an error here that one of skill in the art

13   would look at this and say, "I have no idea what's

14   required."  It's just -- it's pretty -- pretty clear

15   that what it means is the retrieving step is clarified

16   so that it has to happen to meet Claim 28 when the

17   classification step indicates that the message can be

18   responded to automatically.

19           THE COURT:  Okay.

20           MR. FENSTER:  Unless Your Honor has any

21   further questions, I believe that's all I have.

22           THE COURT:  All right.

23           MR. ROOKLIDGE:  Your Honor, out of sheer

24   optimism, since you allowed plaintiff to defer to us and

25   go first on the invalidity issue, does that mean that my

1    final two minutes are rebuttal in which I can address

2    the two new points raised?

3              THE COURT:  Sheer optimism, no.

4              MR. ROOKLIDGE:  Thank you, Your Honor.

5              THE COURT:  That's not what that meant.  But

6    I appreciate the request, though.

7              I tell you what, take -- let's take until

8    11:30, and the claim construction issues are under

9    submission.  I'll hear you on the motion to compel, to

10   the extent you haven't worked it out in the next 15

11   minutes.

12             COURT SECURITY OFFICER:  All rise.

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                            CERTIFICATION

 2

 3              I HEREBY CERTIFY that the foregoing is a

 4   true and correct transcript from the stenographic notes

 5   of the proceedings in the above-entitled matter to the

 6   best of my ability.

 7

 8

 9
     SHELLY HOLMES                            Date
10   Deputy Official Reporter
     State of Texas No.: 7804
11   Expiration Date:    12/31/10

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```