UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BRIGHT RESPONSE, LLC | § | |
| | § | |
| vs. | § | CASE NO. 2:07-CV-371-CE |
| | § | |
| GOOGLE INC., ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

After considering the submissions and the arguments of counsel, the court issues the following order concerning the claim construction issues:

**I.   Introduction**

In this case, the plaintiff Bright Response, LLC ("Bright Response") contends that the defendants Yahoo! Inc. ("Yahoo"), Google Inc. ("Google"), and AOL LLC ("AOL") infringe various claims of United States Patent No. 6,411,947 B2 ("the '947 patent"). Bright Response asserts claims 26-28, 30, 31, 33, and 38-40 against Google and AOL and asserts claims 26, 27, and 38-40 against Yahoo. This memorandum addresses the parties' various claim construction disputes. The memorandum will first briefly address the technology at issue in the case and then turn to the merits of the claim construction issues.

**II.   Background of the Technology**

The '947 patent is titled "Automatic Message Interpretation and Routing System." The Abstract of the '947 patent generally describes the claimed invention as:

> A method for automatically interpreting an electronic message, including the steps of (a) receiving the electronic message from a source; (b) interpreting the electronic message using a rule base and case base knowledge engine; and (c) classifying the electronic message as at least one of (i) being able to be responded to automatically; and (ii) requiring assistance from a human operator. The method for automatically interpreting an electronic message may also include the step of retrieving one or

> more predetermined responses corresponding to the interpretation of the electronic message from a repository for automatic delivery to the source.

Claim 26 is a representative example of the '947 patent's claims:

> A method for automatically processing a non-interactive electronic message using a computer, comprising the steps of:
> (a) receiving the electronic message from a source;
> (b) interpreting the electronic message using a rule base and case base knowledge engine; and
> (c) retrieving one or more predetermined responses corresponding to the interpretation of the electronic message from a repository for automatic delivery to the source.

The court will now address the legal principles of claim construction and then construe the '947 patent's terms.

### III.    General Principles Governing Claim Construction

"A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999) (quoting *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989)). Claim construction is an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996).

To ascertain the meaning of claims, the court looks to three primary sources: the claims, the specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) (quoting *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed. Cir. 1991)). Under the patent law, the specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. 35 U.S.C. § 112; *id.* at 978. A patent's claims "must be read in view of the specification,

of which they are a part." *Markman*, 52 F.3d at 979. "For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims." *Id*. "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's claims. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). And, although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This court's claim construction decision must be informed by the Federal Circuit's decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the *claims* of a patent define the invention to which the patentee is entitled the right to exclude." *Id.* at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)) (emphasis added). To that end, the words used in a claim "are generally given their ordinary and customary meaning." *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in

question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id*. at 1313.  This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention.  *Id.*  The patent is addressed to and intended to be read by others skilled in the particular art.  *Id*.

The primacy of claim terms notwithstanding, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.  Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument."  *Id*. at 1315 (quoting *Markman*, 52 F.3d at 978).  Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims.  *Id*. at 1314-17.  The Supreme Court stated long ago that "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878).  In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.  The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316.  Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation.  The

4

prosecution history helps to demonstrate how the inventor and the PTO understood the patent. *Id.* at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.* Nevertheless, the prosecution history is intrinsic evidence. *Id.* That evidence is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims. *Id.*

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. *Id.* The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319-24. The approach suggested by *Texas Digital*–the assignment of a limited role to the specification–was rejected as inconsistent with decisions holding the specification to be the best guide to the meaning of a disputed term. *Id.* at 1320-21 (quoting *Vitronics*, 90 F.3d at 1582). According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321. *Phillips* emphasized that "[t]he patent system is based on the proposition that the claims cover only the invented subject matter." *Id.* What is described in the claims flows from the statutory requirement imposed on the patentee to describe and particularly claim what he or she has invented. *Id.* The definitions found in dictionaries, however, often flow from the editors' objective of assembling all of the possible definitions for a word. *Id.* at 1321-22.

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. *Phillips*, 415 F.3d at 1322. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. *Id.* at 1317-19. In doing so, the court emphasized that claim construction issues are not resolved by any "magic formula." *Id.* at 1324. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id.* at 1323-25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant. *Id.* at 1324.

In construing the claim terms, the court must also determine whether any claim terms are invalid as being indefinite. The statutory requirement of definiteness states that the claims must "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. "[T]he purpose of the definiteness requirement is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). "The definiteness requirement, however, does not compel absolute clarity. Only claims not amenable to construction or insolubly ambiguous are indefinite." *Id.* (internal quotations omitted).

**IV.     Agreed Constructions**

The parties have stipulated to the construction of the following terms:

- "classifying the electronic message" / "the classification step" means "determining whether the electronic message falls into one or more categories"

- "rule base . . . knowledge engine" means "a knowledge engine that tests whether one or more

   conditions are met and, if so, applies specified actions"

- "a case model of the electronic message" / "the case model" means "text and attributes derived from the electronic message"

- "wherein each score is normalized by dividing the score by a maximum possible score for the stored case model" means "wherein each match score is divided by the maximum possible score for the stored case model"

- "fixed data" means "data in a predetermined arrangement"

- "variable data" means "data in any arrangement"

- Order of steps in claim 26: The steps must be performed in order, i.e., step (a) before step (b) and step (b) before step (c)

## V.     Disputed Terms

### A.     "non-interactive electronic message"

The term "non-interactive electronic message" is found in the preamble of claim 26: "[a] method for processing a *non-interactive electronic message* using a computer." Non-interactive electronic messages are described in the following passage from the specification:

> [I]n the instant invention the data of the electronic message 11 is delivered to the automatic message interpreting and routing system 1 in a non-interactive manner. Specifically, the customer 50 transmits a *non-interactive electronic message* 11 to the system 1. This non-interactive transmission of electronic messages 11 prescribes that the customer 50 need not later provide additional input to assist the system 1. It is noted that defining an electronic message 11 as being non-interactive prescribes only that the message content need not be supplemented. Thus, as described in more detail below, the form of the *non-interactive electronic message* 11 may be altered by the system 1 after the customer 50 sends it; however, the customer 50 is not required to provide supplemental information to assist the system 1.

('947 patent, 4:58-5:4) (emphasis added). Bright Response asserts that this term means "an electronic message not requiring additional input or supplementation from the sender." The

7

defendants contend that "non-interactive electronic message" is insolubly ambiguous and thus indefinite.

The defendants argue that "non-interactive electronic message" is insolubly ambiguous because neither the claim nor specification provides any guidance as to which of the many possible interpretations of this term is correct. According to the defendants, neither the claims nor the specification explain what a non-interactive message is or how to determine if a message is non-interactive. As to Bright Response's proposed construction, the defendants contend that one cannot determine from the message itself whether it requires additional input or supplementation from the user.

One of ordinary skill in the art reading the specification would understand that the transmission and processing of the message must be non-interactive. The specification explains that "the data of the electronic message 11 is *delivered* . . . in a non-interactive manner" and refers to "[t]his non-interactive *transmission* of electronic messages." ('947 patent, 4:58-61, 62-63). This non-interactive transmission and processing is consistent with the preferred embodiment, E-mail messages, in that the sender provides no further input or interaction once the message is received. The specification sufficiently explains what is meant by "non-interactive," and this term is not insolubly ambiguous.

Bright Response asserts that additional user input or supplementation is allowed, but not required, for a non-interactive message. In support of this construction, the plaintiff cites the following text from the specification: "This non-interactive transmission . . . prescribes that the customer 50 *need not* provide later input . . . . [D]efining an electronic message 11 as being non-interactive prescribes only that the message content *need not* be supplemented." ('947, 4:62-5:1).

But, read as a whole, the patent does not support Bright Response's argument. Construing "non-interactive electronic message" to allow interaction would contradict the plain meaning of "non-interactive." Therefore, the court construes "non-interactive electronic message" to mean "an electronic message in which the sender does not provide any additional information after the message has been received."

        B.        "case base knowledge engine"

Claim 26 contains the term "case base knowledge engine": "interpreting the electronic message using a rule base and *case base knowledge engine*." The specification provides a description of case base processing:

> An attribute setting rule is used when a satisfied condition is useful in subsequently matching the E-mail message 11 to *stored case models of the case base* 34 . . . . The application of the attribute setting rules produces a *case model* of the E-mail message 11 (i.e., an index of features useful in comparing the E-mail message 11 to the *stored case models of the case base* 34). Specifically, when attribute setting rules fire, specific attributes of the *case model* of the E-mail message 11 are flagged (i.e., set true). Thus, when a search of the *case base* 34 is required, the flagged attributes of the *case model* are used to search the *stored case models of the case base* 34.

('947 patent, 6:42-44, 6:53-61) (emphasis added). Bright Response's proposed construction is "a knowledge engine that processes electronic messages by comparing them to a stored set of exemplar cases." The defendants argue that this term means "a knowledge engine that compares an incoming set of facts (a 'problem') with a stored set of exemplar cases representing past 'problems' to obtain a set of prior cases which are used to formulate an appropriate action."

The parties disagree on whether the stored exemplar cases must be past problems or may they include anticipated problems. In support of limiting the term's scope to past problems, the defendants cite the following passage from the Background of the Invention: "A help desk application utilizing a case based reasoning system, see U.S. Pat. No. 5,581,664 to Allen et al., has

been described which compares an incoming set of facts (a 'Problem') with a stored set of exemplar cases (a case base). . . . The case base is stored in the form of case attributes representing *past 'problems.'*" ('947 patent, 2:41-48). The defendants argue that this language expressly defines case base and restricts its meaning. But this discussion of case base is written in the context of explaining the functionality of the Allen reference, not the present invention. The patent describes Allen as prior art and distinguishes it from the claimed invention. (*See* '947 patent, 2:52-53 ("Unfortunately, [Allen] has several drawbacks.")). The defendants also argue that the prosecution history supports limiting case base to past problems. In response to a PTO rejection, the patentees explained that a case base reasoning system "compares an incoming set of facts (a 'Problem') with a stored set of exemplar cases (a case base)" and cited the portion of the specification discussing the Allen reference. Notably, however, the patentees omitted the sentence that stated, "The case base is stored in the form of case attributes representing past 'problems.'" In all, the court concludes that the prosecution history contains no clear and unmistakable disavowal of case bases containing anticipated problems. *See Omega Eng'g, Inc v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003).

Next, the defendants contend that the case base knowledge engine "compares an incoming set of facts (a 'Problem')" to the case base, while Bright Response asserts that the "electronic message" is compared. The defendants cite the portion of the prosecution history, quoted above, that contains the "incoming set of facts" language. But the passage that immediately follows states, "The specification describes in detail an example of a case base knowledge engine for interpreting electronic messages . . . . In that example, *an incoming message* ("a presented model") is compared to each of a set of stored case models . . . ." Furthermore, the claim language itself explains that the

electronic message is being interpreted. ('947 patent, claim 26, step b ("interpreting the electronic message using a . . . case base knowledge engine")). The defendants also argue that Bright Response's proposed construction excludes the preferred embodiment, which compares flagged attributes. The specification describes an embodiment of the case base knowledge engine's operation:

> The application of the attribute setting rules produces a case model of the E-mail message 11 (i.e., an index of features useful in comparing the E-mail message 11 to the stored case models of the case base 34). Specifically, when attribute setting rules fire, specific attributes of the case model of the E-mail message 11 are flagged (i.e., set true). Thus, when a search of the case base 34 is required, the flagged attributes of the case model are used to search the stored case models of the case base 34.

('947 patent, 6:53-61). Thus, the defendants contend that Bright Response's "incoming message" proposal excludes the embodiment above. But comparing flagged attributes is subsumed within the broader "processing electronic messages" construction. Also, the scope of this term should not be limited to the flagged attributes comparison embodiment. Therefore, the court construes "case base knowledge engine" to mean "a knowledge engine that processes electronic messages by comparing them to a stored set of exemplar cases."

### C.     "predetermined response"

"Predetermined response" is found in claim 26: "retrieving one or more *predetermined responses* corresponding to the interpretation of the electronic message from a repository for automatic delivery to the source." The term is discussed throughout the specification, including in the passage quoted below:

> When the automatic message reader 30 has classified the E-mail message 11 as being of the "automatic" type . . . , one or more *predetermined responses* . . . are retrieved from a repository . . . for automatic delivery to the source 52. . . . [T]he *predetermined response* is an appropriate response to the inquiry of the customer 50. It is understood that the *predetermined response* may be modified and/or altered in

11

> accordance with the interpretation of the E-mail message 11 if required to properly respond to a customer 50.

('947 patent, 9:24-35) (emphasis added). According to the plaintiff, "predetermined response" requires no construction. If this term must be construed, however, Bright Response proposes the following definition: "Responses prepared prior to the receipt of the electronic message. The responses may be modified and/or altered based on the interpretation of the electronic message." The defendants contend that this term means "responses prepared prior to the receipt of the electronic message."

Both sides agree upon the first sentence of the construction. The defendants also agree that the predetermined response may be modified or altered. But the defendants contend that Bright Response's proposed construction would allow alteration or modification at any time, such as before retrieval or after delivery of the response. The only time limitation imposed by the claim is based on the interpretation of the electronic message: "retrieving one or more predetermined responses corresponding to the interpretation of the electronic message." ('947 patent, claim 26). Because the predetermined response retrieval must occur after interpretation of the electronic message, the court construes this term to mean "responses prepared prior to the receipt of the electronic message. The responses may be modified and/or altered based on the interpretation of the electronic message."

### D. "repository"

Claim 26 contains the disputed term "repository": "retrieving one or more predetermined responses corresponding to the interpretation of the electronic message from a *repository* for automatic delivery to the source." The specification discusses "repository" in the following sentence: "[O]ne or more predetermined responses . . . are retrieved from a *repository* (or database), preferably the archive 32 (step 116a), of the automatic message reader 30 for automatic delivery to

the source 52." ('947 patent, 9:26-29) (emphasis added). Bright Response argues that this term should be construed as "a place where electronic information is stored." The defendants' proposed construction is "database."

The defendants argue that the specification defines "repository" as "database": "one or more predetermined responses . . . are retrieved from a repository (or *database*)." ('947 patent, 9:26-27). But this passage is not defining the term "repository"; it provides an embodiment of the term. Nowhere in the specification or claims does the patent disclaim other potential repositories, such as a text file. Thus, the term should be construed according to its customary meaning as understood by a person having ordinary skill in the art. *See Phillips*, 415 F.3d at 1312-13. The dictionary definition of "repository" is "a place, room, or container where something is deposited or stored." Merriam-Webster's Collegiate Dictionary 1056 (11th ed.). In the context of the field of invention, it is clear that data is being stored. Therefore, the court construes "repository" to mean "a place where data is stored."

### E. "requiring assistance from a human operator"

The term "requiring assistance from a human operator" is found in claim 28: "classifying the electronic message as at least one of (i) being able to be responded to automatically; and (ii) *requiring assistance from a human operator*." The specification states the following:

> The interpretation of the E-mail message 11 by the automatic message reader 30 includes classifying the E-mail message 11 into (i) E-mail which is capable of being automatically responded to, called an "automatic" type E-mail message 11; and/or (ii) E-mail which is not capable of being automatically responded to and *requires the assistance of the human operator* 40, called a "referral" type E-mail message 11.

('947 patent, 5:42-49) (emphasis added). The plaintiff contends that "requiring assistance from a human operator" means "requiring that a manual reviewer review the electronic message or

13

information derived from the electronic message, or review, revise or compose the response to be delivered to the source." In contrast, the defendants propose the following construction: "requiring that a manual reviewer review, revise, or compose the response to be delivered to the source." The plaintiff and defendants disagree on whether review of only the electronic message, and not the response, satisfies this claim limitation.

The defendants argue that "requiring assistance from a human operator" necessarily requires that the human operator review the response. The defendants cite step (c) of claim 28 to support their argument: "retrieving one or more predetermined responses corresponding to the interpretation of the electronic message from a repository *for automatic delivery* to the source *when the classification step indicates that the electronic message can be responded to automatically*." According to the defendants, steps (b1) and (c) show that the purpose of the classification is to determine which messages may be responded to automatically versus the messages that require assistance from a human operator *to respond*. But step (b1) shows that automatic response and human assistance are not mutually exclusive: "classifying the electronic message as *at least one of*" (i) automatic response and (ii) human assistance. Thus the claim language permits scenarios in which a message requires assistance from a human operator *and* is able to be responded to automatically, i.e., a human reviews the message but does not review the response. The defendants' proposed construction excludes this possibility. Moreover, the specification discloses two types of human assistance: review of the message ('947 patent, 9:43-46) and review of the response ('947 patent, 10:30-34). Therefore, the court construes this term as "requiring that a manual reviewer review the electronic message or information derived from the electronic message, or review, revise or compose the response to be delivered to the source."

14

**F.     "predetermined match weight" / "predetermined mismatch weight"**

These terms appear in claim 31: "when at least one of the attributes and the text match the stored case model, the score is increased by a *predetermined match weight*" and "when at least one of the attributes and the text does not match the stored case mode, the score is decreased by a *predetermined mismatch weight*." The specification does not use the terms "predetermined match weight" or "predetermined mismatch weight," but it does contain "match-weight" and "mismatch-weight":

> The raw score of a stored case model may increase or decrease in differing amounts depending on the particular feature (i.e., attribute) being searched. Thus, if feature$_1$ matches, the raw score may increase by *match-weight*, while if feature$_2$ matches, the raw score may increase by *match-weight$_2$*. Similarly, if feature$_1$ does not match, the raw score may decreased by *mismatch-weight$_1$*, while if feature$_2$ does not match, the raw score may decrease by *mismatch-weight$_2$*. It is preferred that the *match-weight* of each feature is a positive number and that the *mismatch-weight* is zero.

('947 patent, 8:48-57) (emphasis added). Bright Response argues that "predetermined match weight" should be construed as "a predetermined factor controlling the degree to which a stored case model's score is increased by a comparison of text and attributes from a case model with those from a stored case model." Likewise, for "predetermined mismatch weight," Bright Response proposes "a predetermined factor controlling the degree to which a stored case model's score is decreased by a comparison of text and attributes from a case model with those from a stored case model." On the other hand, the defendants' proposed construction of "predetermined match weight" is "a predetermined factor which is added to a stored case model's match score when a feature from the stored case model matches text and attributes from the presented case model"; their proposal for "predetermined mismatch weight" is "a predetermined factor which is subtracted from a stored case model's match score when a feature from the stored case model does not match text and attributes

15

from the presented case model."

The defendants argue that the plain language of claim 31, which states that the score is "increased by" and "decreased by" the predetermined weights, requires addition and subtraction. But the court is not persuaded that the claim language excludes other mathematical operations, such as multiplication and division. On the other hand, Bright Response's "controlling the degree" language is vague. Therefore, the court construes "predetermined match weight" to mean "a predetermined factor that arithmetically increases a stored case model's match score when a feature from the stored case model matches text and attributes from the presented case model." The term "predetermined mismatch weight" is construed to mean "a predetermined factor which arithmetically decreases a stored case model's match score when a feature from the stored case model does not match text and attributes from the presented case model."

### G.   Incorporation of dependent claim elements

The defendants argue that dependent claims 28 and 30 are invalid because they fail to incorporate the limitations of the claims upon which they depend. Claim 26, the independent claim upon which claim 28 depends, requires the following steps:

> (a) receiving the electronic message from a source;
> (b) interpreting the electronic message using a rule base and case base knowledge engine; and
> (c) retrieving one or more predetermined responses corresponding to the interpretation of the electronic message from a repository for automatic delivery to the source.

Claim 28, upon which claim 30 depends, has the following steps:

> (b1) classifying the electronic message as at least one of (i) being able to be responded to automatically; and (ii) requiring assistance from a human operator; and
> (c) retrieving one or more predetermined responses corresponding to the interpretation of the electronic message from a repository for automatic delivery to the source when the classification step indicates that the electronic message can be

responded to automatically.

Finally, claim 30 recites the following steps:

> (b1) producing a case model of the electronic message including (i) a set of attributes for identifying specific features of the electronic message; and (ii) message text;
> (b2) detecting at least one of text, combinations of text, and patterns of text of the electronic message using character matching;
> (b3) flagging the attributes of the case model which are detected in the electronic message;
> (b4) comparing the flagged attributes of the case model with stored attributes of stored case models of the case base;
> (b5) comparing the text of the case model with stored text of the stored case models of the case base; and
> (b6) assigning a score to each stored case model which is compared with the case model, the score increasing when at least one of the attributes and the text match the stored case model and the score not increasing when at least one of the attributes and the text do not match the stored case model.

The defendants argue that dependent claim 28 is indefinite because it is impossible to determine whether claim 28's steps (b1) and (c) replace claim 26's steps or are performed in addition to claim 26's steps. Likewise, the defendants contend that claim 30 is indefinite due to the uncertainty of whether claim 30's steps replace or supplement claim 28's steps.

Claim 28's preamble contains the transition "further comprising the steps of." This transition indicates that the steps of the independent claim are incorporated into the dependent claim. For steps having the same label, e.g., both claim 26 and claim 28 have a step "(c)," the step recited in the dependent claim replaces the step recited in the independent claim. Otherwise, for steps not having the same label, e.g., step (b) in claim 26 and step (b1) in claim 28, the step recited in the dependent claim supplements the step recited in the independent claim. Thus, claim 28 requires the following steps: claim 26's step (a), claim 26's step (b), claim 28's step (b1), and claim 28's step (c).

Claim 30's preamble contains the transition "wherein the step of interpreting the electronic message further includes the steps of." The "step of interpreting the electronic message" refers to

step (b) of claim 26, which is incorporated into claim 28.  Specifically, claim 26's step (b) teaches the use of both a rule base and a case base knowledge engine.  Claim 30's steps (b1)-(b6) further describe the operation of the case base knowledge engine.  Steps (b1)-(b6) cannot replace step (b) of claim 26 because the rule base knowledge limitation is missing from steps (b1)-(b6).  *See* 35 U.S.C. § 112, ¶ 4 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").  Therefore, steps (b1)-(b6) supplement step (b).  As such, claim 30 requires the following steps: claim 26's step (a), claim 26's step (b), claim 30's steps (b1)-(b6), claim 28's step (b1), and claim 28's step (c).  Because claims 28 and 30 incorporate the steps of the claims 26 and 28, respectively, these claims are not indefinite.

## VI.   Conclusion

The court adopts the constructions set forth in this opinion for the disputed terms of the '947 patent.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the court.

SIGNED this 18th day of June, 2010.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE