UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BRIGHT RESPONSE, LLC § <br> f/k/a POLARIS IP, LLC § <br> § <br> vs. § <br> § <br> GOOGLE INC., et al. § <br> § | CASE NO. 2:07-CV-371-CE |

**MEMORANDUM OPINION AND ORDER**

**I.     Introduction**

Both the plaintiff and the defendants in the above-referenced case moved for summary judgment on Defendants' affirmative defenses and counterclaims of invalidity under 35 U.S.C. §§ 102(b), (e), and 103(a). (Dkt. Nos. 389, 390, 391, 392).[1] Plaintiff Bright Response ("Plaintiff") additionally moved for summary judgment on Defendants' remaining affirmative defenses and counterclaims. Plaintiff argues that Defendants' counterclaims are not supported by evidence sufficient to overcome the clear and convincing standard necessary to invalidate the patent-in-suit. Defendants argue that prior patents, publications, and public use, both by the inventors and others, erect a bar to patentability under 35 U.S.C. §§ 102(b), (e), and 103(a) that should invalidate the asserted claims. For the reasons stated below, the Court finds that Plaintiff's motions should be GRANTED in part and DENIED in part, and Defendants' motion should be DENIED.

---

[1] Plaintiff also moved for summary judgment on Defendants' other counterclaims and affirmative defenses, including those alleging invalidity under 35 U.S.C. §§ 101, 102(a), and (f), and 112, laches, estoppel, limitation on damages, costs barred, failure to state a claim, and inequitable conduct. Plaintiff's and Defendants' motions for summary judgment concerning validity under § 112 have been addressed separately.

## II.     Factual and Procedural Background

On August 27, 2007, Plaintiff sued Defendants for alleged infringement of U.S. Patent No. 6,411,947 ("the '947 patent").  On July 21, 2008, Plaintiff amended its Complaint.  On August 20, 2008, Defendants filed their answers, including affirmative defenses and counterclaims of invalidity of the '947 patent under 35 U.S.C. §§ 101, 102, 103, and 112. On July 1, 2010, Plaintiff filed motions for summary judgment against each Defendant on each Defendant's affirmative defenses and counterclaims.  Also on July 1, 2010, Defendants moved for summary judgement on their affirmative defenses and counterclaims of invalidity under 35 U.S.C. §§ 102(b), (e), and 103(a).

For invalidity, Defendants rely on the publications included in the provisional application to which the '947 patent claims priority (the EZ Reader Article and the EZ Reader Manual), U.S. Patent No. 5,581,664 issued to Allen in May of 1994 ("the Allen patent"), and the documentation describing the system claimed by the Allen patent (the CBR Express User's Guide and the CBR Express Reference Manual).  At issue is whether the full EZ reader system was in public use more than one year prior to the '947 patent's claimed priority date, whether the Allen patent discloses all elements of the asserted claims of the '947 patent, and whether the Allen patent in combination with the CBR Express User's Guide and/or the CBR Express Reference Manual renders the asserted claims of the '947 patent obvious.  Also at issue is whether Defendants have come forth with sufficient evidence to create a genuine issue of material fact as to patentability under 35 U.S.C. §§ 101, 102(a), (b), (e), (f), or 103, or as to their affirmative defenses and counterclaims of prosecution history estoppel, laches, inequitable conduct, failure to state a claim, costs barred, or limitation on damages.

**III.     Legal Standard**

In a motion for summary judgment, the moving party has the initial burden of showing that there is no genuine issue of any material fact and that judgment should be entered as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). An issue is "material" where it involves a fact that might affect the outcome of the suit under the governing law of the underlying cause of action. *Id.* at 248. "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the moving party." *Id.* In assessing summary judgment, the evidence is viewed "through the prism of the evidentiary standard of proof that would pertain at a trial on the merits." *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006). Because patents are presumed valid, "a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise." *Id.*

**IV.     Analysis**

    **A.     Invalidity Under 35 U.S.C. § 101**

Plaintiff moved for summary judgment of validity of all asserted claims as to § 101. In response, Defendants abandoned their position and advised the Court that they did not intend to pursue § 101 invalidity at trial. Accordingly, Plaintiff's motion for summary judgment as to validity under § 101 is GRANTED.

    **B.     Invalidity Under 35 U.S.C. § 102**

Anticipation sufficient to preclude patent protection under 35 U.S.C. § 102 means a lack of

3

novelty, and presents a question of fact. *Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001). While 35 U.S.C. § 102 refers to "the invention," the anticipation analysis is performed on a claim-by-claim basis. *Hakim v. Cannon Avent Group, PLC*, 479 F.3d 1313, 1319 (Fed. Cir. 2007). A patent claim is invalid as anticipated if each and every limitation is found either expressly or inherently in a single prior art reference. *Celeritas Tech., LTD. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998).

### 1.  Invalidity Under 35 U.S.C. § 102(a)

Plaintiff moved for summary judgment of validity of the asserted claims as to § 102(a). 35 U.S.C. § 102(a) reads:

> [A person shall be entitled to a patent unless] the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent . . .

In response to Plaintiff's motion, Defendants cited the portion of their expert's report discussing CBR Express, a product related to the Allen patent. After reviewing this evidence, a genuine issue of material fact remains as to the § 102(a) validity of claim 26. Moreover, claims 28, 30, 31, and 33 contain a limitation that is not present in CBR Express. In particular, those claims require "classifying the electronic message as at least one of (i) being able to be responded to automatically; and (ii) requiring assistance from a human operator," and there appears to be no such classification in the CBR Express, as all responses appear to be automatic. Defendants did not address claim 38 in response to Plaintiff's motion. Accordingly, summary judgment in favor of Plaintiff is proper with respect to whether CBR Express discloses each limitation of claims 28, 30, 31, 33, and 38.

Defendants' arguments on other grounds for invalidity have raised genuine issues of material fact, however. For starters, it is not clear what invention date is being asserted by Plaintiff.[2] The EZ Reader Article was published as part of an AAAI conference in August of 1996, and, depending on the date of invention, this may or may not constitute prior art. In addition, the parties have submitted conflicting evidence as to whether activity in the first quarter of 1996 constituted public use, but Plaintiff produced testimony that many of the named inventors were no longer working on the project by the summer of 1996 and that others had taken over that work. The use and knowledge of the EZ Reader system by those other than the inventors beginning in the spring or summer of 1996, if occurring before Plaintiff's invention date, could also serve as a basis for invalidity under § 102(a). Accordingly, Plaintiff's motion for summary judgment of validity under § 102(a) is DENIED.

### 2.      Invalidity Under 35 U.S.C. § 102(b)

Under 35 U.S.C. § 102(b), a patent is invalid as anticipated if "the invention was . . . in public use or on sale in this country more than one year prior to the date of the application for patent in the United States." "Public use under 35 U.S.C. § 102(b) includes any use of the claimed invention by a person other than the inventor who is under no limitation, restriction, or obligation of secrecy to the inventor." *Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002). Whether a use is "public" depends on the nature of the activity that occurred in public; whether the use was confidential; the public access to and knowledge of the public use; whether the use was experimental; the scale of any experimental use relative to commercial exploitation; whether the inventors or others are performing the use; and whether any payment was made for any

---

[2]Although Defendants argue that Plaintiff is claiming April 3, 1997 as the invention date, the evidence in the record would easily support an earlier date.

experimental use. *Allied Colloids Inc. v. Am. Cyanamid Co.*, 64 F.3d 1570, 1574 (Fed. Cir. 1995).

The '947 patent claims priority to U.S. Provisional Application No. 60/042,494, filed on April 3, 1997. This gives the '947 patent a "critical date," before which any public use of the invention would bar patentability, of April 3, 1996.

Both parties moved for summary judgment under § 102(b). Plaintiff seeks a determination that Defendants have failed to raise a genuine issue of material fact as to the public use of the invention prior to the critical date and that no such use occurred. Defendants seek a determination that, without any remaining genuine issues of material fact, they have produced clear and convincing evidence of public use prior to the critical date.

To support their argument for public use, Defendants point to two publications as well as deposition testimony. The EZ Reader Article, finalized for publication in April 1996, claimed that the Phase I of the EZ Reader system was deployed in the first quarter of 1996. The EZ Reader Manual, with a print date of February 5, 1996, states that the EZ reader system described in the manual was already in use by the ChaseDirect unit of Chase Manhattan Bank. In addition, Defendants produced extensive deposition testimony stating that the EZ Reader system was "deployed" at some point during the first quarter of 1996.

The EZ Reader system and the patent in suit were the result of a collaboration between Chase and Brightware. Employees of both Chase and Brightware are named inventors of the '947 patent.[3] Plaintiff has presented evidence that the EZ Reader project was both confidential and exclusive between Chase and Brightware, and that use of the system during the first quarter of 1996 was

---

[3] Defendants have also presented evidence that the Chase inventors were improperly named; this could invalidate the patent under § 102(f).

experimental and internal to Chase. Defendants have presented evidence of EZ Reader deployment prior to the critical date, but the evidence is conflicting over whether this deployment was use "by a person other than the inventor who [was] under no limitation, restriction, or obligation of secrecy to the inventor." *See Minnesota Mining*, 303 F.3d at 1301. Defendants have also offered no evidence as to what access, if any, the public had to the EZ Reader system at this time. Accordingly, Defendants' motion for summary judgment of invalidity for public use prior to the critical date on the basis of the EZ Reader system is DENIED. However, Defendants have offered some evidence suggesting that the Chase employees who worked on the EZ Reader system were not inventors of the '947 patent. If this is true, then the Chase deployment in the first quarter of 1996 may constitute public use. Chase had both access to and knowledge of the invention, and if that access was not by an inventor and not protected by an obligation of secrecy to Brightware, then that use could invalidate the patent claims. This raises a genuine issue of material fact as to patentability under § 102(b). Because a genuine issue of material fact exists as to whether the Chase deployment was public, Plaintiff's motion for summary judgment of validity as to § 102(b) is DENIED.

### 3. Invalidity Under 35 U.S.C. § 102(e)(2)

Defendants allege that claims 26, 28, 30, 31, 33, and 38 of the '947 patent are invalid because every element of each claim is anticipated by the Allen patent.[4] Plaintiff alleges that Defendants have failed to raise an issue of material fact as to the validity of the asserted claims under § 102(e) and seeks summary judgment on the issue.

---

[4] Claims 26 and 28, from which all asserted claims depend, are not currently being asserted. (Dkt. Nos. 396, 397; July 28, 2010 Pretrial Conference). Because Defendants seek declaratory judgment of invalidity as to the '947 patent and have briefed claims 26, 28, and 38 in their motion for summary judgment, the Court will continue to consider the validity of claims 26, 28, and 38.

35 U.S.C. § 102(e)(2) reads as follows:

> [A person shall be entitled to a patent unless] the invention was described in . . . (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent . . .

In their argument, Defendants rely on the Allen patent. The Allen patent is a rule- and case-base knowledge engine in which a user inputs information and the system matches that information to a database of cases. When the system identifies a possible match, that match is listed for the user. Multiple matches may be listed for a given input. When the input fails to match the best stored case well enough, the system also prompts the user with questions directed to improving the match. The system described in the Allen patent guides the user through a database of potential solutions by analyzing information the user provides about a problem and presenting both potential solutions and prompts for questions to elicit more information about the problem.

### a. Claim 26

Claim 26 reads as follows:

> A method for automatically processing a non-interactive electronic message using a computer, comprising the steps of:
> (a) receiving the electronic message from a source;
> (b) interpreting the electronic message using a rule base and case base knowledge engine; and
> (c) retrieving one or more predetermined responses corresponding to the interpretation of the electronic message from a repository for automatic delivery to the source.

Because the "non-interactive electronic message" term from the preamble is the antecedent basis for the "electronic message" term in the body of the claim, it is limiting. *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). A genuine issue of material fact remains as to whether the user inputs to the system described in the Allen patent constitute a

"non-interactive electronic message."[5] The user in the system described in the Allen patent enters a description of the problem and refines or supplements that description based on prompts from the system. Claim 26, as construed, would require the user to generate "an electronic message in which the sender does not provide any additional information after the message has been received." A jury could read that limitation as covered by the Allen patent disclosure, as each user input could be an electronic message and each input generates an automatic response in the form of at least one case and one or more questions. On the other hand, a jury could also find that Allen discloses an interactive electronic message which would distinguish Allen from claim 26.

If Allen does disclose a non-interactive electronic message, claim 26 would be anticipated by Allen, as Allen undisputedly discloses all of the remaining claim limitations. The Allen system receives a message, interprets the message using a rule base and case base knowledge engine, and delivers to the user one or more predetermined responses corresponding to the knowledge engine's interpretation of the initial message.

Because a genuine issue of fact remains as to whether Allen processes interactive or non-interactive messages, summary judgment on this issue is improper. Accordingly, Defendants' motion for summary judgment of § 102(e) invalidity of claim 26 is DENIED. Plaintiff's motion for summary judgment on Defendants' § 102(e) invalidity counterclaim and affirmative defense on claim 26 is also DENIED.

---

[5] Because the non-interactive electronic message is received by the computer in claim 26, it must be a non-interactive electronic message before it reaches the system. Defendants contend that because some interactions with the Allen system consist of only a single input/response iteration that this constitutes a non-interactive message and is anticipatory. However, such messages are only distinguishable from other inputs to the Allen system after the Allen system has processed them.

### b. Claim 28

Claim 28 reads as follows:

> The method of claim 26, further comprising the steps of:
> (b1) classifying the electronic message as at least one of (i) being able to be responded to automatically; and (ii) requiring assistance from a human operator; and
> (c) retrieving one or more predetermined responses corresponding to the interpretation of the electronic message from a repository for automatic delivery to the source when the classification step indicates that the electronic message can be responded to automatically.

The (b1) step of claim 28, which is imported into asserted dependent claims 30, 31, and 33, does not appear in Allen. Even if, as Defendants contend, the disclosure in the Allen patent describes a system for processing non-interactive electronic messages, the system in Allen does not classify messages as required in claim 28: i.e. those that are able to be responded to automatically and those that are not, and/or those that require assistance from a human operator, and those that do not. If the Allen system is non-interactive, then all of its responses are automatic. Allen generates automatic responses in the form of questions for the user to seek additional relevant information when no suitable case is matched in the existing case base and automatically responds with one or more cases when the information input by the user matches sufficiently well. To the extent that Allen classifies incoming non-interactive electronic messages, it classifies them between different types of automatic responses. The classification step of Allen, to the extent that one exists, assumes an automatic response and therefore is not covered by this limitation. Because Allen does not disclose this limitation, claim 28 is not anticipated by Allen.

Defendants also attempt to meet their summary judgment burden by producing invalidity contention charts citing other patents. The Court read and considered the cited portions of those

patents. The Court finds no disclosure susceptible to the interpretation that it anticipated claim limitation 28(b1). Without any reference containing 28(b1), Defendants have failed to raise a genuine issue of material fact as to the § 102(e) validity of at least one limitation of asserted claim 28. Accordingly, Plaintiff's motion is GRANTED as to § 102(e) for asserted claim 28. Defendants' motion for § 102(e) invalidity of claim 28 DENIED.

### c. Claims 30, 31, and 33

Claims 30, 31, and 33 incorporate the 28(b1) limitation of claim 28. Because Defendants have failed to raise a genuine issue of material fact as to the § 102(e) invalidity of the 28(b1) limitation, Plaintiff's motion for summary judgment is GRANTED. Defendants' motion for summary judgment of invalidity of claims 30, 31, and 33 under § 102(e) is DENIED.

### f. Claim 38

Claim 38 incorporates the "non-interactive electronic message" limitation from the preamble of claim 26 but not the 28(b1) limitation of claim 28. Claim 38 reads:

> The method of claim 26, wherein the predetermined response is altered in accordance with the interpretation of the electronic message before delivery to the source.

Defendants rely on Allen in arguing that claim 38 is invalid. While Allen provides for a rule to check the selected best case for mismatches with known facts about the problem case, Allen provides no mechanism for using the user input to alter the best case.[6]

In response to Plaintiff's motion for summary judgment on this issue, Defendants produced four invalidity charts citing patents that allegedly invalidate the '947 patent under § 102(e). Nguyen

---

[6] The Court reads "the predetermined response is altered" to mean that the contents of a response "prepared prior to the receipt of the electronic message" are changed prior to sending the response. The Court reads Allen to change which predetermined response is sent.

(U.S. Patent No. 5,444,823) discloses a search engine that alters the ranking of its result list based on the user's input, but employs an interactive electronic message.[7] Ho (U.S. Patent No. 5,836,771) discloses a system for answering questions in natural language, but does not disclose altering a predetermined response based on the system's interpretation of an electronic message. The other patents cited by Defendants have more serious shortcomings as § 102(e) anticipation references. Because Defendants failed to produce a § 102(e) reference that meets all the limitations of claim 38, Defendants' motion for summary judgment of invalidity under § 102(e) as to claim 38 is DENIED and Plaintiff's motion for summary judgment of validity under § 102(e) is GRANTED.

### 4. Invalidity Under 35 U.S.C. § 102(f)

35 U.S.C. § 102(f) provides:

> [A person shall be entitled to a patent unless] he did not himself invent the subject matter sought to be patented.

A patent is invalid if more or less than the true inventors are named. *Trovan, Ltd. v. Sokymant SA, Irori*, 299 F.3d 1292, 1301-02 (Fed. Cir. 2002). Misjoinder of inventors can be as fatal to the validity of a patent as a case of complete inventor error. *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1381 (Fed. Cir. 2002).

Plaintiff moved for summary judgment of validity of all asserted claims as to § 102(f). In response, Defendants presented evidence that Amy Rice, one of the inventors, testified at a deposition that three of the inventors were not co-inventors of the claimed invention. Ms. Rice testified that the Chase employees were added for political purposes and as a sales move. Ms. Rice later changed her testimony, but her initial testimony is enough to create a genuine issue of material

---

[7] Nguyen appears to disclose a search engine that refines its search with each keystroke.

fact regarding the validity of the '947 patent under § 102(f). Additionally, a late-produced affidavit from listed inventor Anthony Angiotti suggested that listed inventor Fred Cohen was not involved with the EZ Reader project that was the origin of the '947 patent. Accordingly, Plaintiff's motion for summary judgment as to validity under § 102(f) is DENIED.

### C. Invalidity Under 35 U.S.C. § 103(a)

A patent is invalid under 35 U.S.C. § 103(a) "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." Obviousness under § 103(a) is a question of law based on underlying facts. *Winner Int'l Royalty Corp. v. Want*, 202 F.3d 1340, 1348 (Fed. Cir. 2000). Factual inquiries necessary for establishing obviousness include:

> (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations

*Dystar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006) (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)). Summary judgment of obviousness is appropriate if "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007).

Defendants have produced five patents available as references under § 102(e) that the Court has inspected and found to contain elements of the asserted claims. In particular, the limitations of asserted claims 26 and 38 appear to be disclosed in the prior art. Additionally, Defendants' experts have opined that combining these references would have been obvious to one of ordinary skill in the

art, and that the claim limitations not explicitly present in their prior art references (limitation 28(b1) for example) would also be obvious. The Court concludes, however, that genuine issues of material fact remain as to at least: (1) whether a system for interpreting non-interactive electronic messages would have been obvious over a system for interpreting electronic interactive messages, (2) whether a system for interpreting non-interactive electronic messages that classifies messages for automatic response and/or human review would have been obvious over a system for interpreting electronic interactive messages, and (3) whether it would have been obvious to combine the references in question. Because genuine issues of material fact remain, the Court DENIES both Defendants' and Plaintiff's motions for summary judgement on validity of the asserted claims as to § 103(a).

  **D.**  **Unenforceability for Inequitable Conduct Before the USPTO**

Plaintiff moved for summary judgment on Defendants' affirmative defenses relating to unenforceability for inequitable conduct. Defendants argue that, during the prosecution of the patent, the inventors or their agents committed inequitable conduct in at least three ways: by failing to list the Allen patent on an information disclosure sheet, by failing to disclose the EZ Reader system to the USPTO, and by naming the incorrect inventors.

An inventor or attorney commits inequitable conduct when he fails to disclose material information or submits false material information with an intent to mislead or deceive the patent examiner. *Optium Corp. v. Encore Corp.*, 603 F.3d 1313, 1320 (Fed. Cir. 2010). Information is "material" for purposes of inequitable conduct "if there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 1000 (Fed. Cir. 2007). Intent to deceive can generally be inferred from the facts and

circumstances surrounding the applicants' overall conduct and does not require "smoking gun" evidence. *Dippin Dots, Inc. v. Mosey*, 476 F.3d 1337, 1345 (Fed. Cir. 2007). On Plaintiff's motion for summary judgment, all reasonable inferences regarding intent must be drawn in favor of Defendants. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005).

The '947 patent discloses and discusses the Allen patent in its disclosure, but during prosecution, the Allen patent was never listed on an information disclosure sheet ("IDS"). The patent office requires that references be submitted on an IDS so that examiners can be alerted to the existence of references in an organized manner. The Allen patent is not listed on the face of the '947 patent, indicating that the examiner did not consider the Allen patent as a reference. The Allen patent was material to patentability, and three of the disputed claims (26, 28, and 38) are currently subject to a final rejection over the Allen patent in an *ex parte* reexamination proceeding at the patent office. While there is no direct evidence that this material omission was made with intent to deceive, an inference of deceptive intent is possible. As a result, an issue of material fact remains as to inequitable conduct in the non-disclosure of the Allen patent.

The applicants also failed to alert the PTO of any prior public use of the EZ Reader system. However, because Defendants have yet to prove that the deployment of the EZ Reader system constituted public use for § 102(b) purposes, it is unclear how this would constitute inequitable conduct. If the EZ Reader system was not in public use, it was not material to patentability.

Issues of material fact remain as to whether the correct inventors are named on the '947 patent. Specifically, the named inventors employed by Chase may not be actual inventors of the invention in the '947 patent. If that is true, their inclusion as inventors in the '947 patent would be materially misleading. If the EZ reader system was deployed at Chase in the first quarter of 1996,

and if the Chase employees were not inventors of the '947 patent, then that deployment could constitute a bar to patentability under § 102(b). If the EZ Reader system were prior art, every claim of the '947 patent would be invalid. However, it is unclear whether the intent behind any such misrepresentation was to deceive the PTO. The admission upon which Defendants rely in their § 102(f) argument states that the Chase inventors were added for political reasons within Chase and not for any effect their inclusion would have on patentability. As such, this remains a genuine issue of material fact. Accordingly, Plaintiff's motion for summary judgment on Defendants' affirmative defenses alleging inequitable conduct is DENIED.

### E. Prosecution History Estoppel

Plaintiff moved for summary judgment on Defendants' prosecution history estoppel affirmative defense. In their amended answers and counterclaims, Defendants allege that Plaintiff is barred from the relief it seeks, in whole or in part, by prosecution history estoppel. In response to Plaintiff's motion, Defendants produced attorney argument from the prosecution history of the '947 patent. In the cited passage, the prosecuting attorney distinguishes between Microsoft Outlook's "use of folders to store email messages" and a case base knowledge engine. Contrary to Defendants' argument, this passage does not appear to distinguish between a case base knowledge engine comparing new problems against exemplar cases and a case base knowledge engine comparing new problems against past cases. While this distinction is one Defendants wish to make between their products and the claims of the '947 patent, it is not a distinction made during the prosecution argument cited by Defendants. Because this was the only basis advanced by Defendants in their response to Plaintiff's motion for summary judgment, the Court GRANTS Plaintiff's motion for summary judgment on Defendants' prosecution history estoppel affirmative defense.

16

### F. Laches

Plaintiffs also moved for summary judgment on Defendants' laches defense. In response, Defendants argued that the five year delay between the issuance of the patent and the initiation of the present suit was inexcusable, and that Defendants have been prejudiced by the delay through the loss of memory of witnesses and the destruction of documents in the ordinary course of business.

Dismissal of a claim on the ground of laches requires that there be (1) unreasonable and unexcused delay in bringing the claim, and (2) material prejudice or injury to the defendant as a result of the delay. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc). The length of the delay that may be deemed unreasonable, for purposes of laches, depends on the circumstance. *Id.* at 1032. Mere delay, without more, is not sufficient to bar suit under the doctrine of laches. *Cornetta v. United States*, 851 F.2d 1372, 1377-78 (Fed. Cir. 1988). The period of delay considered under laches begins when the patentee knew or should have known of his claim against the defendant and does not begin until the patent has issued. *Aukerman*, 960 F.2d at 1032. *See also Bott v. Four Star Corp.*, 807 F.2d 1567, 1575 (Fed. Cir. 1988). Where a party attempting to assert laches attempted to conceal its infringement from the patentee or the public, delay considered for laches begins when patentee gains actual knowledge of the alleged infringement. *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1559 (Fed. Cir. 1997). Material prejudice, either economic or evidentiary, is essential to the laches defense. *Aukerman*, 960 F.2d at 1033. "Evidentiary or 'defense' prejudice may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events." *Id. See also Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1360-61 (Fed. Cir. 2008).

17

Defendants contend that, because of the public availability of the accused systems, Plaintiff and Plaintiff's predecessors-in-interest had a duty to investigate possible infringement and promptly file suit. Defendants further argue that because of the access the public has to their systems, Plaintiff's predecessors-in-interest knew or should have known of the accused instrumentalities at the time the patent issued. While the public does have access to Google's and Yahoo!'s systems, the public has no access to the accused instrumentalities within these systems. As evidenced by the protracted discovery battles in this case, the workings of Google and Yahoo!'s systems are closely guarded. As Defendants have illustrated, other search methods existed prior to the invention and thus their products could have used methods not covered by the '947 patent. As a result, a genuine issue of material fact exists as to when Plaintiff or Plaintiff's predecessors-in-interest knew or should have known of the alleged infringement.

Defendants next contend that if Plaintiff or its predecessors-in-interest knew or should have known of the alleged infringement near the issuance of the '947 patent, the delay was unreasonable and/or inexcusable. While the delay was less than the six year limit that triggers a presumption of laches, it still spans nearly five and a half years. Defendants have pointed to no extenuating circumstances to support a claim of laches, but Plaintiff has provided no support for its contention that an extenuating circumstance is necessary to support a laches defense within six years of patent issuance. Against this backdrop, the reasonableness of a five and a half year delay is a genuine issue of material fact.

Defendants next contend that they have suffered defense or evidentiary prejudice as a result of Plaintiff's delay. Defendants support this argument with ample evidence of witnesses with poor memory of long removed events. The extent of the prejudice, however, is less than certain.

Accordingly, there remains a genuine issue of material fact as to prejudice. For the above reasons, Plaintiff's motion for summary judgment on Defendants' laches defense is DENIED.

### G. Failure to State a Claim, Costs Barred, Limitation of Damages

Plaintiff also moved for summary judgment on Defendants' affirmative defenses of failure to state a claim, costs barred, and limitation of damages. In response to Plaintiff's motion, Defendants abandoned those defenses. Plaintiff's motion for summary judgment on Defendants' affirmative defenses of failure to state a claim, costs barred, and limitation of damages is therefore GRANTED.

### V. Conclusion

For the above-mentioned reasons, the Court grants Plaintiff's motion for summary judgment as to Defendants' counterclaims and affirmative defenses of § 101 patentability, prosecution history estoppel, failure to state a claim, costs barred, and § 102(e) patentability as to claims 28, 30, 31, 33, and 38. The Court denies all other motions for summary judgment referenced above, including Plaintiff's motions for summary judgment as to the remainder of Defendants' affirmative defenses and counterclaims and Defendants' motion for summary judgment of invalidity as to §§ 102(b), (e), and 103(a).

SIGNED this 2nd day of August, 2010.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE