UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BRIGHT RESPONSE, LLC<br>F/K/A POLARIS IP, LLC<br><br>v.<br><br>GOOGLE INC., et al. | NO. 2:07CV-371-TJW-CE |

**DEFENDANT YAHOO!'S MOTION FOR JUDGMENT AS A
<u>MATTER OF LAW ON DAMAGES</u>**

## I. INTRODUCTION

Defendant Yahoo! hereby moves for judgment as a matter of law on damages. Specifically, Yahoo! respectfully requests that the Court enter judgment as a matter of law, pursuant to Fed. R. Civ. P. 50(a), that Plaintiff has failed to meet its burden to prove its damages because (1) Plaintiff has no evidence to support its asserted reasonable royalty of 0.25% to 0.5%; (2) Plaintiff failed to apportion the contribution of the '947 patent to the accused Sponsored Search service as compared with the contributions of the prior art, Yahoo!'s patents, and Yahoo!'s non-patented contributions; and (3) Plaintiff failed to establish a nexus between its damages analysis and any infringing activity. Plaintiff's case-in-chief is now closed, and thus, its opportunity to come forward with additional evidence has also closed. Based on the evidentiary record, a reasonable jury could not find in Plaintiff's favor on damages.

## II. LEGAL STANDARD

"[A] motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). "Under Rule 50, a court should render judgment as a matter of law when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149 (2000); *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 480 (5th Cir. 2007). "The 'decision to grant [judgment as a matter of law] is not a matter of discretion, but a conclusion of law based upon a finding that there is insufficient evidence to create a fact question for the jury.'" *Houck v. Sunshine Jr. Food Stores,* 141 F.3d 1163 (5th Cir. 1998). Thus, to successfully oppose a motion for judgment as a matter of law, the non-movant must show that it presented more than "a mere scintilla of evidence" at trial. *DP Sol'ns, Inc. v. Rollins, Inc.,* 353 F.3d 421, 427 (5th Cir. 2003). Moreover, "[c]onclusory

allegations, speculation, and unsubstantiated assertions are inadequate to satisfy [the non-movant's] burden" when opposing a motion for judgment as a matter of law. *Newsome v. Collin County Cmty. Coll. Dist.,* 189 Fed. Appx. 353, 355 (5th Cir. 2006).

### III. YAHOO! IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

#### A. PLAINTIFF HAS NO EVIDENCE UPON WHICH TO BASE ITS ASSERTED REASONABLE ROYALTY RATE

Yahoo! is entitled to judgment as a matter of law because there is no evidence to support Plaintiff's proffered reasonable royalty rate of 0.25% to 0.5% with regard to Yahoo!. The Federal Circuit has held that "[t]he burden of proving damages falls on the patentee." *Lucent Tech., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1324 (Fed. Cir. 2009). To meet this burden, a plaintiff must base its reasonable royalty on "sound economic and factual predicates." *Riles v. Shell Exploration & Prod. Co.,* 298 F.3d 1302, 1311 (Fed. Cir. 2002). Despite this clear requirement, at trial, Plaintiff failed to base its proposed reasonable royalty rate for Yahoo! on *any* eligible factual predicates, let alone sound ones.

In its decisions on Yahoo!'s Motion to Exclude the Testimony of Plaintiff's Damages Expert Stephen Becker and Yahoo!'s Motion *in Limine* No. 2, the Court ruled that Plaintiff may not rely upon the license agreement between Google and Stanford University in its damages analysis regarding Yahoo!. (Dkt. 571, 595.) This ruling created a critical problem for Plaintiff's damages expert, Stephen Becker, who had admitted in his deposition that he relied almost exclusively on this license agreement in his expert report regarding Yahoo!.[1] Understandably,

---

[1] *See, e.g.,* Becker Deposition, 127:12-18:

> Q. Dr. Becker, we are looking at Paragraph 158 of your report, which is on Page 53. The .25 percent to .5 percent range is a range, then, that you derived by taking the Google-Stanford license agreement and

Dr. Becker tried to run away from his expert report's reliance on the Google-Stanford license at trial, but the record shows that there is no other support for his asserted royalty rate. Thus, with the pillar of his analysis excluded from the case, Dr. Becker's damages opinion is left with no support at all. Accordingly, Plaintiff has failed to satisfy its burden to prove damages with "sound factual predicates," and no reasonable jury could find for Plaintiff against Yahoo!.

At trial, Plaintiff did not come forward with any evidence that could support its proposed royalty rate of 0.25% to 0.5% with regard to Yahoo!. Just the opposite, Dr. Becker's testimony only confirmed that he had relied exclusively on the Google-Stanford license in his Yahoo! analysis. Specifically, Dr. Becker acknowledged that the basis for his royalty range with respect to Google (which is also 0.25% to 0.5%) was the Google-Stanford license. (Trial Tr. vol.2 (pm), 121:12-19; 143:19-144:9, August 4, 2010.) He then proceeded to admit that he had undertaken essentially the same analysis for Yahoo! as he did for Google. (*Id*. at 145:8-13; 146:13-14.) This tacit acknowledgement – that his reasonable royalty with respect to Yahoo! was based on the Google-Stanford license – was unavoidable, given that both his Yahoo! damages analysis and the Google-Stanford license reflect the exact same rate. Thus, despite Plaintiff's assertions to the contrary, the inescapable conclusion is that Dr. Becker's suggested royalty rate for Yahoo! in this case is *adopted directly from the Stanford-Google License*.

In an attempt to avoid the consequences of his reliance on the excluded Google-Stanford license for his Yahoo! analysis, Dr. Becker purported at trial to have relied instead upon the Overture patent portfolio licenses for the analysis.[2] (*Id.* at 164:15-18; 170:13-25.) For two

---

        adjusting the terms of that to consider the difference in terms between that agreement and the hypothetical negotiation, correct?

A. In essence, yes.

[2] Dr. Becker confirmed that he did not rely upon any of the other evidence produced in this case. (Trans., 137:4-12 (did not rely on Orion-Firepond purchase agreement); 166:15-18 (did not rely

reasons, such an assertion, even if it were accurate, would not change the ultimate conclusion that Plaintiff has failed to base its damages analysis on "sound factual predicates." First, the scope of the Overture patent portfolio is vastly more broad than that of the '947 patent, and thus, the Overture licenses are not sufficiently comparable to the one at issue in the hypothetical negotiation to serve as a "sound factual predicate" for the damages analysis. Dr. Becker admitted that the Overture portfolio was so important, and so broad in scope, that it is "the core technology of [Yahoo!'s] ad system" and covers the entire "advertising side of its business." (*Id.* at 161:8-15.) Contrasting the foundational Overture portfolio with the '947 patent, he conceded that the Overture portfolio "is a large portfolio of technology that relates to the – much more of the ad system than just the portion of the ad system that the Rice patent would relate to." (*Id.* at 162:4-11; 170:13-25.) Thus, Dr. Becker's own testimony confirms that the technology of the Overture licenses is so much broader than that of the '947 patent that they cannot be suitable data points for the reasonable royalty analysis in this case.

Second, setting aside the vast differences in scope between the Overture portfolio and the '947 patent, the Overture licenses do not support Dr. Becker's asserted royalty rate of 0.25% to 0.5%. These licenses contain rates in the range of 3.25% to 5%, which is nowhere near the 0.25% to 0.5% range asserted with respect to Yahoo!. To arrive at his asserted reasonable royalty, Dr. Becker alleges that he started with the Overture license range and made "a big adjustment down." (*Id.* at 170:13-171:4.) Dr. Becker's testimony on this point revealed the arbitrary and unscientific nature of his damages opinion:

> So I knew that an adjustment down needed to be made, a big adjustment down, down to something that was reasonable for this being an incremental contribution of an improvement to the

---

on VPS license); 168:3-4 (did not rely on Intouch license); 168:10-18, 169:14 (did not rely on any other Yahoo! license agreements); 169:18-170:3 (did not rely on Orion agreements).)

> Sponsored Search system, not the totality of the system. That – but taking into account that they're using it – there was a great extent of use. It was a very popular product, is a very popular product, profitable at the time of the negotiation. Putting all that together, I reached a conclusion that the quarter to half percent royalty rate would be reasonable for the rate that would be applied to Yahoo!

(*Id.* at 170:13-171:4.) In other words, instead of using reliable evidence (or *any* evidence), Dr. Becker simply waved his hands and made an arbitrary "adjustment" by "taking into account that . . . it was a very popular product, profitable at the time of the negotiation." (*Id.*) With no evidentiary support, there is nothing scientific or reliable about Dr. Becker's analysis. The "adjustment" Dr. Becker made to the Overture rates consisted of arbitrarily dividing by about ten. But he could just as easily, and just as validly, divided by one hundred or one thousand instead. In fact, using his methodology, he was free to choose any rate he desired.

Thus, Plaintiff has no valid support for its asserted reasonable royalty rate. It has therefore failed to meet its burden established by *Lucent, Riles,* and other Federal Circuit cases to prove its damages case with sound factual evidence, and the Court should grant Yahoo! judgment as a matter of law.

### B. PLAINTIFF FAILED TO SATISFY ITS BURDEN OF APPORTIONMENT

Yahoo! is additionally entitled to judgment as a matter of law because Plaintiff failed to satisfy its burden of apportionment. Specifically, Plaintiff failed to adjust its asserted reasonable royalty rate according to the contribution of the '947 patent to the accused Sponsored Search system as compared with the contributions of the prior art, Yahoo!'s patents, and Yahoo!'s non-patented contributions. Both the Federal Circuit and the Supreme Court have held that where an invention is an improvement over existing technology, the patentee has the burden to establish apportionment, either as distinguished from the value of any other patented or unpatented features, or as distinguished from the value of the prior art or any available non-infringing

alternatives for obtaining the same or similar result. *Garretson v. Clark,* 111 U.S. 120, 121 (1884); *Suffolk Co. v. Hayden,* 70 U.S. 315, 319-20 (1865); *Mowry v. Whitney,* 81 U.S. 623 (1871); *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009). The most recent of these cases, *Lucent*, explained that the objective of the court is "determining the correct (or at least approximately correct) value of the patented invention, when it is but one part or feature among many." *Lucent*, 580 F.3d at 1337. Moreover, the *Lucent* court emphasized that it is *the burden of the plaintiff* to apportion the value of patented invention as compared with the prior art, the defendant's patents and non-patented aspects of the accused products. *Id., citing Garretson,* 111 U.S. at 121. Numerous recent cases in this District and others have expressed similar principles. *See, e.g., Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp.2d 279, 283 (N.D.N.Y. 2009); *IP Innovation L.L.C. v. Red Hat, Inc.*, 2010 U.S. Dist. LEXIS 28372, No. 2:07-CV-447-RRR, at * 6 (E.D. Tex. March 2, 2010); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 2010 U.S. Dist. LEXIS 56634, No. 2:06-CV-348-TJW, at *8-11 (E.D. Tex. June 9, 2010).[3]

Proper apportionment is critical in this case, given Dr. Becker's admission that the '947 patent is merely a small improvement to an existing system, and just one element among many needed for Sponsored Search. (Trial Tr. vol.2 (pm) at 41:4-10; 86:11-20, August 5, 2010.) In spite of this, it is evident that Dr. Becker could not have satisfied his burden of apportionment because he *could not even identify* (let alone account for) the contribution of the '947 patent to

---

[3] At trial, Plaintiff's counsel argued that apportionment in the form of mathematical quantifications (including quantifications demonstrated by demand curves) is not required because it is not listed specifically in the *Georgia Pacific* factors. Such an argument turns the law on its head. Indeed, as explained above, both the Supreme Court and Federal Circuit require exactly this kind of apportionment. *See, e.g., Lucent*, 580 F.3d at 1337. In fact, in *Cornell*, the Federal Circuit specifically required demonstration of the apportionment analysis through demand curves or similar mathematical quantification. *Cornell,* 609 F.Supp.2d at 284.

Sponsored Search or accordingly, how that contribution might compare with that of the prior art, Yahoo!'s patents, and Yahoo!'s non-patented contributions.

In contrast to his inability to identify the contribution of the '947 patent to Sponsored Search, Dr. Becker had no difficulty identifying the types of contributions Yahoo! makes to the accused system.[4] For example, he acknowledged that Yahoo! has its own patents that relate to increasing advertising relevance. (*Id.* at 43:11-44:6.) Furthermore, he was able to list numerous non-patented contributions that Yahoo! has brought to Sponsored Search. (*Id.* at 48:25-49:5.) These contributions include (1) the fact that Yahoo!'s Sponsored Search was commercially successful before April 2004; (2) the fact by April 2004, Yahoo! was the second-ranked search engine; (3) Yahoo!'s investments in software and hardware infrastructure; (4) the acquisition of businesses like Overture; (5) the acquisition of social networking sites; and (6) the ability to drive traffic to Yahoo!'s search pages. (*Id.* at 46:4-47:5.)

Although he had identified so many of Yahoo!'s contributions to Sponsored Search, Dr. Backer failed to take the important step of quantifying them for the purpose of comparing them to the contributions of the '947 patent. He testified that he had not even talked to Dr. Rhyne about any of Yahoo!'s patents other than the '361 patent (and therefore, he could not comment on the actual extent of the contributions of Yahoo!'s patents to Sponsored Search). (*Id.* at 45:15-18.) Nor could he identify the extent of the contribution of Yahoo!'s pre-April 2004 Sponsored Search to the accused post-2004 system. (*Id.* at 53:14-55:1.) He further admitted that he had not even attempted to quantify Yahoo!'s overall contribution to improving the relevance of its

---

[4] He did, however, have great difficulty identifying the contribution of the prior art, despite admitting that the contribution of the '947 patent to Sponsored Search can be informed by a review of the prior art. (Aug. 5 Trans., 41:25-42:1.) In fact, he did not even take any steps to identify what distinguishes the '947 patent's claimed invention from the prior art, nor did he have any understanding of what the '947 patent adds over and above the prior art. (Aug. 5 Trans., 42:2-12.)

advertising. (*Id.* at 47:8-17.) Apparently acknowledging the shortfalls of his analysis in this regard, Dr. Becker conceded that "a determination of a reasonable royalty for the '947 patent must recognize that Yahoo! and Google should be credited with the elements of the success of the accused products that are not patented and that they brought to the table." (*Id.* at 48:19-24.)

Dr. Becker also admitted his failure to quantify the benefits to Yahoo! of using the '947 patent. (*Id.* at 38:17-21; 38:25-39:2.) In particular, he conceded that he did not quantify how the '947 patent affects Yahoo!'s advertising quality or relevance or what increase in revenue might be attributable to the contribution of the '947 patent. (*Id.* at 39:9-14; 42:17-21; 50:24-51:2.) This admission is surprising, given Dr. Becker's admission that the economic benefit to Yahoo! from the '947 patent is supposed to be the focus of his analysis. (*Id.* at 47:18-48:2.)

Having failed to even identify what the '947 patent contributes to Sponsored Search or quantify Yahoo!'s contributions, Plaintiff could not possibly have apportioned its asserted royalty rate properly. Accordingly, the Court should grant Yahoo! judgment as a matter of law on damages.

### C.   PLAINTIFF FAILED TO ESTABLISH A NEXUS BETWEEN ITS DAMAGES ANALYSIS AND ANY INFRINGING ACTIVITY

Yahoo! is also entitled to judgment as a matter of law because Plaintiff did not establish the required Nexus between its damages analysis and any infringing activity. For a damages award to be sustainable, a plaintiff must establish that there is a nexus between the infringement of the patent-in-suit and the activity that increases the defendant's revenue. *See Cornell,* 609 F.Supp.2d at 293.

Dr. Becker admitted that all of Yahoo!'s revenue from Sponsored Search is realized through users' clicking on advertisements. (Trial Tr. vol.2 (pm) at 51:19-21, August 5, 2010.) He even elaborated that he "based [his] royalty calculations against Yahoo! solely on the revenue

that Yahoo! has received from users clicking on advertisements." (*Id.* at 51:22-52:3 ("Ultimately, those ads that are displayed get clicked on, and that's the revenue-generating source."); 53:5-6 ("There's no revenue unless someone clicks on one of the infringing ads.").) But he then admitted that "clicking on Yahoo!'s Sponsored Search advertisements does not infringe any claims of the '947 patent." (*Id.* at 52:4-8, August 5, 2010.) Thus, Dr. Becker admits that there is no nexus between his damages analysis and any infringing activity. Accordingly, Yahoo! is entitled to judgment as a matter of law because Plaintiff has failed to demonstrate the required damages-infringement nexus.

### D. THE SALE PRICE OF THE PATENT RENDERS PLAINTIFF'S DAMAGES ESTIMATE UNREASONABLE

Plaintiff's proposed $64-128 million damages theory cannot reasonably be supported because it ignores the sale price of the patent. Plaintiff's damages expert acknowledged that Orion bought the '947 Patent, plus thirteen other patents, for just $1 million shortly before the date of the hypothetical negotiation. (*Id.* at 180:18-22 ("Q: So five months before the hypothetical negotiation between Orion and Google, Orion bought not just the '947 Patent, but 13 other patents, for a million dollars, right? A: Yes.").) He refused, however, to place any weight on that transaction in his damages opinion. (*Id.* at 137:2-12.)

The Federal Circuit addressed the significance of a patent's selling price in the reasonable royalty analysis in *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 871 (Fed. Cir. 2003), *vacated on other grounds* 545 U.S. 193 (2005). The Court overturned a $15 million verdict, reasoning in part:

> The $15,000,000 royalty also does not appear to take into account numerous factors that would considerably reduce the value of the hypothetical license. For example, Integra purchased Telios (together with all of its products, patents and know-how) for $20,000,000 in 1996. A $15,000,000 award figure to compensate for infringement of only some of Telios' patents before Integra's acquisition seems unbalanced in view of the overall acquisition price. (*Id.* at 871.)

**YAHOO!'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON DAMAGES – Page 9**

In this case, the "unbalance" between the $1 million sale of the '947 Patent and Plaintiff's request for a $64-128 million royalty more severe than the "unbalance" in Integra. No reasonable jury could conclude that Google would have paid sixty-four times more for a mere license than Orion paid to purchase the Patent outright only a few months prior– particularly since Dr. Becker acknowledged that Google would have been aware of this $1 million sale price at the time of the hypothetical negotiation. (*See id.* at 183:17-22.)[5]

## IV. CONCLUSION

For the foregoing reasons, Yahoo! is entitled to judgment as a matter of law on the damages issues in this case.

Dated: August 7, 2010

Respectfully submitted,

/s/ Jennifer H. Doan
William C. Rooklidge
Email: RooklidgeW@Howrey.com
HOWREY LLP
4 Park Plaza, Suite 1700
Irvine CA 92614-2559
Telephone: (949) 721-6900

Jason C. White
Mansi H. Shah
Scott Sherwin
Email: WhiteJ@Howrey.com
Email: ShahM@Howrey.com
Email: SherwinS@Howrey.com
HOWREY LLP
321 N. Clark Street, Suite 3400
Chicago IL 60654
Telephone: (312) 595-1239

Brian A.E. Smith
Email: SmithBrian@Howrey.com
HOWREY LLP
525 Market Street, Suite 3600
San Francisco CA 94105-2708

---

[5] On direct examination, Dr. Becker attempted to distinguish this $1 million sale price on the ground that the seller (FirePond) "wasn't attempting to get the best price he could for the patent." *Id.* at 141:22-142:2. On cross-examination, however, he admitted that FirePond "attempted to get the most that it could under the circumstances." *Id.* at 181:23-182:7.

Telephone:  (415) 848-4900

Jennifer Doan
Email:  jdoan@haltomdoan.com
State Bar No. 08809050
Joshua Reed Thane
Email:  jthane@haltomdoan.com
State Bar No. 24060713
HALTOM & DOAN
Crown Executive Center, Suite 100
6500 Summerhill Road
Texarkana TX 75503
Telephone:  (903) 255-1000

*Attorneys for Defendant Yahoo! Inc.*

## **CERTIFICATE OF SERVICE**

 I hereby certify that a copy of the foregoing document was served upon all counsel of record via the Court's CM/ECF system this 7th day of August, 2010.

               /s/ Jennifer H. Doan
               Jennifer H. Doan